FILED
JUN 21 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JONATHAN H. MORRIS
1111 23rd Street, N.W.
Apartment 1A
Washington, D.C. 20037

    Plaintiff,

    v.

Case No.: _____

BUVERMO PROPERTIES, INC.
1901 N. Moore Street, Suite 804
Arlington, Virginia 22209
Serve: John Gardner
    1901 N. Moore Street, Suite 804
    Arlington, Virginia 22209

FIDELIO PROPERTIES
1901 N. Moore Street, Suite 804
Arlington, Virginia 22209
Serve: John Gardner
    1901 N. Moore Street, Suite 804
    Arlington, Virginia 22209

CASE NUMBER 1:06CV01131
JUDGE: Henry H. Kennedy
DECK TYPE: Contract
DATE STAMP: 06/21/2006

JURY ACTION

F.P. EXECUTIVE PARTNERS, L.L.C.
1901 N. Moore Street, Suite 804
Arlington, Virginia 22209
Serve: John Gardner
    1901 N. Moore Street, Suite 804
    Arlington, Virginia 22209

JANIVO REALTY, INC.
1901 N. Moore Street, Suite 804
Arlington, Virginia 22209
Serve: John Gardner
    1901 N. Moore Street, Suite 804
    Arlington, Virginia 22209

DONELUX, INC.
1901 N. Moore Street, Suite 804
Arlington, Virginia 22209
Serve: John Gardner
    1901 N. Moore Street, Suite 804
    Arlington, Virginia 22209

| | |
|---|---|
| ORVAN, INC.<br>1901 N. Moore Street, Suite 804<br>Arlington, Virginia 22209<br>Serve: John Gardner<br>      1901 N. Moore Street, Suite 804<br>      Arlington, Virginia 22209 | :<br>:<br>:<br>:<br>:<br>:<br>: |
| FIDELIO PROPERTIES MANAGEMENT, INC.<br>1901 N. Moore Street, Suite 804<br>Arlington, Virginia 22209<br>Serve: John Gardner<br>      1901 N. Moore Street, Suite 804<br>      Arlington, Virginia 22209 | :<br>:<br>:<br>:<br>:<br>:<br>: |
| JOHN GARDNER<br>6501 West Langley Lane<br>McLean, Virginia 22101 | :<br>:<br>:<br>: |
|       **Defendants.** | : |

## COMPLAINT

Plaintiff Jonathan H. Morris ("plaintiff") hereby sues defendants Buvermo Properties, Inc., Fidelio Properties, F.P. Executive Partners, L.L.C., Janivo Realty, Inc., Donelux, Inc., Orvan, Inc., Fidelio Properties Management, Inc, and John Gardner ("Gardner"), and states as follows:

## PARTIES

1.  Plaintiff is, and was at all times relevant hereto, an adult resident of the State of Florida residing at 354 Chilean Avenue, Apartment 6E, Palm Beach, Florida, 33480, and maintained an apartment located at 1111 23rd Street, N.W., Apartment 1A, Washington, D.C. 20037. Plaintiff is a seasoned professional with over 25 years of real estate investment experience principally in the Washington, D.C. metropolitan area.

2.  Defendant Buvermo Properties, Inc. ("Buvermo") is, and was at all times relevant hereto, a Delaware corporation with its principal place of business located at 1901 N. Moore

2

Street, Suite 804, Arlington, Virginia 22209. Buvermo was formed for the purpose of identifying real estate investment opportunities on behalf of Fidelio Properties.

3. Defendant Fidelio Properties ("Fidelio") is, and was at all times relevant hereto, a New York general partnership with its principal place of business located at 1901 N. Moore Street, Suite 804, Arlington, Virginia 22209. Fidelio is in the business of investing equity from a foreign source in real estate both directly and through other entities.

4. Defendant F.P. Executive Partners, L.L.C. ("FPEP") is, and was at all times relevant hereto, a Delaware limited liability company with its principal place of business located at 1901 N. Moore Street, Suite 804, Arlington, Virginia 22209. On information and belief, FPEP is, and was at all times relevant hereto, a general partner in Fidelio.

5. Defendant Janivo Realty, Inc. ("Janivo") is, and was at all times relevant hereto, a Delaware corporation with its principal place of business located at 1901 N. Moore Street, Suite 804, Arlington, Virginia 22209. On information and belief, Janivo is, and was at all times relevant hereto, a general partner in Fidelio.

