IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JONATHAN H. MORRIS,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | Case No.: 1:06CV01131 (HHK) |
| : | |
| **BUVERMO PROPERTIES, INC., et al.,** : | |
| : | |
| **Defendants.** : | |

## JOINT MEET AND CONFER STATEMENT

Pursuant to Local Rule of the United States District Court for the District of Columbia 16.3(d), and the Court's July 17, 2006 Order Setting Initial Scheduling Conference, Plaintiff Jonathan H. Morris ("Plaintiff") and Defendants Buvermo Properties, Inc. *et al.* ("Defendants"), hereby submit the following Joint Meet and Confer Statement.

**I.      STATEMENT OF THE CASE AND BASIS FOR CLAIMS AND DEFENSES.**

   **1.      Plaintiff's Statement of the Case and Basis for Claims.**

In late May/early June, 2005, plaintiff was offered and accepted the position of President and CEO of Buvermo Properties, Inc. ("Buvermo"). Buvermo was, and on information and belief still is, in the business of identifying real estate investment properties on behalf of defendant Fidelio Properties ("Fidelio"). Fidelio in turn was, and on information and belief still is, in the business of investing foreign capital in real estate projects in the United States.

At the time of plaintiff's hiring, it was agreed and understood that plaintiff was to replace defendant John Gardner ("Gardner"), who at that time was Buvermo's President and CEO, and to serve in that capacity for a minimum of ten years. On June 27, 2005, plaintiff commenced his employment with Buvermo.

Prior to the commencement of his employment with Buvermo, plaintiff executed a compensation plan. Under this compensation plan, Buvermo agreed to pay plaintiff a starting base salary of $250,000 per annum. In addition to plaintiff's base salary, it was agreed that Fidelio, directly or through its affiliated entities, would pay plaintiff an amount equal to 2.5% of the cash receipts or other consideration it realizes in connection with its investment in two existing properties, known as the Sheraton Reston and Twinbrook Metro Park projects, after Fidelio first recovers its initial investment plus a compounded rate of return of 10%. For all projects initiated by Buvermo on behalf of Fidelio after December 31, 2005, it was agreed that Fidelio, directly or through its affiliated entities, would pay plaintiff an amount equal to 15.5% of the cash receipts or other consideration realized in connection with its investment in said properties, after Fidelio first recovers its initial investment plus a compounded rate of return of 10%.

By December 2005, it became abundantly clear to plaintiff that Gardner had no intention of relinquishing his involvement in Buvermo's business operations. In fact, Gardner continued to act as though he still was the CEO and President of Buvermo and continually interfered with the progress of many deals that were being pursued by plaintiff.

On March 24, 2006, Gardner caused a letter to be delivered to plaintiff, advising plaintiff that his employment with Buvermo was being terminated effective immediately. The letter was signed by Gardner in his purported capacity as Buvermo's President (the same position plaintiff had been hired to fill) and failed to identify any basis for plaintiff's termination.

Plaintiff's sudden and unjustified termination was without just cause and, on information and belief, was not in accordance with Buvermo's bylaws. Rather, plaintiff's sudden and unjustified termination was the consequence of Gardner's efforts to maintain his role as

Buvermo's President and CEO. Plaintiff's termination also was motivated by Buvermo's and Fidelio's desire to avoid paying plaintiff the amounts he is due under his compensation plan.

After December 31, 2005, but prior to plaintiff's termination, two projects were initiated by Buvermo for which plaintiff was entitled to compensation under his compensation plan: the Spotswood Valley Shopping Center and a new Reston JBG Deal. Following plaintiff's termination, however, defendants confirmed that Fidelio would not pay plaintiff for his interests in these two projects. Defendants have subsequently confirmed that they will not compensate plaintiff for his interest in the Sheraton Reston and Twinbrook parcels (the two projects expressly identified in his compensation plan), or for any subsequent interest to which he otherwise would have been entitled had his employment not been wrongfully terminated.

**2.   Defendants' Statement of the Case and Basis for Defenses.**

**A.   Statement of the Case.** The Plaintiff in this case, Jonathan H. Morris ("Morris"), is a former employee of Defendant Buvermo Properties, Inc. ("Buvermo").[1] The terms of Morris's employment are set forth in an offer letter dated June 3, 2005, and include an annual salary of $250,000 and certain contingent interests in both current and anticipated real estate projects. As reflected in his offer letter, Morris was not hired for a specific term; rather, he was hired for an indefinite term and his employment was "at-will." Morris was involuntarily terminated in March 2006, less than one (1) year after commencing employment with Buvermo. Morris claims that Buvermo agreed to employ him for a period of not less than ten (10) years and alleges that his termination constitutes a breach of his employment agreement. Morris also asserts the following causes of action: (i) breach of implied covenant of good faith and fair

---

[1]  Plaintiff was hired as Defendant Buvermo Properties, Inc.'s President but never assumed this position because he instead chose to work as an independent contractor through an LLC he formed.

