## FIDELIO PROPERTIES

### FIRST AMENDMENT TO FOURTH AMENDED AND

### RESTATED PARTNERSHIP AGREEMENT

THIS AMENDMENT is made as of January 1, 1995, by, between and among the entities whose signatures appear below, each of which is a "Partner" of FIDELIO PROPERTIES, a New York general partnership (the "Partnership").

### RECITALS

A.    The Partnership was formed pursuant to a partnership agreement dated December 31, 1980 between Eroica N.V. and Agrippina Property, N.V. under the name Pimea Partnership.

B.    Fidelio Properties Management, Inc., a Delaware corporation owned in equal shares by Donelux, Inc. and Janivo Realty, Inc. is the managing partner (the "Managing Partner").

C.    The remaining Partners are Donelux, Inc., Janivo Realty, Inc., Orvan, Inc. and F.P. Executive Partners, L.P. ("FPEP").

D.    The Partners amended and restated the partnership agreement on September 1, 1993 by a Fourth Amended and Restated Partnership Agreement (the "Fourth Agreement").

E.    The Partners have agreed to amend the Fourth Agreement as hereinafter set forth.

EXHIBIT

5

D-00282

STATEMENT OF AGREEMENT ·

In consideration of the mutual covenants and benefits herein contained, the parties do hereby amend the Fourth Agreement as follows (as amended the "Agreement"):

1.    Section 3.03 is amended to add a category of Special Existing FPEP Properties and add a new subsection (g) and as so amended is restated in its entirety as follows:

3.03 <u>Distributions and Allocations to FPEP</u>

(a)    From time to time the Management Committee may designate in writing (the "Designation") a property owned or to be acquired by the Partnership (either directly or indirectly through other entities) as an "<u>FPEP Property</u>" and the terms of FPEP's participation therein. The FPEP Properties shall be divided into three classes, (i) those acquired by the Partnership prior to December 31, 1992 (other than those designated as Special Existing FPEP Properties) (the "Existing FPEP Properties") (ii) those acquired thereafter (the "New FPEP Properties") and (iii) those designated as "Special Existing FPEP Properties". Capitalized terms in this Section 3.03 and not defined herein shall have the meaning given to them in the Designation.

(b)    FPEP shall make an initial contribution to the capital of the Partnership of $220,000 as contemplated in Section 2.01 (b), which shall be allocated among the New FPEP Properties in such proportions as the Management Committee shall determine from time to time. FPEP shall not be required to make any further contribution of funds to the Partnership.  However, at the time when the Partnership makes an initial or subsequent Non-FPEP Investment in a New FPEP Property, FPEP shall be entitled, to contribute an amount not to exceed 2.4% of such Non-FPEP Investment to such New FPEP Property and such amount shall be reflected in the Designation.  At such time as the Non-FPEP Partners make an Initial Investment or an Additional Investment in any New FPEP Property, the FPEP Investment in all New FPEP Properties shall be reallocated to the extent deemed appropriate by the Management Committee.

(c)    Subject to (d), (e) and (g) below, funds received by the Partnership from an FPEP Property shall be paid to FPEP to the extent allocated to FPEP in the

-2-

B286074.RICCP2685764

D-00283

Designation for that property; except that distributions to FPEP with respect to an FPEP Property shall only be made at the time of the sale or refinancing of such Property from the net proceeds of such transaction. Any distributions from net cash flow to which FPEP could be entitled but for the previous sentence, shall bear interest at the Hurdle Rate until distributed to FPEP. In no event shall FPEP be required to return to the Partnership any funds distributed to FPEP, regardless of whether a Shortfall (as defined in (f) below) arises thereafter. Subsections (d), (e) and (g) shall not apply to distributions made to FPEP pro rata with the Non-FPEP Partners on account of the FPEP Investment and the Hurdle Rate Amount attributable to such Investment and such distributions shall be made to FPEP notwithstanding the foregoing limitations in this subparagraph (c).

(d)  When a New FPEP Property is sold or otherwise disposed of and FPEP is entitled to a distribution, if the Management Committee shall determine that a Shortfall (as defined in (f) below) exists for all of the New FPEP Properties, taken as a whole, then the distribution to FPEP shall be reduced and the distributions to the Non-FPEP Partners shall be increased by the amount of such Shortfall multiplied by 12.12%.

(e)  When an Existing FPEP Property is sold or otherwise disposed of and FPEP is entitled to a distribution, if the Management Committee shall determine that a Shortfall (as defined in (f) below) exists for all of the Existing FPEP Properties, taken as a whole, then the distribution to FPEP shall be reduced and the distributions to the Non-FPEP Partners shall be increased by the amount of such Shortfall multiplied by 12.12%.

(f)  The Shortfall shall be the amount by which (i) all net cash flow or net proceeds of sale of refinancing received by the Partnership (for the account of the Non-FPEP Partners) from all Properties that were previously sold or otherwise disposed of are less than (ii) the Non-FPEP Investments in all such Properties plus the Hurdle Rate Amounts thereon.

In addition, if, in the judgment of the Management Committee, the value of any New or Existing FPEP Property, as the case may be, which has not been sold or otherwise disposed of, is such that a Shortfall is anticipated, then such amount shall be added to the Shortfall.

(g)  No distribution with respect to a Special Existing FPEP Property shall be made to FPEP until both Special Existing FPEP Properties have been sold or otherwise disposed of. If the Management Committee shall determine

-3-

D-00284

that a Shortfall (as defined in (f) above) exists for either Special Existing FPEP Property, then the distribution, if any, to FPEP from the other Special Existing FPEP Property shall be reduced and the distributions to the Non-FPEP Partners shall be increased by the amount of such Shortfall multiplied by 20.20%.

(h)    Partnership income, gain, loss or deduction or any special item of revenue) attributable to an FPEP Property, shall be allocated among the Partners in the manner provided in the Designation (with such changes as the Management Committee shall make from time to time to reflect FPEP's interest and the other Partners' interest in such FPEP Property), except that the allocation of profit attributable to amounts reallocated on account of a Shortfall pursuant to (d), (e) or (g) above, respectively, shall be reallocated among the Non-FPEP Partners.

2.    Except as amended hereby the Partnership Agreement shall continue in full force and effect.

3.    This Amendment may be executed in a number of counterparts, all of which together shall for all purposes constitute one Agreement, binding on all the Partners.

IN WITNESS WHEREOF, the Partners have executed this Agreement as of the day and year first above written.

Partners                              Address/Telex

ORVAN, INC.                           c/o Buvermo Properties, Inc.
                                      700 13th Street, Suite 325
                                      Washington, D.C. 20005
By:_____                Telefax:  (202) 347-4545
   Frans H. J. Boons
   Designated Representative

DONELUX, INC.                         c/o Buvermo Properties, Inc.
                                      700 13th Street, Suite 325
                                      Washington, D.C. 20005
By:_____                Telefax:  (202) 347-4545
   Frans H. J. Boons
   Designated Representative

D-00285

JANIVO REALTY, INC.

By: _____
    Robert C.M.H. Specken
    Designated Representative

c/o Buvermo Properties, Inc.
700 13th Street, Suite 325
Washington, D.C. 20005
Telefax: (202) 347-4545


FIDELIO PROPERTIES MANAGEMENT INC.