6. Defendant Donelux, Inc. ("Donelux") is, and was at all times relevant hereto, a Delaware corporation with its principal place of business located at 1901 N. Moore Street, Suite 804, Arlington, Virginia 22209. On information and belief, Donelux is, and was at all times relevant hereto, a general partner in Fidelio.

7. Defendant Orvan, Inc. ("Orvan") is, and was at all times relevant hereto, a Virginia corporation with its principal place of business located at 1901 N. Moore Street, Suite 804, Arlington, Virginia 22209. On information and belief, Orvan is, and was at all times relevant hereto, a general partner in Fidelio.

8. Defendant Fidelio Properties Management, Inc. ("FPMI") is, and was at all times relevant hereto, a Delaware corporation with its principal place of business located at 1901 N. Moore Street, Suite 804, Arlington, Virginia 22209. On information and belief, FPMI is, and was at all times relevant hereto, a general partner in Fidelio.

9. Defendant Gardner is, and was at all times relevant hereto, an adult resident of the Commonwealth of Virginia, residing at 6501 West Langley Lane, McLean, Virginia 22101. On information and belief, Gardner is, and was at all times relevant hereto, the managing member of Fidelio, FPEP and a number of other limited liability companies through which Fidelio possesses its property ownership interests. On information and belief, Gardner also is, and was at all times relevant hereto, the president of Janivo, Donelux, Orvan and FPMI.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that it is an action between citizens of different states and the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

11. Venue is appropriate in this judicial district under 28 U.S.C. 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the District of Columbia.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

### Buvermo Hires Plaintiff as Its President and CEO

12. In early 2005, plaintiff was contacted by the CEO of Equinox Partners, a real estate executive search firm, to determine plaintiff's interest in applying for the position of President and CEO of Buvermo.

13. In late May/early June, 2005, after several interviews, including interviews with Gardner, Mr. Joost Tjaden (a Janivo representative), and Andre van Rhee (a Donelux representative however indicating he was employed by VADO), plaintiff was offered and accepted the position as Buvermo's President and CEO.

14. In the course of the interview process, Gardner, who at that time was Buvermo's President and CEO, advised plaintiff that he was retiring from that position because he was getting close to reaching a mandatory retirement age of 65 years old as required by Janivo and Donelux.

15. Gardner assured plaintiff on several occasions that, although he (Gardner) would remain partially involved in Buvermo's operations to facilitate the transition, plaintiff would be in charge of the business operations and that, no later than December 31, 2005, Gardner would cease having any further involvement in Buvermo's operations.

16. Gardner further explained that Buvermo was only interested in a candidate who could make a long-term commitment to Buvermo. Accordingly, in offering plaintiff the position of President and CEO, Gardner explained that plaintiff would be required to agree to a minimum employment term of ten years. Plaintiff too recognized the benefits of a long-term commitment to Buvermo and, thus, it was agreed that plaintiff's employment with Buvermo would continue for a minimum of ten years.

17. Gardner further represented to plaintiff that Gardner's full membership interest in FPEP would be assigned to plaintiff and that plaintiff would assume Gardner's role as the managing member or president of the various entities, including Fidelio, FPEP, Janivo, Donelux, Orvan and FPMI.

**Plaintiff's Compensation Plan**

18. Prior to the commencement of his employment with Buvermo, plaintiff executed a compensation plan, which memorialized the terms of plaintiff's compensation that had been previously negotiated and agreed to between plaintiff and Gardner, who at the time was acting on behalf of and with the full knowledge and consent of Buvermo and Fidelio.

19. Under plaintiff's compensation plan, Buvermo agreed to pay plaintiff a starting base salary of $250,000 per annum.

20. In addition to plaintiff's base salary, it was agreed that Fidelio, directly or through its affiliated entities, would pay plaintiff an amount equal to 2.5% of the cash receipts or other consideration it realizes in connection with its investment in two existing properties, known as the Sheraton Reston and Twinbrook Metro Park projects, after Fidelio first recovers its initial investment plus a compounded rate of return of 10%.

21. For all projects identified by Buvermo on behalf of Fidelio after December 31, 2005, it was agreed that Fidelio, directly or through its affiliated entities, would pay plaintiff an amount equal to 15.5% of the cash receipts or other consideration realized in connection with its investment in said properties, after Fidelio first recovers its initial investment plus a compounded rate of return of 10%.

**Plaintiff Commences His Employment and Gardner Refuses To Step Down**

22. On June 27, 2005, plaintiff commenced his employment with Buvermo.

23. By December 2005, it became abundantly clear to plaintiff that Gardner had no intention of relinquishing his involvement in Buvermo's business operations.