3

dealing (Count II); (ii) anticipatory breach of contract (Count III); (iii) declaratory judgment (Count IV); (iv) intentional misrepresentation/fraud (Count V); and (v) tortious interference with contract (Count VII).

### B.   Basis for Defenses.

(1)   Morris was employed for an indefinite term and, under Virginia common law, his employment was therefore "at-will," terminable by either party with our without notice or cause.

(2)   According to Virginia's statute of frauds (Va. Code. Ann. § 11-2), any agreement that is not to be performed in one (1) year must be in writing signed by the party to be charged. Buvermo's alleged agreement to employ Morris for a term of ten (10) years is not in writing (nor was such a term ever agreed to) and Morris's claims are therefore barred by the statute of frauds.

(3)   Morris's interest in certain of the real estate projects at issue was expressly subject to a two (2) year vesting period. By virtue of his termination less than one (1) year after commencing employment with Buvermo, Morris's interest never vested and he has no enforceable interest in these projects. With respect to the remaining real estate projects in which Morris claims an interest, none of these projects had closed at the time of his termination; further, even if Morris had an interest in these projects (which is denied), such interest had no value and was subject to mandatory redemption in any event according to the operative documents.

(4)   Under Virginia common law, a cause of action for breach of the duty of good faith and fair dealing does not exist in an "at-will" employment agreement, and Morris's Complaint therefore fails to state a claim upon which relief may be granted.

**II.     REPORT REGARDING RULE 26(F) CONFERENCE.**

    **1.     Dispositive Motions.**

No dispositive motions have been filed, although it is anticipated that dispositive motions will be filed with respect to some or all of the claims after discovery.

    **2.     Deadline for Joining Parties and Amending Pleadings.**

The parties recommend that the deadline for joining parties and amending pleadings be September 8, 2006.

    **3.     Assignment to a Magistrate Judge.**

The parties do not wish to have this matter assigned to a magistrate judge.

    **4.     Possibility of Settlement.**

Neither party is averse to the prospect of settlement. However, the parties will not be able to consider specific settlement opportunities until discovery has been completed.

    **5.     Alternate Dispute Resolution.**

Neither party is averse to the prospect of utilizing an alternative dispute resolution mechanism. The parties will be in a better position to evaluate specific possibilities after the completion of discovery.

    **6.     Proposed Dates for Dispositive Motions.**

The parties propose that dispositive motions be due within 30 days after the close of discovery. Once dispositive motions are filed, the parties agree to file Opposition and Reply Memoranda in accordance with the deadlines set forth in Local Rule of the United States District Court for the District of Columbia.

7. **Initial Disclosure Statements.**

The parties will exchange Rule 26(a) initial disclosure statements on or before August 2, 2006.

8. **Discovery Schedule.**

The parties agree that Track Two is the appropriate case tracking schedule for this case.

9. **Expert Disclosures and Depositions.**

The parties agree that expert disclosures should be governed by the time limitations set forth in the Court's Track Two case tracking schedule. The parties further agree that expert depositions shall take place within the assigned discovery period.

10. **Class Actions.**

The parties agree that this is not applicable.

11. **Bifurcation.**

The parties do not presently anticipate the need for bifurcation.

12. **Pretrial Conference Date.**

The parties propose that the Pretrial Conference be held on or before January 8, 2007.

13. **Trial Date.**

The parties respectfully ask the Court to set a trial date at the Pretrial Conference.

14. **Other Matters.**

There are no other matters that the parties wish to bring before the Court at this time.

        Respectfully submitted,

        TOBIN, O'CONNOR, EWING & RICHARD

By:   /s/ Ziad P. Haddad
      David C. Tobin, Esq., D.C. Bar # 395959
      Ziad P. Haddad, Esq., D.C. Bar #469470
      5335 Wisconsin Avenue, N.W., Suite 700
      Washington, D.C. 20015
      Tel: (202) 362-5900
      Fax: (202) 362-5901
      *Attorneys for Plaintiff*

SMITH, LEASE & GOLDSTEIN, LLC

By:   /s/ Marc J. Smith
      Marc J. Smith, Esq.
      D.C. Bar No. 460255
      11 North Washington Street
      Suite 520
      Rockville, MD 20850
      Phone: (301) 838-8950
      *Attorneys for Defendants*