By: _____
    John Gardner, President

c/o Buvermo Properties, Inc.
700 13TH Street, Suite 325
Washington, D.C. 20005
Telefax: (202) 347-4545


F.P. EXECUTIVE PARTNERS, L.P.
By:  F.P. Investments, Inc.,
     General Partner

By: _____
    John Gardner, President

c/o Buvermo Properties, Inc.
700 13th Street, Suite 325
Washington, D.C. 20005
Telefax:    (202) 347-4545

B286074.RICCP2685764

D-00286

FOURTH AMENDED AND RESTATED PARTNERSHIP AGREEMENT

OF

FIDELIO PROPERTIES

A New York General Partnership

Dated: As of September 1, 1993

y181945.ricCP2685764

D-00254

# F I D E L I O   P R O P E R T I E S

## T A B L E   O F   C O N T E N T S

| | | |
|---|---|---|
| RECITALS | | 1 |
| STATEMENT OF AGREEMENT | | 1 |
| ARTICLE I | GENERAL PROVISIONS | 1 |
| 1.01 | Name of the Partnership | 1 |
| 1.02 | Business of the Partnership | 1 |
| 1.03 | Principal Office of the Partnership | 2 |
| 1.04 | Duration of the Partnership | 2 |
| 1.05 | Partners' Addresses | 2 |
| 1.06 | Title to Partnership Property | 2 |
| ARTICLE II | CAPITAL CONTRIBUTIONS, CAPITAL ACCOUNT, PARTNERSHIP INTEREST | 2 |
| 2.01 | Contributions to Capital/Property | 2 |
| 2.02 | Further Contributions | 2 |
| 2.03 | Capital Accounts | 3 |
| 2.04 | Partner's Partnership Interest | 3 |
| ARTICLE III | PROFITS AND LOSSES; CASH DISTRIBUTIONS | 3 |
| 3.01 | Profits and Losses | 3 |
| 3.02 | Distributions of Excess Cash | 4 |
| 3.03 | Distributions and Allocations to FPEP | 4 |
| ARTICLE IV | MANAGEMENT | 6 |
| 4.01 | Partnership Policy Decisions | 6 |
| 4.02 | Removal from Management Committee | 7 |
| 4.03 | Management of the Partnership | 7 |

**D-00255**

T A B L E   O F   C O N T E N T S (Cont'd)

| | | |
|---|---|---|
| 4.04 | Managing Partner | 8 |
| 4.05 | Emergency Action | 9 |
| 4.06 | Costs and Expenses | 9 |
| 4.07 | No Special Compensation for Partners | 10 |
| 4.08 | Exculpation and Indemnification of Partners | 10 |
| 4.09 | Appointment of Committees | 10 |
| 4.10 | FPEP's Acknowledgment | 10 |
| 4.11 | Partners' Discretion | 11 |
| ARTICLE V | BOOKS, RECORDS AND BANK ACCOUNTS | 11 |
| 5.01 | Books and Records | 11 |
| 5.02 | Accounting Method and Fiscal Year | 12 |
| 5.03 | Reports | 12 |
| 5.04 | Bank Accounts | 13 |
| 5.05 | Valuation of Partnership Assets | 13 |
| ARTICLE VI | TRANSFER OF INTERESTS | 14 |
| 6.01 | Assignment of Partner's Interests | 14 |
| 6.02 | Admission of Additional Partner | 15 |
| 6.03 | No Withdrawal of Partners | 15 |
| 6.04 | New Partners and Transferees of Partnership Interests | 16 |

D-00256

T A B L E   O F   C O N T E N T S (Cont'd)

| | | |
|---|---|---|
| 6.05 | Section 754 Election | 16 |
| ARTICLE VII | DISSOLUTION AND TERMINATION | 17 |
| 7.01 | Events of Dissolution | 17 |
| 7.02 | Continuation; Conduct of Business Pending Liquidation | 17 |
| 7.03 | Distribution Upon Liquidation | 18 |
| ARTICLE VIII | MISCELLANEOUS | 19 |
| 8.01 | Notices | 19 |
| 8.02 | Successors and Assigns | 19 |
| 8.03 | Amendment | 20 |
| 8.04 | Partition | 20 |
| 8.05 | No Waiver | 20 |
| 8.06 | Entire Agreement | 20 |
| 8.07 | Captions | 20 |
| 8.08 | Counterparts | 20 |
| 8.09 | Applicable Law | 20 |
| 8.10 | Arbitration | 20 |
| 8.11 | Power of Attorney | 21 |
| 8.12 | Competition | 21 |
| SCHEDULE A | Partnership Percentages | |

D-00257

FIDELIO PROPERTIES

FOURTH AMENDED AND RESTATED PARTNERSHIP AGREEMENT

THIS AGREEMENT is made as of September 1, 1993, by, between and among the entities whose signatures appear below, each of which is a "Partner" of FIDELIO PROPERTIES, a New York general partnership (the "Partnership").

RECITALS

A.    The Partnership was formed pursuant to a partnership agreement dated December 31, 1980 between Eroica N.V. and Agrippina Property, N.V. under the name Pimea Partnership.

B.    F. P. Executive Partners, L. P., a Delaware limited partnership ("FPEP") has joined the Partnership effective as of the date hereof.

C.    Fidelio Properties Management, Inc., a Delaware corporation owned in equal shares by Donelux, Inc. and Janivo Realty, Inc. is the managing partner (the "Managing Partner").

D.    The remaining Partners are Donelux, Inc., Janivo Realty, Inc., and Orvan, Inc.

E.    The Partners have decided to amend and restate the existing partnership agreement to reflect their understanding.

STATEMENT OF AGREEMENT

In consideration of the mutual covenants and benefits herein contained, the parties do hereby amend and restate their existing partnership agreement in its entirety to read as follows (the "Agreement"):

ARTICLE 1

GENERAL PROVISIONS

1.01    Name of the Partnership.   The name of the Partnership shall be "Fidelio Properties", or such other name as the Management Committee (as such term is defined in Section 4.01) may from time to time determine.

1.02    Business of the Partnership.   The business of the Partnership shall be to acquire, own, develop, construct, finance (as borrower or lender), operate and sell interests in real estate or related businesses located in the United States of America (or in entities with substantial interests or capabilities in real estate or related businesses), the interim investment of Partnership assets in liquid assets, the creation of partnerships, corporations, trusts and other entities and the issuance of interests therein and such other activities as the

Management Committee shall deem to be reasonably related to the Partnership's business.

    1.03  <u>Principal Office of the Partnership</u>.  The Principal office of the Partnership shall be 700 13th Street, Suite 325, Washington, D. C. 20005, or at such other place as the Management Committee may establish.

    1.04  <u>Duration of the Partnership</u>.  The Partnership commenced January 1, 1981 and shall continue until terminated in accordance with Article VII.

    1.05  <u>Partners' Addresses</u>.  The addresses of the Partners are as set forth opposite their signatures below.

    1.06  <u>Title to Partnership Property</u>.  All property owned by the Partnership, whether real or personal, tangible or intangible, shall be deemed to be owned by the Partnership as an entity, and no Partner shall have any direct ownership of such property.  Title to Partnership assets may be held by a nominee which may be one or more individuals, corporations, partnerships, trusts or other entities, but such nominees may not become Partners without the approval of the Management Committee.

<u>ARTICLE II</u>

<u>CAPITAL CONTRIBUTIONS, CAPITAL ACCOUNT,
PARTNERSHIP INTEREST</u>

    2.01  <u>Partnership Percentage and Share of Capital</u>.

    (a)  The Partners and their predecessors have made various contributions of cash and property to the capital of the Partnership.

    (b)  FPEP shall contribute $200,000 to the capital of the Partnership on or before December 31, 1993 and an additional $20,000 on or before June 30, 1994.

    (c)  <u>Schedule A</u> sets forth each Partner's Partnership Percentage as of the date hereof.

    2.02  <u>Further Contributions</u>.  No Partner shall be obligated or required to make or entitled to make any additional contributions to the capital of the Partnership, except as otherwise agreed by the Management Committee or as provided in Section 3.03.