24. In fact, Gardner continued to act as though he still was the CEO and President of Buvermo. Among other things, Gardner refused to relinquish his office at Buvermo, his monthly

parking pass, his company cellular telephone, or his company charge card and business cards. Further, Gardner maintained a home office to pursue Buvermo business. Gardner continued to give employees of Buvermo direction to complete tasks without plaintiff's agreement and, in many cases, without plaintiff's knowledge. Gardner continually interfered with the progress of many deals that were being pursued by plaintiff, and he continued to act on behalf of Buvermo and to represent the company by servicing old deals and initiating new deals.

25. After numerous complaints by plaintiff to Buvermo and Fidelio board members concerning Gardner's interference with plaintiff's management of the company, a special meeting among Gardner, Tjaden and van Rhee was called by plaintiff and held on December 10, 2005, to address plaintiff's concerns with Gardner.

26. At the meeting, Van Rhee and Tjaden made it clear to Gardner that, after December 31, 2005, Gardner would be allowed in Buvermo's office only once weekly and that he would be prohibited from soliciting new investment opportunities or representing the company at industry functions.

27. Despite his agreement to abide by the directive made at the December 10, 2005 meeting, Gardner continued to act as though he still was Buvermo's President and CEO and conducted business on Buvermo's behalf without first advising plaintiff and, in some instances, without informing plaintiff at all.

28. Thereafter, plaintiff confronted Gardner and demanded that he live up to his agreement and retire. Gardner responded by telling plaintiff, in no uncertain terms, that he could do as he pleased, that he would continue to locate investments for Buvermo, and that there was nothing plaintiff could do to stop him.

29. On March 22, 2006, at a breakfast meeting with plaintiff, Gardner advised plaintiff that he had arranged a meeting for the following week with a partner of a real estate firm in Washington, D.C. to discuss and review new investments for Fidelio. Gardner further informed plaintiff that he had directed an employee of Buvermo to attend the meeting. Plaintiff had no prior knowledge of this planned meeting.

30. Plaintiff reminded Gardner of his agreement to step down and demanded that he retire. Gardner refused to comply.

**Plaintiff Is Terminated By Buvermo Without Explanation Or Just Cause**

31. On March 24, 2006, Gardner caused a letter to be delivered to plaintiff, advising plaintiff that his employment with Buvermo was being terminated effective immediately. The letter was signed by Gardner in his purported capacity as Buvermo's President (the same position plaintiff had been hired to fill) and failed to identify any basis for plaintiff's termination.

32. Plaintiff's sudden and unjustified termination was without just cause and, on information and belief, was not in accordance with Buvermo's bylaws.

33. Rather, plaintiff's sudden and unjustified termination was the consequence of Gardner's efforts to maintain his role as Buvermo's President and CEO and to reacquire his share of the FPEP Promote that had been assigned to plaintiff.

34. On information and belief, plaintiff also was terminated because of his discovery of and efforts to address various matters relating to Buvermo's business practices that Gardner, Tjaden and/or van Rhee had hoped to keep secret.

35. For example, during the latter part of his employment with Buvermo, plaintiff discovered that the company's $10 million line-of-credit from ING in the Netherlands was constantly in breach of its loan covenants due to Gardner's neglect and poor business

management. This information was only revealed after plaintiff began asking specific questions relative to the source of capital which would be required for two pending transactions. On information and belief, Gardner had not disclosed this information to the Fidelio partners and feared that plaintiff would do so.

36. Plaintiff also discovered that Buvermo had been acting as a mortgage broker and investment advisor for Bouwfonds, a financial institution which is a subsidiary of ABN/AMRO, based in the Netherlands, notwithstanding the fact that Buvermo was neither registered to render such services nor equipped with any internal guidelines or experienced personnel to make such loans. On information and belief, Bouwfonds also was not registered to transact business as a foreign financial institution in the United States.

37. In addition, plaintiff learned toward the end of his tenure as President and CEO, that a Dutch national named Burdiss Piper was being paid an annual fee and given other benefits by Buvermo despite the fact that he did virtually nothing for the company. When plaintiff questioned Gardner about this arrangement, Gardner responded by saying that it was for past favors to the company and plaintiff should not bring this up again.

**Defendants Refuse To Honor Terms of Plaintiff's Compensation Agreement**

38. After December 31, 2005, but prior to plaintiff's termination, two projects were initiated by Buvermo: the Spotswood Valley Shopping Center and a new Reston JBG Deal.