    2.03  <u>Capital Accounts</u>.  Each Partner shall have a capital account (the "Capital Account") consisting of its contributions to capital pursuant to Article II (i) increased by its additional contributions to capital of cash and property and further increased by its share of Partnership profits and gains (including profits and gains exempt from tax), (ii) decreased by

-2-

D-00259

its share of Partnership losses, any cash distributions, and distributions of property, and its share of expenditures of the Partnership described in Section 705(a)(2)(B) of the Internal Revenue Code of 1986 (the "Code"), and (iii) otherwise adjusted in accordance with all mandatory requirements of Section 1.704-1(b)(2)(iv) of the Regulations adopted pursuant to the Code (the "Regulations"). All references in this Agreement to the Code or to the Regulations shall mean the Code or the Regulations as in effect on the date hereof. Any property other than cash contributed pursuant to Article II after the date hereof or distributed hereafter shall be taken into account for purposes of reflecting such contributions or distributions in such Partner's Capital Account at its fair market value (net of liabilities assumed by the Partnership or Partner, as the case may be, and liabilities to which such property is subject) Transfer of a Partnership Interest (as hereinafter defined) shall include a transfer of the transferor's Capital Account and the transferred Capital Account shall be combined with the transferee's Capital Account. Each Partner's distributive share of tax depreciation, amortization and gain or loss shall be determined so as to take into account the variation between adjusted tax basis and book value of Partnership property in accordance with Code Section 704(c).

     2.04 <u>Partner's Partnership Interest</u>. Each Partner's "Partnership Interest" shall consist of its entire interest in the Partnership and its rights under this Agreement, including its Capital Account, its right to receive distributions, if any, and its right to vote on Partnership matters.

ARTICLE III

PROFITS AND LOSSES; CASH DISTRIBUTIONS

     3.01 <u>Profits and Losses</u>. Subject to Section 3.03, the profits and losses of the Partnership for any fiscal year shall be shared in accordance with a composite of the Partners' respective Partnership Percentages as they exist from time to time during the year. Whenever a Partner enters or leaves the Partnership, the Partnership shall allocate items of income, loss, gain, deduction and credit to the Partners by an interim closing of the Partnership books which traces the Partnership items to the particular segment of the Partnership's taxable year during which such items are incurred, unless the new or departed Partner and the Management Committee agree to make such allocation by a proration of Partnership income, loss, gain, deduction and credit for the entire year based on the number of days the entering or leaving Partner was a member of the Partnership. The Managing Partner shall calculate each Partner's composite Partnership Percentage for the year by taking a weighted average (based on number of days) of its Partnership Percentage from time to time during the year. For purposes of determining Capital Accounts, all items of income, depreciation, gain, loss, or deduction shall be shared among the Partners in

-3-

D-00260

accordance with their respective Partnership Percentages, provided that, with respect to any property contributed to the Partnership after March 31, 1984, such items shall be shared among the Partners so as to take into account the variation between the basis of such property to the partnership and its fair market value at the time of contribution pursuant to Section 704(c) of the Code.

    3.02   Distributions of Excess Cash.   The Management Committee, in its sole discretion, shall determine when cash or other assets of the Partnership shall be distributed to the Partners and when such cash or other assets shall be reserved for Partnership purposes, including the acquisition or renovation of properties.   Any cash which is thus identified as excess cash shall be distributed to the Partners, after giving effect to Section 3.03, pro rata in accordance with the respective Capital Accounts of the Partners other than FPEP immediately prior to the date of distribution.   The Management Committee may refrain from distributing cash to Partners even though Partnership income has been credited to the Partners' Capital Accounts.   The Management Committee shall make a determination whether there is excess cash at least quarterly and shall promptly distribute any cash determined to be excess.

    3.03   Distributions and Allocations to FPEP.

        (a)   From time to time the Management Committee may designate in writing (the "Designation") a property owned or to be acquired by the Partnership (either directly or indirectly through other entities) as an "FPEP Property" and the terms of FPEP's participation therein.   The FPEP Properties shall be divided into two classes, those acquired by the Partnership prior to December 31, 1992 (the "Existing FPEP Properties") and those acquired thereafter (the "New FPEP Properties").   Capitalized terms in this Section 3.03 and not defined herein shall have the meaning given to them in the Designation.

        (b)   FPEP shall make an initial contribution to the capital of the Partnership of $220,000 as contemplated in Section 2.01(b), which shall be allocated among the New FPEP Properties in such proportions as the Management Committee shall determine from time to time.   FPEP shall not be required to make any further contribution of funds to the Partnership.   However, at the time when the Partnership makes an initial or subsequent Non-FPEP Investment in a New FPEP Property, FPEP shall be entitled, to contribute an amount not to exceed 2.4% of such Non-FPEP Investment to such New FPEP Property and such amount shall be reflected in the Designation.   At such time as the Non-FPEP Partners make an Initial Investment or an Additional Investment in any New FPEP Property, the FPEP Investment in all New FPEP Properties shall be reallocated to the extent deemed appropriate by the Management Committee.

-4-

D-00261

(c)   Subject to (d) and (e) below, funds received by the Partnership from an FPEP Property shall be paid to FPEP to the extent allocated to FPEP in the Designation for that Property; except that distributions to FPEP with respect to an FPEP Property shall only be made at the time of the sale or refinancing of such Property from the net proceeds of such transaction.  Any distributions from net cash flow to which FPEP would be entitled but for the previous sentence, shall bear interest at the Hurdle Rate until distributed to FPEP.  In no event shall FPEP be required to return to the Partnership any funds distributed to FPEP, regardless of whether a Shortfall (as defined in (f) below) arises thereafter.  Subsections (d) and (e) shall not apply to distributions made to FPEP pro rata with the Non-FPEP Partners on account of the FPEP Investment and the Hurdle Rate Amount attributable to such Investment and such distributions shall be made to FPEP notwithstanding the foregoing limitations in this subparagraph (c).

(d)   When a New FPEP Property is sold or otherwise disposed of and FPEP is entitled to a distribution, if the Management Committee shall determine that a Shortfall (as defined in (f) below) exists for all of the New FPEP Properties, taken as a whole, then the distribution to FPEP shall be reduced and the distributions to the Non-FPEP Partners shall be increased by the amount of such Shortfall multiplied by 12.12%.

(e)   When an Existing FPEP Property is sold or otherwise disposed of and FPEP is entitled to a distribution, if the Management Committee shall determine that a Shortfall (as defined in (f) below) exists for all of the Existing FPEP Properties, taken as a whole, then the distribution to FPEP shall be reduced and the distributions to the Non-FPEP Partners shall be increased by the amount of such Shortfall multiplied by 12.12%.

(f)   The Shortfall shall be the amount by which (i) all net cash flow or net proceeds of sale or refinancing received by the Partnership (for the account of the Non-FPEP Partners) from all Properties that were previously sold or otherwise disposed of are less than (ii) the Non-FPEP Investments in all such Properties plus the Hurdle Rate Amounts thereon.

In addition, if, in the judgment of the Management Committee, the value of any New or Existing FPEP Property, as the case may be, which has not been sold or otherwise disposed of, is such that a Shortfall is anticipated, then such amount shall be added to the Shortfall.

(g)   Partnership income, gain, loss or deduction (or any special item of revenue) attributable to an FPEP Property, shall be allocated among the Partners in the manner provided in the Designation (with such changes as the Management Committee shall make from time to time to reflect FPEP's interest and the other Partners' interest in such FPEP Property), except

-5-

D-00262

that the allocation of profit attributable to amounts reallocated on account of a Shortfall pursuant to (d) or (e) above, respectively, shall be reallocated among the Non-FPEP Partners.