39. Following plaintiff's termination, defendants confirmed that they would not recognize plaintiff's interests in the Sheraton Reston and Twinbrook parcels, and that Fidelio would not to pay plaintiff for his interest in these two projects.

40. In addition, defendants have confirmed that they will not compensate plaintiff for his interest in the Valley Shopping Center and the Reston JBG Deal, or for any subsequent

interest to which he otherwise would have been entitled had his employment not been wrongfully terminated.

## COUNT I
### (Breach of Contract Against Buvermo)

41. Plaintiff incorporates by reference herein the allegations of paragraphs 1 through 40.

42. Pursuant to the parties' agreement, Buvermo was required to employ plaintiff for a period of not less than ten years.

43. Buvermo breached the agreement by terminating plaintiff without any just cause within one year of his start date.

44. As a result of Buvermo's breach of plaintiff's employment agreement, plaintiff has suffered and will continue to suffer damages in the amount to be proven at trial, but no less than $2,500,000.

WHEREFORE, plaintiff requests judgment against Buvermo for an amount to be proven at trial, but no less than $2,500,000.

## COUNT II
### (Breach of Implied Covenant of Good Faith and Fair Dealing Against Buvermo and Fidelio)

45. Plaintiff incorporates by reference herein the allegations of paragraphs 1 through 44.

46. Plaintiff's agreement with Buvermo and Fidelio included an implied covenant of good faith and fair dealing, prohibiting Buvermo and/or Fidelio from doing anything which would have the effect of destroying or injuring plaintiff's right to receive the fruits of the agreement.

47.     Buvermo and Fidelio breached the implied covenant of good faith and fair dealing, and thus plaintiff's agreements with them, by terminating plaintiff in order to avoid having to pay plaintiff for the amounts owed him.

48.     As a result of Buvermo's and Fidelio's breaches, plaintiff has suffered and will continue to suffer damages in the amount to be proven at trial, but no less than $2,500,000.

49.     As the general partners of Fidelio, FPEP, Janivo, Donelux, Orvan and FPMI are jointly and severally liable for all damages assessed against Fidelio.

WHEREFORE, plaintiff requests judgment against Buvermo, Fidelio and all Fidelio's partners for an amount to be proven at trial, but no less than $2,500,000.

## COUNT III
**(Anticipatory Breach of Contract Against Buvermo, Fidelio and Fidelio's Partners)**

50.     Plaintiff incorporates by reference herein the allegations of paragraphs 1 through 49.

51.     Pursuant to plaintiff's agreement with defendants, Fidelio, directly or through its affiliated entities, is required to pay plaintiff an amount equal to 2.5% of the cash receipts or other consideration it recognizes in connection with its investment in two existing properties, known as the Sheraton Reston and Twinbrook Metro Park projects, after Fidelio first recovers its initial investment plus a compounded rate of return of 10%.

52.     In addition, for all projects identified by Buvermo on behalf of Fidelio after December 31, 2005, it was agreed that Fidelio, directly or through its affiliated entities, would pay plaintiff an amount equal to 15.5% of the cash receipts or other consideration recognized in connection with its investment in said properties, after Fidelio first recovers its initial investment plus a compounded rate of return of 10%.

11

53. Following plaintiff's termination, defendants confirmed that they would not recognize plaintiff's interests in the Sheraton Reston and Twinbrook parcels, and that Fidelio would not to pay plaintiff for his interest in these two projects.

54. In addition, defendants have confirmed that they will not compensate plaintiff for his interest in the Valley Shopping Center and the Reston JBG Deal, or for any subsequent interest to which he otherwise would have been entitled had his employment not been wrongfully terminated.

55. As a result of Buvermo's and Fidelio's anticipatory breach of contract, plaintiff has suffered and will continue to suffer damages in the amount to be proven at trial, but no less than $2,500,000.

56. As the general partners of Fidelio, FPEP, Janivo, Donelux, Orvan and FPMI are jointly and severally liable for all damages assessed against Fidelio.

WHEREFORE, plaintiff requests judgment against Buvermo, Fidelio and all Fidelio's partners for an amount to be proven at trial, but no less than $2,500,000.

## COUNT IV
**(Declaratory Judgment Against Buvermo, Fidelio and its partners)**

57. Plaintiff incorporates by reference herein the allegations of paragraphs 1 through 56.

58. There exists an actual controversy as to plaintiff's rights under his agreement with Buvermo and Fidelio.

59. Plaintiff maintains that pursuant to the parties' agreement, plaintiff is entitled to receive payment for his percentage of cash receipts generated from the Sheraton Reston and Twinbrook parcels, from the Valley Shopping Center and the Reston JBG Deal, and from all

other projects initiated by Buvermo on Fidelio's behalf from January 1, 2006 through June 29, 2015, which represents the last day of plaintiff's employment term.