ARTICLE IV

MANAGEMENT

4.01  Partnership Policy Decisions.  Except as otherwise expressly provided in this Agreement, all decisions respecting matters set forth herein or otherwise affecting or arising out of the conduct of the business of the Partnership shall be made by a management committee (the "Management Committee").  Donelux, Inc. and Janivo Realty, Inc. shall constitute the Management Committee.  They shall act by vote of at least fifty-one percent (51%) of the members of the Management Committee, each member having one vote.

(a)  Each Partner may act on Partnership matters, including the modification or amendment of this Agreement, through a designated agent or representative (the "Designated Representative") pursuant to written authorization with full power and authority to bind such Partner with respect to this Agreement, any amendment hereto, and all aspects of the business of the Partnership.  Each Designated Representative may be granted the power to appoint substitute Designated Representatives.

(b)  No Partner, as a member of the Management Committee or as a Partner, may vote upon, or otherwise act in connection with, any agreement or understanding between the Partnership, on the one hand, and the Partner or its Affiliates (as such term is defined in Section 6.01), on the other, or consent to any transfer of a Partnership Interest in which it or its Affiliate is transferor or transferee directly or indirectly. In such event all actions of the Partnership shall be taken by such disinterested member(s) of the Management Committee acting alone.  The members of the Management Committee shall be entitled to cause the Partnership to retain the services of their respective Affiliates in the performance of their duties and obligations under this Agreement, unless expressly prohibited by a specific provision hereof, so long as all dealings are on terms and conditions that are not materially less favorable to the Partnership than the terms and conditions available from non-affiliated third parties or are otherwise approved by the Management Committee.

(c)  If the interest of any Partner shall be transferred in violation of Article VI, such Partner shall be barred from being a member of the Management Committee and shall not be entitled to vote on any matters which are submitted to a vote of the Partners.  In such event all actions of the Partnership shall be taken by the other member(s) of the

-6-

D-00263

Management Committee or Partner(s) other than FPEP, as the case may be, acting alone.

4.02  Removal from Management Committee.  No Partner may serve as a member of the Management Committee if it or any of its Affiliates is in material breach of its obligations under this Agreement or other material agreements with the Partnership, or if it or any of its Affiliates is a bankrupt Partner as described in Section 7.01(c).  In such event all actions of the Partnership shall be taken by the other member of the Management Committee acting alone.

4.03  Management of the Partnership.  The Management Committee shall have full power and authority to act on behalf of and to bind the Partnership and shall have all specific rights and powers required or appropriate to the operation and management of the business of the Partnership which, by way of illustration but not by way of limitation, shall include the right and power:  (i) to take actions normal or customary for the owner of properties similar to the partnership's assets; (ii) to deal with federal, state and local governments and their agencies and authorities; (iii) to commence, defend, and settle litigation; (iv) to procure and maintain insurance covering such risks as the Management Committee shall determine; (v) to borrow funds and to guarantee obligations of others; (vi) to acquire, take, hold, sell or otherwise dispose of all property and assets, real, personal and mixed, in the name of a nominee; (vii) to form partnerships, corporations and other entities and issue interests therein and acquire shares thereof in public or private transactions; (viii) to execute and deliver deeds, deeds of trust, notes, leases, subleases, mortgages, bills of sale, financing statements, security agreements and any and all other instruments necessary or incidental to the conduct of the business of the Partnership and the financing thereof; (ix) to admit additional Partners to the extent such admission is authorized by this Agreement; (x) to coordinate all accounting and clerical functions of the Partnership; (xi) to employ such accountants, attorneys, managers, agents and other personnel as the Management Committee deems necessary or desirable to carry on the business of the Partnership; (xii) to sell, lease, convey, transfer, demolish, exchange or otherwise dispose of all or any parts of the property and other assets of the Partnership at any time or from time to time, (xiii) to adopt the Partnership's annual budget and such other budgets and plans to govern the conduct of the Partnership's business as it deems appropriate, and (xiv) approve each annual financial statement and each annual current value appraisal presented pursuant to Section 5.05. The members of the Management Committee shall cause to be elected as directors of Buvermo Properties, Inc. and of other subsidiary entities those Designated Representatives of the members of the Management Committee who desire to serve as such and/or such other persons as the Management Committee may deem appropriate.

y181945.ricCP2685764

D-00264

4.04  Managing Partner.  The Management Committee may designate, from time to time, one or more Partners to act as managing partner of the Partnership (the "Managing Partner"). Each Managing Partner will have full power and authority to act for and on behalf of the Partnership and to bind the Partnership on all matters on which the Management Committee or the Partners have taken or authorized action to be taken pursuant to this Agreement.  Additionally, the Management Committee hereby authorizes the Managing Partner to take all actions of the type described in subsections 4.03(i), (ii) to the extent needed to develop real estate assets of the Partnership, (iii) provided the amount in issue does not exceed $5,000,000 or otherwise adversely affects the Partnership or its business in a material way, (iv), (viii) only with respect to leases and subleases, [and then subject to any criteria established by the Management Committee,] (x) and (xi) subject to direction from the Management Committee or its audit committee with respect to accounting matters, provided such actions do not conflict with the annual budgets adopted pursuant to Section 4.03 and such other directions as the Management Committee may provide.  Unless expressly authorized by the Management Committee, the Managing Partner shall not have authority to carry out the transactions described in subsections 4.03 (ii) or (iii) except as provided above, (v), (vi), (vii), (viii) except as provided above with respect to leases, (ix), (xii), (xiii) or (xiv) except as provided above.  The delegation of authority by the Management Committee to the Managing Partner contained in Section 4.04 may be modified at any time and from time to time by action of the Management Committee.

(a)  Any person dealing with the Partnership shall be entitled to rely upon the authority of the Managing Partner and need not inquire further into the proceedings of the Partnership or the authority of the Managing Partner to bind the Partnership.

(b)  The Management Committee has designated Fidelio Properties Management, Inc. ("FPM") as the Managing Partner and it shall serve without compensation.

(c)  The business of the Partnership shall be operated and managed by the Managing Partner to the best of its ability, in a careful and prudent manner and in accordance with good industry practice.

4.05  Emergency Action.  If, in the case of activities described in subsections 4.03(i), (ii) and (iii), a situation shall arise which places any asset (or any material portion thereof) of the Partnership in immediate danger of loss, destruction, material damage or injury to persons and the immediate action or attention of the Partnership is required in order to preserve or protect such asset(s), and the Managing Partner shall have attempted to contact the Designated Representatives of the members of the Management Committee, and shall be unable to communicate with a majority of such Designated

-8-

D-00265

Representatives in order to authorize any needed action, and no member of the Management Committee who shall have been successfully contacted by the Managing Partner shall have objected to the proposed action, then the Managing Partner shall have full power and authority to act for and on behalf of the Partnership and to bind the Partnership without prior authorization or action of the Management Committee.  Any person dealing with the Partnership in such circumstance shall be entitled to rely upon the authority of the Managing Partner to bind the Partnership.  The Managing Partner shall immediately communicate the results of any such actions to all of the members of the Management Committee by telephone, telex or other available means of communication.  The grant of authority to the Managing Partner in this Section 4.05 shall be sufficient authorization for it to act on behalf of the Partnership in such an emergency, notwithstanding any other provisions of this Agreement.

4.06  <u>Costs and Expenses</u>.  The Partnership shall be responsible for paying all costs and expenses of forming and continuing the Partnership and conducting its business.  Any such costs and expenses which are or have been paid by a Partner on behalf of the Partnership shall be reimbursed by the Partnership so long as such cost or expense was intended to advance the Partnership's business and was deemed by the Management Committee to be reasonable.