60.     Defendants maintain that their termination of plaintiff's employment with Buvermo rendered plaintiff ineligible to receive these benefits.

WHEREFORE, plaintiff requests that this Court determine and adjudicate the rights and liabilities of the parties with respect to their agreement and that this Court declare that, pursuant to the parties' agreement, plaintiff is entitled to receive payment for his percentage of cash receipts generated from the Sheraton Reston and Twinbrook parcels, from the Valley Shopping Center and the Reston JBG Deal, and from all other projects initiated by Buvermo on Fidelio's behalf from January 1, 2006 through June 29, 2015.

## COUNT V
### (Intentional Misrepresentation/Fraud Against Gardner, Fidelio and Buvermo)

61.     Plaintiff incorporates by reference herein the allegations of paragraphs 1 through 60.

62.     Gardner, individually and on Buvermo's behalf, represented to plaintiff that, although Gardner would remain partially involved in Buvermo's operations to the extent required by Plaintiff to facilitate the transition, plaintiff would be in charge of the business operations and that, no later than December 31, 2005, Gardner would cease having any further involvement in Buvermo's operations.

63.     Gardner, individually and on Buvermo's behalf, further represented to plaintiff that plaintiff's employment with Buvermo would continue for a minimum of ten years.

64.     Gardner, individually and on Fidelio's behalf, further represented to plaintiff that plaintiff would receive payment for his percentage of cash receipts generated from the Sheraton Reston and Twinbrook parcels, from the Valley Shopping Center and the Reston JBG Deal, and

from all other projects initiated by Buvermo on Fidelio's behalf from January 1, 2006 through June 29, 2015.

65.  Gardner, Buvermo and Fidelio knew that their representations to plaintiff were false when made, in that they had no intention of honoring their agreements.

66.  On information and belief, defendants made said representations to induce plaintiff to accept employment with Buvermo and to benefit from plaintiff's extensive contacts in the real estate market, only to then orchestrate plaintiff's termination to avoid compensating plaintiff.

67.  Plaintiff reasonably relied on defendants' intentional misrepresentations by accepting employment with Buvermo and by disclosing his contacts in the real estate market to defendants.

68.  Defendants' intentional misrepresentations were planned, deliberate, malicious, willful and intentionally calculated to inflict harm upon plaintiff.

69.  As a result of defendants' fraudulent conduct, plaintiff has been left without employment, deprived of an annual salary plus bonuses and other remuneration, suffered damage to his reputation and has otherwise been damaged.

WHEREFORE, plaintiff demands judgment against Gardner in an amount of to be proven at trial, but not less than $2,500,000, plus treble damages, punitive damages and reasonable attorney's fees.

## COUNT VII
### (Tortious Interference With Contractual Relations Against Gardner)

70.  Plaintiff incorporates by reference herein the allegations of paragraphs 1 through 69.

71. Gardner knew that plaintiff had a binding contract with Buvermo to serve as its CEO and President for a minimum of ten years.

72. Through intentional, malicious and improper conduct, Gardner induced Buvermo to breach its contract with plaintiff. Among other things, Gardner continued to interfere with the business operations of Buvermo notwithstanding his agreement to retire and, on information and belief, misrepresented to the Buvermo board that plaintiff was not adequately fulfilling his duties and obligations as Buvermo's CEO and President.

73. As a result of Gardner's tortious interference with plaintiff's contract with Buvermo, plaintiff has been left without employment, deprived of an annual salary plus bonuses and other remuneration, suffered damage to his reputation and has otherwise been damaged.

WHEREFORE, plaintiff demands judgment against Gardner for an amount of to be proven at trial, but not less than $2,500,000, plus punitive damages and reasonable attorney's fees.

Respectfully submitted,

TOBIN, O'CONNOR, EWING & RICHARD

Dated: June 21, 2006        By: _____
David C. Tobin, Esq., D.C. Bar # 395959
Ziad P. Haddad, Esq., D.C. Bar #469470
5335 Wisconsin Avenue, N.W., Suite 700
Washington, D.C. 20015
Tel: (202) 362-5900
Fax: (202) 362-5901
*Attorney for Plaintiff Jonathan Morris*

### JURY DEMAND

Plaintiff hereby requests a trial by jury on all claims asserted in this action.