4.07  <u>No Special Compensation for Partners</u>.  No Partner shall receive compensation for services rendered pursuant to this Agreement, unless same is expressly approved by the Management Committee.

4.08  <u>Exculpation and Indemnification of Partners</u>.  No Partner (nor any of its officers, directors, shareholders, agents or attorneys, or Designated Representatives, each of which is included in the term Partner for purposes of this Section 4.08) shall be liable, responsible or accountable in damages or otherwise to the Partnership or to any other Partner for any act or omission under the provisions of this Agreement, unless such act or omission constitutes intentional misconduct, gross negligence or fraud.  Each Partner shall be indemnified and held harmless by the Partnership from and against any liabilities, damages, costs and expenses (including reasonable attorneys' fees) suffered or incurred by such Partner by reason of any action, proceeding or claim asserted or instituted against it in connection with the performance of its duties and obligations hereunder; provided, however, that a Partner shall not be so indemnified for any such liability, damage, cost or expenses' resulting from an act or omission which is finally determined by an arbitration proceeding or a court of competent jurisdiction to constitute intentional misconduct, gross negligence or fraud.

4.09  <u>Appointment of Committees</u>.  From time to time the Management Committee may delegate to subcommittees comprised of

D-00266

certain of its members or other persons authority to act for and
on behalf of the Management Committee in discharging its
obligations under this Agreement.  At the request of any member
of the Management Committee, the Management Committee may
override any action of any subcommittee.

    4.10 <u>FPEP's Acknowledgment</u>.  FPEP acknowledges and
agrees that notwithstanding its capital contributions and FPEP's
right to its interest in the Partnership, no investment in or
interest of FPEP in the Partnership shall limit in any way the
rights of the other Partners and/or the Management Committee to
conduct the Partnership's business in a manner that best serves
the interests of such other Partners.  Accordingly, FPEP agrees
that even if such decision would have an adverse impact on FPEP's
investment or interest in the Partnership or the benefits to be
derived therefrom by FPEP (and even if such impact on FPEP is
more severe than the impact on other Partners):

    (i)    FPEP is not entitled to vote on any Partnership
matters;

    (ii)   the Management Committee and/or the Partners
other than FPEP, as the case may be, have full and complete
power and authority to conduct the Partnership's business
and deal with the Partnership's assets in any manner they
may determine in their sole discretion;

    (iii)  the Management Committee and/or the Partners may
exercise their powers pursuant to this Agreement to (aa)
authorize transactions with Affiliates of a Partner or other
self-dealing between the Partners or their Affiliates and
the Partnership, (bb) acquire, dispose of, encumber or
modify the terms of the Partnership's interest in a property
or entity, including an FPEP Property, (cc) set policies,
establish budgets and reduce, eliminate or defer the
allocation of resources to any FPEP Property, (dd) determine
which properties shall be FPEP properties and the extent and
duration of FPEP's interest, (ee) dissolve the Partnership
or admit new Partners whose interests may be senior to
FPEP's, and (ff) otherwise take actions on behalf of the
Partnership which may adversely affect FPEP's Partnership
Interest or the economic value thereof; and

    (iv)   decisions of the Management Committee and/or the
Partners other than FPEP may disproportionately benefit
other Partners or harm FPEP and FPEP waives any right to
challenge such decisions on the grounds that it has
adversely and/or disproportionately affected the
Partnership, FPEP or its interest in the Partnership.

    4.11 <u>Partners' Discretion</u>.  Any decision, consent,
approval, authorization or other determinations by the
Management Committee or the Partners other than FPEP may be made

-10-

**D-00267**

in the unlimited discretion of the Management Committee or such
Partners as to what is in their respective best interests.

## ARTICLE V

### BOOKS, RECORDS AND BANK ACCOUNTS

5.01  <u>Books and Records</u>.  The Partnership shall keep or
cause to be kept true books of account with respect to its
operations.  Such books shall be maintained at the principal
office of the Partnership or at such other offices as the
Management Committee shall determine, and each Partner and its
duly authorized representatives shall at all reasonable times
have access to such books for the purpose of reviewing or copying
same.

5.02  <u>Accounting Method and Fiscal Year</u>.  The
Partnership's books shall be kept on the accrual method of
accounting in accordance with United States federal income tax
law.  The Management Committee is authorized to select accounting
methods for the Partnership and to modify such method.  The
Partnership's books shall be closed and balanced at the end of
each Partnership year.  The fiscal year of the Partnership shall
be the calendar year, unless otherwise determined by the
Management Committee from time to time.  The Management Committee
shall select the partnership's accountants.

5.03  <u>Reports</u>.  The Management Committee shall cause the
following reports to be delivered to each Partner:

(i)    Within one hundred and twenty (120) days after
the end of each fiscal year an audited financial report of
Ohe Partnership, including balance sheets on both a cost
basis and a current value basis or such other basis as the
Management Committee shall elect, and a profit and loss
statement, and, if such profit and loss statement is
prepared on an accrual basis, then a cash flow and source
and application of funds statement shall be included;

(ii)   Within seventy (70) days after the end of each
fiscal year such information as may be needed to enable each
Partner to file its United States federal income tax return
and any other required income tax returns;

(iii)  Within forty-five (45) days after each calendar
quarter an unaudited statement of income, expense and cash
flow for the Partnership, a Partnership balance sheet and a
report on significant new developments.

To the extent that information needed for any of
the foregoing reports is not available from joint ventures in
which the Partnership participates, the Management Committee may
delay these reports or issue interim reports on the required
reporting dates.  The cost of all reporting shall be paid by the

-11-

D-00268

Partnership as a Partnership expense. Any Partner other than FPEP may, at any time and at its own expense, cause an audit of the Partnership books to be made by a certified public accountant of its own selection; provided such audits not be made more often than once in every 12 months.

Notwithstanding the foregoing, the Management Committee may, at any time, restrict the reports being delivered to FPEP to such reports with respect to FPEP Properties as the Management Committee determines to be relevant to FPEP's interest in such FPEP Properties.

5.04  Bank Accounts.  The Management Committee shall cause one or more Partnership accounts to be maintained in banks selected by it, which accounts shall be used for the deposit of all gross income received from operation of the Partnership and the payment of expenditures incurred by the Partnership. Separate accounts may be (but need not be) maintained for each Partnership property. The Management Committee may designate or allow the Managing Partner to designate such signatories for the accounts as they determine. Such signatories need not be Partners. All funds shall be and remain the property of the Partnership.

5.05  Valuation of Partnership Assets.  On or before December 1 of each year Buvermo Properties, Inc. shall prepare and deliver to the appraiser described below a market value appraisal of each of the Partnership's real estate assets (including notes due to the Partnership and secured by interests in real property and other material assets related to its real estate). All estimates of value shall speak as of the following December 31. Such appraisals shall be certified by a real estate appraisal company (the "Appraiser") selected by the Management Committee, which company shall be of national reputation with a staff of M.A.I. appraisers. Once the Appraiser has been selected, it shall continue as the Appraiser until replaced by a vote of the Management Committee. GA/Partners, Incorporated, One Thomas Circle, N.W., Washington, D. C. 20005 has been designated as the Appraiser. The appraisal in each year shall be prepared in a manner consistent with that prepared as of December 31, 1988 and in accordance with such instructions as may be agreed upon by the Management Committee from time to time. The appraisal of each investment in real property shall be separately set forth. The Appraiser shall complete its certification on or before December 31 (or such other date as the Management Committee may designate) of each year and a summary of the results, with comparisons to the prior year on a property by property basis, shall be submitted to the Management Committee for approval and when approved shall be provided to all Partners. The appraisals at December 31 of each year shall be used for setting the market values of the Partnership's real property in the following year, unless modified by the Management Committee. Notwithstanding the foregoing, the Management Committee in any year may determine the

-12-

D-00269

value of Partnership assets based—on the previous year's values
or in such other manner as it may determine.

ARTICLE VI

TRANSFER OF INTERESTS

6.01  Assignment of Partner's Interest.

(a)  A Partner shall not sell, assign, give,
transfer, bequeath, encumber, pledge, hypothecate or otherwise
dispose of, in any manner whatsoever, or agree to do any of the
foregoing, directly or indirectly (any such transaction is
referred to as a "Transfer"), its interest in the Partnership,
which term includes the benefits accruing therefrom and its
interest (legal or beneficial) in any Partnership property,
whether now owned or hereafter acquired, in whole or in part,
without the prior written consent of the Management Committee.
The term Transfer also includes the disposition of an interest in
or change in the holders of shares or other equity interests in
any Partner or in any parent (direct or indirect) corporation or
entity otherwise controlling a Partner.  Each Partner shall
notify the Management Committee of any and all such Transfers. A
Transfer made other than in accordance with the requirements of
Article VI shall be void, and shall not be reflected on the books
of the Partnership.  No person or entity purporting to acquire
any interest in violation of such requirements shall be entitled
to receive any distributions of capital, or shall it be entitled
to share in profits or losses, or to participate in Partnership
decisions assert any other rights or privileges under this
Agreement.

(b)  Notwithstanding Section 6.01(a), any Partner
other than FPEP may Transfer all or part of its interest in the
Partnership to or for the benefit of an Affiliate of such
Partner; provided such Transfer does not violate any agreements
by which the Partnership or a Partner is bound and such Transfer
complies with Section 6.04.  An "Affiliate" is a trust,
corporation or other entity which is controlled by such Partner,
is under common control with such Partner or controls such
Partner at the time of Transfer and thereafter.  For purposes of
determining an Affiliate, (i) control by a natural person shall
be deemed to include control by his spouse, parents, siblings,
aunts and uncles (by blood), the lineal descendants of any of the
foregoing (by blood or adoption) and the spouse of each of the
foregoing, and (ii) the principal shareholders of Donelux, Inc.
and Janivo Realty, Inc. shall not be deemed Affiliates of each
other by virtue of the fact that they jointly hold interests in
FPM or, indirectly, FPEP.  Control shall mean the ownership of at
least 50% of the voting or beneficial interests in each entity in
any chain of ownership.

(c)  Notwithstanding Section 6.01(a), each of
FPEP's limited partners may Transfer their respective interests

-13-

    D-00270

in FPEP (i) pursuant to Section 8.9 of the FPEP Limited Partnership Agreement dated as of August 30, 1993 (the "FPEP Agreement"), and (ii) to their respective spouse, parents, adult children, adult siblings and lineal descendants of any of the foregoing (by blood or adoption) or the spouse of any of the foregoing or any trust for the benefit of any of the foregoing, provided same is controlled in all respects by the limited partner as at September 1, 1993.

(d)    In the event that, pursuant to Section 8.9 of the FPEP Agreement, FPEP shall elect to or be required to redeem the partnership interest of any limited partner of FPEP, then the Partnership shall furnish to F.P. Investments, Inc., as general partner of FPEP, the funds required for such redemption promptly upon receipt of notice from F.P. Investments, Inc. that the purchase price for such limited partner's partnership interest has been finally determined in accordance with Section 8.9 of the FPEP Agreement.

(e)    The provisions of this Section 6.01 shall not be construed to prohibit any parent corporation of a Partner, other than FPEP, from encumbering, pledging or hypothecating its assets, provided that the interest in the Partnership is not directly or indirectly the principal asset of such parent.

(f)    Each Partner hereby approves and ratifies any Transfer made in accordance with this Article VI, accepts such transferee as a Partner in the Partnership (or in FPEP, as the case may be) and authorizes the Managing Partner to execute, for the Partnership and each Partner, any documents required by law to effect admission of such permitted transferee.

6.02    Admission of Additional Partner.    At any time the Management Committee may admit additional Partners to the Partnership and elect one or more of such Partners to be members of the Management Committee.    Any such additional Partner shall be issued an interest in the Partnership in exchange for cash and such other assets as the Management Committee deems appropriate. All valuations of assets and Partnership Interests by the Management Committee and the Partnership Percentage issued to the additional Partner may be senior or junior to or pari passu with any Partner and shall be binding on all Partners.

6.03    No Withdrawal of Partners    No Partner may withdraw from the Partnership at any time.

6.04    New Partners and Transferees of Partnership Interests.    Notwithstanding any other provisions of this Agreement, no new Partner or transferee of an interest in the Partnership shall be deemed to be a Partner hereunder or have any rights under this Agreement unless (i) such transferee acquired its interest in accordance with the provisions of this Agreement, (ii) such transferee and its transferor have delivered to the Managing Partner a written assignment of the interest in the

-14-

D-00271

Partnership and an agreement (in form and substance acceptable to the Management Committee) whereby the transferee agrees to be bound by the terms of this Agreement and assumes all of the obligations and liabilities of its transferor hereunder, (iii) such transferee has paid or provided for payment of all costs of the Partnership in connection with the Transfer, (iv) such new Partner or transferee is either a corporation organized under the laws of the United States or a United States partnership comprised of such corporations, or a United States trust for the benefit of a Partner, (v) the Managing Partner, on behalf of all the Partners, shall have signed an instrument consenting to such new Partner's or transferee's admission, which consent shall be provided as to each new Partner or transferee that meets the requirements of Article VI, and (vi) the Transfer shall not result in a termination of the Partnership for United States Federal Income Tax purposes.

(a)   No Partner may Transfer its interest unless it delivers to the Managing Partner an acceptable opinion of counsel that such Transfer does not violate the securities laws of the United States, its states, territories or possessions.

(b)   With respect to any Transfer pursuant to Section 6.01(b) or (c), the transferor Partner shall not be released from its obligations to the Partnership without the consent of the Management Committee.

(c)   The Management Committee, in its discretion, may waive from time to time one or more of the conditions contained in (a) or (b) above as to any Transfer.

6.05   Section 754 Elections.   The Partnership has elected to adjust the basis of the Partnership's assets pursuant to Section 754 of the Internal Revenue Code.

ARTICLE VII

DISSOLUTION AND TERMINATION

7.01   Events of Dissolution.   The Partnership shall be dissolved only upon any of the following occurrences and for no other reason:

(a)   upon demand by Donelux, Inc. or Janivo Realty, Inc.;

(b)   upon the sale or other disposition of all or substantially all of the Partnership's assets;

(c)   upon the filing by any Partner of a voluntary petition in bankruptcy or upon the filing against any Partner of a petition seeking to adjudicate such Partner as bankrupt or insolvent unless same is dismissed in 60 days, or upon the filing by any Partner of any petition or answer seeking any

-15-

D-00272

reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for itself under the present or any future Federal Bankruptcy Code or any other present or future applicable federal, state or other statute or law regarding bankruptcy, insolvency or other relief for debtors, or any Partner's seeking, or consenting to, or acquiescing in the appointment of any trustee, receiver, conservator or liquidator of such Partner or of all or any substantial portion of its property or of its interest in the Partnership; or

(d)    in any event, on December 31, 2080.

Dissolution of the Partnership shall be effective on the day on which the event occurs giving rise to the dissolution.

7.02    Continuation; Conduct of Business Pending Liquidation.    Notwithstanding the dissolution of the Partnership, the Partners shall have the option, upon the consent of all of them (other than any Partner which may have become bankrupt), if given within thirty (30) days after notice of the filing of the bankruptcy petition, to form a new partnership, on the terms and conditions contained in this Agreement and such other terms as may be agreed upon, for the purpose of holding the assets of the Partnership and continuing the business of the Partnership.    In such event any bankrupt Partner shall be treated as having withdrawn from the Partnership and shall receive its pro rata share of the assets of the Partnership as determined by the Management Committee, which may be distributed in such manner as the Management Committee in its discretion shall provide. Notwithstanding the foregoing, FPEP's consent shall not be required in order to form a new partnership to hold the assets and continue the business.

If the remaining Partners, other than FPEP, do not agree to form a new partnership, the Partnership, within thirty (30) days after the filing of the bankruptcy petition shall be liquidated and shall immediately commence to wind up its affairs. Pending the termination of the Partnership, the business of the Partnership, as such, shall continue to be governed by this Agreement.    Upon dissolution of the Partnership, a liquidator appointed by the Management Committee shall liquidate the assets of the Partnership and apply and distribute the proceeds thereof as contemplated by this Agreement.

7.03    Distributions Upon Liquidation.    The assets of the Partnership shall be liquidated to the extent necessary to provide for payment of liabilities owing to creditors (including any partner that may be a creditor) and for such reserves as the liquidator (or, in the absence thereof, the Managing Partner) may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership, and shall be liquidated to such further extent as the Management Committee may deem advisable. After paying all liabilities that are known and

-16-

D-00273

not contingent, the fair market values of the remaining assets of the Partnership shall be determined based upon the most recent appraisals pursuant to Section 5.05 (with such adjustments as the Management Committee may approve) and the Partners' Capital Accounts shall then be adjusted as if each such asset had been sold at its fair market value. Liquidating distributions shall then be made to the Partners in an amount equal to and in accordance with the balances of their Capital Accounts. Any Partner that has a negative balance in its Capital Account after such adjustment shall pay the amount thereof to the Partnership to be distributed to and among the Partners pro rata in accordance with their positive Capital Accounts, as so adjusted. Any such negative balance shall be paid to the Partnership within the period specified in Section 1.704-1(b)(2)(ii)(b)(3) of the Regulations. Assets of the Partnership that are distributed in kind shall be distributed on the basis of their fair market value as determined above. All distributions shall be made as promptly as may reasonably be feasible, except to the extent of any reserves established as aforesaid, which may be held for such period as the Management Committee may deem advisable.

<u>ARTICLE VIII</u>

<u>MISCELLANEOUS</u>

8.01  <u>Notices</u>.  Any and all notices, elections or consents or demands permitted or required to be made under this Agreement shall be in writing, signed by the Partner giving same and shall be delivered personally, or by telex or telephone facsimile, or sent by registered or certified mail, to each other Partner at its address set forth opposite its signature below or at such other address as may be supplied by written notice given in conformity with the terms of this Section 8.01.  Mailed notices shall be deemed delivered five (5) business days after the date of mailing.

Copies of all notices shall be sent to:

Buvermo Properties, Inc.
700 13th Street, Suite 325
Washington, D. C. 20005
Attention:  John Gardner
Telephone:  202/347-8880
Telefax:    202/347-4545

Vado Beheer B.V.
Postbus 79, 5600 AB
Eindhoven, The Netherlands
Attention:  Frans H. J. Boons
Telephone:  011-31-40-116-116
Telefax:    011-31-40-114-022

-17-

y181945.ricCP2685764

D-00274

Janivo Holding B.V.
P. O. Box 1079, 4801 BB
Breda, The Netherlands
Attention:  Robert C. M. H. Specken
Telephone:  011-31-76-267-500
Telefax:    011-31-76-200-121 or
            011-31-76-213-453

Whitman Breed Abbott & Morgan
200 Park Avenue, 27th Floor
New York, New York 10166
Attention:  Richard Crystal, Esq.
Telephone:  212/351-3477
Telefax:    212/351-3131

8.02  <u>Successors and Assigns</u>.  This Agreement and each and every provision hereof shall be binding upon and shall inure to the benefit of the Partners, their respective successors and assigns, and each such successor or assignee shall hold such interest subject to all of the terms and provisions of this Agreement.

8.03  <u>Amendment</u>.  Any amendment of this Agreement shall be valid or binding upon the Partners only if such amendment shall be in writing and duly executed by Partners holding more than seventy-five percent (75%) of the Partnership Percentages.

8.04  <u>Partition</u>.  The Partners hereby agree that no Partner, nor any successor-in-interest to any Partner, shall have the right to have any real property of the Partnership partitioned, or to file a complaint or institute any proceeding at law or in equity to have the assets of the Partnership partitioned, and each Partner, on behalf of itself, its successors and assigns, hereby waives any such right.

8.05  <u>No Waiver</u>.  No consent or waiver, express or implied, to or of any breach or default in the performance of any obligation hereunder shall constitute a consent or waiver to or of any other breach or default in the performance of the same or any other obligation hereunder.  Unless the context requires a contrary result, the failure of any Partner to insist upon strict performance of any obligation hereunder shall not be a waiver of such Partner's right to demand compliance in the future.

8.06  <u>Entire Agreement</u>.  This Agreement constitutes the full and complete agreement of the parties hereto with respect to the subject matter hereof, except for other agreements or instruments of even date herewith.

8.07  <u>Captions</u>.  Titles or captions of Articles or sections contained in this Agreement are inserted only as a matter of convenience and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision hereof.

-18-

D-00275

8.08  <u>Counterparts</u>.  This Agreement may be executed in a number of counterparts, all of which together shall for all purposes constitute one Agreement, binding on all the Partners.

8.09  <u>Applicable Law</u>.  This Agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted, construed and enforced in accordance with the laws of the State of New York.

8.10  <u>Arbitration</u>.  The parties agree that in the event that any claim, dispute or misunderstanding arising out of or in connection with any party's obligations hereunder cannot be promptly resolved despite the good faith efforts of the parties, such matter shall be submitted to arbitration, in the City of New York, New York, or such other place as may be selected by mutual agreement of the parties, in accordance with the commercial rules then obtaining of the American Arbitration Association, and judgment upon any award rendered in such arbitration may be entered in any court having jurisdiction thereof.  Arbitration shall be the exclusive remedy hereunder except for actions seeking solely equitable relief.

8.11  <u>Power of Attorney</u>.  Each of the undersigned does hereby constitute and appoint the Managing Partner (acting through its officers) as its true and lawful representative and attorney-in-fact, in its name, place and stead to make, execute, sign and file all such instruments, documents and certificates which may from time to time be required in order to carry out the business of the Partnership or in order to comply with the laws of the United States of America, the State of New York or any other jurisdiction in which the Partnership shall determine to do business, or any political subdivision or agency thereof.  Such representative and attorney-in-fact shall not, however, have any right, power or authority to amend or modify this Agreement or vote on Partnership matters on behalf of such Partner.

8.12  <u>Competition</u>.  All Partners, other than FPM and FPEP, shall be free to engage in competing businesses and no Partner shall have any interest therein as a consequence of this Agreement. This provision shall not be construed to modify or limit any restrictive covenants contained in any management agreement.

IN WITNESS WHEREOF, the Partners have executed this Agreement as of the day and year first above written.

<u>Partners</u>                              <u>Address/Telex</u>

<u>ORVAN, INC.</u>                          c/o Buvermo Properties, Inc.
                                           700 13th Street, Suite 325
                                           Washington, D. C. 20005
By:_____             Telefax:  202/347-4545
    Frans H. J. Boons
    Designated Representative

y181945.ricCP2685764

D-00276

DONELUX, INC.

By: _____
    Frans H. J. Boons
    Designated Representative

c/o Buvermo Properties, Inc.
700 13th Street, Suite 325
Washington, D. C. 20005
Telefax:  202/347-4545


JANIVO REALTY, INC.

By: _____
    Robert C. M. H. Specken
    Designated Representative

c/o Buvermo Properties, Inc.
700 13th Street, Suite 325
Washington, D. C. 20005
Telefax:  202/347-4545


FIDELIO PROPERTIES MANAGEMENT,
INC.

By: _____
    John Gardner, President

c/o Buvermo Properties, Inc.
700 13th Street, Suite 325
Washington, D. C. 20005
Telefax:  202/347-4545


F. P. EXECUTIVE PARTNERS, L. P.
By:  F. P. Investments, Inc.,
     General Partner

By: _____
    John Gardner, President

c/o Buvermo Properties, Inc.
700 13th Street, Suite 325
Washington, D. C. 20005
Telefax:  202/347-4545

y181945.ricCP2685764

**D-00277**

<u>SCHEDULE A</u>

<u>DESIGNATION OF NEW FPEP PROPERTY</u>

1.  Effective as of _____, 199_, the Management Committee
    hereby designates the Partnership's interest in _____
    _____
    as a New FPEP Property pursuant to Section 3.03 (a) of the
    Partnership's Fourth Amended and Restated Partnership
    Agreement dated as of September 1, 1993 as amended from time
    to time (the "<u>Fidelio Agreement</u>").

2.  The Partnership has invested in such New FPEP Property
    (including costs related to the investigation, acquisition
    and financing of such Property and budgeted costs related to
    the development, renovation, operation, leasing and repair of
    such Property) $_____ as of _____, 199_ (the
    "<u>Initial Investment</u>").  The Initial Investment plus any
    Additional Investment (as hereinafter defined) shall
    constitute, from time to time, the "<u>Non-FPEP Investment</u>" in
    this New FPEP Property.  "<u>Additional Investment</u>" shall mean
    all other and further expenditure of funds, deposits or other
    outlays by or on behalf of the Partnership and related to
    this New FPEP Property, including the amount, in all years
    prior to the calculation, by which (i) cash received by the
    Partnership from the operation of this New FPEP Property as a
    rental property are exceeded by (ii) costs and expenses of
    owning, operating, maintaining, repairing, leasing and
    managing such Property, including professional fees
    attributable to such activities.

3.  FPEP has agreed to contribute $_____ to the Partnership as
    FPEP's initial investment in this New FPEP Property (the
    "<u>FPEP Investment</u>").  The FPEP Investment shall be re-
    determined from time to time in accordance with Section
    3.03(b) of the Fidelio Agreement.

4.  Cash receipts ("<u>Receipts</u>") from this New FPEP Property
    (including receipts described in 2(i) above, excess proceeds
    of secured borrowings, and cash proceeds from the sale or
    other disposition of this New FPEP Property) in excess of all
    costs or other expenditures, including costs and expenses
    described in 2(ii) above (unless same are counted as part of
    the Non-FPEP Investment) and all other expenses, whether
    capital or otherwise, including amortization of debt,
    attributable to this New FPEP Property and its operation,
    refinancing or sale (the "Costs") and after providing such
    reserves ("Reserves") as the Management Committee may
    determine, shall be allocated among the Partners as follows:

        (i)    First, <u>pari passu</u> based on its Investment, to (x)
    each Partner other than FPEP until such Non-FPEP Partners
    have received a return on their Non-FPEP Investment equal to
    ten percent (10%) per annum compounded annually from the

D-00278

date(s) of Investment to the date of receipt of the return of such Investment (the "Hurdle Amount"), and to (y) FPEP until it has received the Hurdle Amount on its FPEP Investment;

(ii)    Next, to the Partners pari passu in relation to their respective Investments until (x) the Partners other than FPEP have received an amount equal to the Non-FPEP Investment, and (y) FPEP has received an amount equal to the FPEP Investment; and

(iii)    Next, any surplus proceeds shall be applied as follows: twelve and twelve one-hundredths percent (12.12%) to FPEP and eighty-seven and eighty-eight one-hundredths percent (87.88%) to FPEP and the Non-FPEP Partners, pro rata in accordance with their respective Investment in the Property on the date immediately prior to any return of Investment pursuant to Section 4(ii) above. Notwithstanding the foregoing, upon the Partnership's disposition of this New FPEP Property, (subject to Section 3.03 (d) of the Fidelio Agreement with respect to the Hurdle Rate Shortfall) all available funds shall be distributed in accordance with each Partner's capital account established with respect to this Developed Property, after completing all allocations pursuant to Paragraph 5 below.

Items allocated to Partners other than FPEP, pursuant to Paragraphs 4 and 5 hereof, shall be shared among them as provided in the Fidelio Agreement.

5.    Profits and Losses.

(a)    Profits: Profits for any fiscal year shall be allocated in the following order of priority:

(i)    First, to the Partners in a total amount equal to the excess, if any, of (a) the cumulative distributions made pursuant to Section 4(i) hereof from the commencement of the investment to a date 75 days after the end of such fiscal year, over (b) the sum of the cumulative profits allocated pursuant to this Section 5(a)(i) for the current and all previous fiscal years;

(ii)    Second, to each Partner with a Capital Account balance with respect to this New FPEP Property which is less than the amount distributable to such Partner under Paragraph 4(ii) hereof, pro rata, until such Partner's Capital Account balance is equal to such amount; and

(iii)    Thereafter, the balance shall be shared 12.12% to FPEP and 87.88% to FPEP and the Non-FPEP Partners, pro rata in accordance with their respective Investment in the Property on the date immediately prior to any return of Investment pursuant to Section 4(ii) above.

-2-

D-00279

(b)   <u>Losses</u>:   Losses for any fiscal year shall be allocated in the following order of priority:

    (i)   To each Partner with a Capital Account balance with respect to this New FPEP Property which exceeds the amount distributable to such Partner under Paragraph 4 hereof, <u>pro</u> <u>rata</u>, until his Capital Account balance is equal to such amount;

    (ii)   Second, to each Partner with a positive Capital Account balance with respect to this New FPEP Property, <u>pro</u> <u>rata</u>, until all positive Capital Account balances have been eliminated; and

    (iii)   Thereafter 12.12% to FPEP and 87.88% to the other Partners.


<u>FIDELIO PROPERTIES MANAGEMENT COMMITTEE</u>:


Janivo Realty, Inc.                    Donelux, Inc.


    By:_____           By:_____
Name: Robert C.M.H. Specken      Name: Frans H.J. Boons
Title: Designated                Title: Designated
      Representative                    Representative


Acknowledged and Accepted as of
this 1st day of September, 1993

F. P. EXECUTIVE PARTNERS, L. P.

By:   F. P. Investments, Inc.,
    general partner


    By:_____
      Name:   John Gardner
      Title:  President


    By:_____
      Name:   Steven Bonacci
      Title:  Secretary

-3-

D-00280

SCHEDULE A

FIDELIO PROPERTIES

PARTNERSHIP PERCENTAGES

| PARTNER | PARTNERSHIP PERCENTAGES September 1, 1993 |
|---|---|
| JANIVO REALTY, INC. | 53.51998%* |
| DONELUX, INC. | 35.75396%* |
| FIDELIO PROPERTY MANAGEMENT, INC. | 00.00413%* |
| ORVAN, INC. | 10.33946%* |
| F. P. EXECUTIVE PARTNERS, L. P. | 0.38247% |
| | 100% |

D-00281