Limited Liability Company Operating Agreement

Of

F.P. Executive Partners, LLC

PREAMBLE

This Limited Liability Company Operating Agreement (the "Agreement") of F.P. Executive Partners, LLC (the "Company"), a limited liability company organized pursuant to the Delaware Limited Liability Company Act (the "Act") and having an address at c/o Fidelio Properties, 1901 North Moore Street, Suite 804, Arlington, VA 22209, is entered into and shall be effective as of May __, 2000, by and among F.P. Investments, Inc., a Delaware corporation having an address at c/o Fidelio Properties, 1901 North Moore Street, Suite 804, Arlington, VA 22209, John Gardner ("Gardner"), an individual residing at 6501 West Langely Lane, McLean, Virginia 22101, Steven R. Bonacci ("Bonacci"), an individual residing at 1665 Wickham Way, Crofton, Maryland 21114, and VBM-USA, Inc. ("VBM-USA"), a Maryland corporation, with an office c/o Waterford Development, Inc., 11800 Sunrise Valley Drive, Reston, VA 20191, as members (each a "Member", collectively, the "Members").

WHEREAS, the Members desire to establish their respective rights and obligations in respect of the business and operation of the Company; and

NOW, THEREFORE, in consideration of the premises and mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:



EXHIBIT

8

DEF-ID-021

447702-v6 0026857-0064

## ARTICLE I.

## GENERAL PROVISIONS

This Limited Liability Company Operating Agreement of F.P. Executive Partners, LLC is entered into and shall be effective as of the first date written above by and among the Members set forth on the signature page hereof, pursuant to the provisions of the Act, on the following terms and conditions:

1.1.     Organization.  The Members hereby organize the Company as a Delaware limited liability company pursuant to the provisions of the Act.

1.2.     Name.  The name of the Company shall be "F. P. Executive Partners, LLC", and all Company business shall be conducted in such name.  The Company shall hold all of its property in the name of the Company and not in the name of any Member.

1.3.     Term.  The Company shall be dissolved and its affairs wound up in accordance with the Act and this Agreement on December 31, 2050, unless the Company shall be sooner dissolved and its affairs wound up in accordance with the Act or this Agreement.

1.4.     Purpose.  The Company is formed for the sole purpose of acquiring, holding and disposing of a general partnership interest in Fidelio Properties ("Fidelio"), a New York general partnership and, subject to Fidelio's approval, in subsidiaries and affiliates of Fidelio.  Fidelio owns, operates, manages and sells interests in real estate or related businesses located in the United States of America as more fully described in the Fidelio Properties Fourth Amended and Restated Partnership Agreement dated as of September 1, 1993, as amended by a First Amendment dated as of January 1, 1995 and as the same may be further supplemented and amended from time to time (the "Fidelio Agreement").  Each Member acknowledges that he has reviewed the Fidelio Agreement and is fully familiar with the terms thereof.

447702-v6 0026857-0064                                                    DEF-ID-022

1.5.    Office.  The location of the principal place of business of the Company shall be 1901 North Moore Street, Suite 804, Arlington, VA 22209, or such other place of business as the Manager shall designate upon written notice to the Members.

1.6.    Registered Office; Agent for Service of Process.  The registered office of the Company in the State of Delaware shall be c/o The Corporation Trust Company, having an office at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 and The Corporation Trust Company is hereby designated as agent for service of process (the "Registered Agent") as reflected in the Certificate of Formation as filed in the office of the Secretary of the State of Delaware, which office and Registered Agent may be changed at any time by the Manager.  In the event the Registered Agent ceases to act as such for any reason or the registered office shall change, the Manager shall promptly designate a replacement registered agent or file a notice of change of address, as the case may be and send notice thereof to all Members.

1.7.    Filings.  The Company shall exist under and be governed by, and this Agreement shall be construed in accordance with, the applicable laws of the State of Delaware. The Members shall make all filings and disclosures required by, and shall otherwise comply with, all such laws.  The Members shall execute and file in the appropriate public records any assumed or fictitious name certificates and other documents and instruments as may be necessary or appropriate with respect to the formation of, and conduct of business by, the Company.

1.8.    Title to Property.  All real and personal property owned by the Company shall be owned by the Company as an entity and no Member shall have any ownership interest in such property in its individual name or right, and each Membership Interest (as hereinafter defined) in the Company shall be deemed personal property for all purposes.

447702-v6 0026857-0064

DEF-ID-023

1.9.   <u>Payments of Individual Obligations</u>.  The Company's credit and assets shall be used solely for the benefit of the Company, and no asset of the Company shall be transferred or encumbered for or in payment of any individual obligation of a Member.

1.10.   <u>Activities</u>.

(a)    The Manager shall devote so much of its business time and efforts to the furtherance of the business of the Company and performance of its responsibilities under this Operating Agreement as it shall reasonably deem necessary.

(b)    The Members expressly agree that any Member may at any time engage in and possess interests in other business ventures of any and every nature and description, independently or with others, including, but not limited to, engaging in activities which parallel or compete with the business of the Company, and neither the Company nor any other Member shall by virtue of this Agreement have any right, title or interest in or to such independent activities or to the income or profits derived therefrom.

## ARTICLE II.

## CAPITAL

2.1.   <u>Capital Contributions</u>.  No Member shall be obligated to make any contributions of money or property (the "Capital Contributions") to the capital of the Company. However, each Member may make contributions to capital to fund capital contributions to Fidelio which the Company is permitted to make pursuant to Section 3.03(b) of the Fidelio Agreement, in such amounts as all the Members shall agree.

2.2.   <u>Membership Interest</u>.  Each Member's interest in the Company (the "<u>Membership Interest</u>") shall include any and all benefits and rights to which such Member may be entitled as provided in this Agreement and all obligations of such Member pursuant to the provisions of this Agreement.  Each Member shall participate in the Company based on its

-4-

DEF-ID-024

Capital Contributions, except as to certain matters which by their terms are based on the Membership Percentages.

2.3.  <u>Maintenance of Capital Accounts</u>.  Separate capital accounts shall be maintained for each Member in accordance with the provisions of Treas. Reg. Sec. 1.704.-1(b). In the event any Member transfers any Membership Interest in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent it relates to the transferred interest.

2.4.  <u>Company's Contribution to Capital of Fidelio</u>.  The Company has made and will from time to time make contributions to the capital of Fidelio (the "FPEP Contribution") which have been and shall be allocated by Fidelio among the "New FPEP Properties" (as defined in Section 3.03 of the Fidelio Agreement) as provided in Section 3.03 of the Fidelio Agreement and as reflected in the Property Designations (as defined in Section 3.03 of the Fidelio Agreement) issued by Fidelio from time to time.

2.5.  <u>Withdrawal and Return of Capital</u>.  No Member shall be entitled to demand or receive a return of his Capital Contributions or withdraw from the Company.  No Member shall have the right to withdraw any part of his Capital Contributions or to receive any distributions from the Company prior to its liquidation and termination, unless such withdrawal is permitted under this Agreement. No Member shall be entitled to demand and receive property other than cash in return of capital.  No Member shall receive any interest, salary, or drawing with respect to his Capital Contributions or his Capital Account or for services rendered on behalf of the Company or otherwise in his capacity as a Member, except as otherwise provided in this Agreement or agreed to by the Members.  Each Member shall participate in the Company

DEF-ID-025

447702-v6  0026857-0064

based on its Capital Contribution as described herein, except as to certain matters which by their terms are based on the percentages (the "Membership Percentage") set forth below:

| MEMBER | MEMBERSHIP PERCENTAGE |
|---|---|
| F. P. Investments, Inc. | 1.00% |
| Gardner | 83.03% |
| Bonacci | 15.97% |

## ARTICLE III.

### DISTRIBUTIONS

3.1.    Available Cash. For purposes of this Agreement, the term "Available Cash" of the Company for any period shall mean the aggregate of cash received by the Company during such period from Fidelio with respect to each FPEP Property.

3.2.    Distribution of Available Cash. Available Cash distributed by Fidelio on account of an FPEP Investment (as defined in Section 3.03 of the Fidelio Agreement and the Property Designation) in a particular New FPEP Property and identified by Fidelio as being on account of the return on or of such FPEP Investment in such New FPEP Property, including distributions with respect to any Hurdle Amount (as defined in Section 3.03 of the Fidelio Agreement and the Property Designation) for that FPEP Investment, shall be shared among the Members in accordance with their respective Capital Contributions to fund such FPEP Investment. Any remaining Available Cash from such FPEP Investment shall be distributed among the Members in accordance with their respective Membership Percentages. All distributions shall be made promptly after receipt by the Company of Available Cash from Fidelio. Proceeds and earnings derived from temporary investment of funds of the Company shall be distributed to the Members entitled to such temporarily invested funds.

-6-

447702-v6 0026857-0064

DEF-ID-026

3.3.  <u>Taxes Withheld.</u>  For purposes of this Agreement, any amount of taxes required to be withheld by the Company with respect to any amount distributable to any Member shall be deemed to be a distribution or payment to such Member and shall reduce the amount otherwise distributable to such Member pursuant to this Agreement.

## ARTICLE IV.

## ALLOCATION OF PROFITS AND LOSSES

4.1.  <u>Allocation.</u>  All items of Company income, gain, loss, deduction and any federal, state or local tax credit or other tax benefit shall be allocated among the Members as follows:

(i) allocations on account of an FPEP Investment in a particular New FPEP Property and on account of the return on such FPEP Investment in such New FPEP Property, including any allocations with respect to any Hurdle Amount on such FPEP Investment, shall be made to the Members in accordance with their respective Capital Contributions to such New FPEP Property;

(ii) allocations from a Special Existing FPEP Property (as defined in the Fidelio Agreement and the  Property Designation) shall be made 2/3 to Gardner and 1/3 to Bonacci;

(iii) any allocations with respect to income or loss from any temporarily invested funds of the Company shall be allocated among the Members in accordance with their interest in such funds; and

(iv) any other allocations shall be allocated in accordance with the Membership Percentages.

447702-v6 0026857-0064

DEF-ID-027

## ARTICLE V.

## ACCOUNTING AND RECORD KEEPING

5.1.    <u>Responsibility for Books of Account</u>.  The Manager shall be responsible for ensuring that proper and complete records and books of account are kept in which shall be entered fully and accurately all transactions and other matters relative to the Company's business in accordance with this Agreement and generally accepted accounting principles consistently applied.  The books of account shall be kept on a cash basis.  Each Member shall be entitled, upon reasonable notice to the Manager, to access to such records and books for inspection and copying during reasonable business hours.

5.2.    <u>Tax Statement</u>.  As soon as reasonably practicable after the end of each fiscal year, the Manager shall deliver to each Member such information concerning the Company as shall be necessary for a Member to prepare its income or other tax returns.  The Company shall elect to be taxed as a partnership.

5.3.    <u>Fiscal Year</u>.  The fiscal year of the Company shall be the calendar year.

5.4.    <u>Banking</u>.  The funds of the Company shall be deposited in such bank account or accounts, or invested in such interest-bearing investments, as shall be designated by the Manager.  All withdrawals from any such bank accounts shall be made by the Manager or the duly authorized agent or agents of the Manager.  Company funds shall be held in the name of the Company and shall not be commingled with those of any other person.

447702-v6 0026857-0064                                                                DEF-ID-028

ARTICLE VI.

## POWERS, RIGHTS, AND DUTIES OF THE MEMBERS

6.1.    <u>Management of Business</u>.  The Members, other than the Manager, shall

not participate in the management or control of the Company nor shall they transact any business

for the Company.

6.2.    <u>Liability of the Members</u>.  The Members, including the Manager, shall not

have any personal liability whatsoever to the creditors of the Company for the debts of the

Company or any of its losses beyond their agreed contribution to the capital of the Company.

6.3.    <u>Voting Rights</u>.  Notwithstanding anything to the contrary herein

contained, any matter requiring the consent or approval of the Members pursuant to this

Agreement shall be given by the affirmative vote (at a meeting, or in lieu thereof, by written

consent of the required percentage) of Members holding over seventy-five percent (75%) of the

aggregate Membership Percentages held by all of the Members.

ARTICLE VII.

## MANAGEMENT

7.1.    <u>Control of Business</u>.  The business and assets of the Company shall be

controlled exclusively by the Manager as herein provided.  Except as otherwise provided in this

Agreement, (i) none of the Members shall have any authority to act for or assume any

obligations or responsibilities on behalf of the other Members, (ii) nor shall any Member, other

than the Manager, have any authority to bind the Company.  This Agreement shall not be

deemed to create a company, partnership or joint venture between or among the Members with

respect to any activity whatsoever other than the purpose set forth in Section 1.4, and the conduct

of business activities incidental thereto.

DEF-ID-029

447702-v6  0026857-0064

7.2.    Authority of the Manager. The Manager shall have the authority to manage the operations and affairs of the Company and to make all decisions regarding the business of the Company. Pursuant to the foregoing, it is understood and agreed that the Manager shall have all of the rights and powers of a Manager or Managing Member as provided in the Act and as otherwise provided by law, and any action taken by the Manager shall constitute the act of and serve to bind the Company. In dealing with the Manager acting on behalf of the Company, no person shall be required to inquire into the authority of the Manager to bind the Company, but shall be entitled to rely conclusively on the power and authority of the Manager to bind the Company as set forth in this Agreement.

7.3.    Limits on Manager's Authority. Notwithstanding anything herein to the contrary, the Manager shall not cause or permit the Company to:

(i)    Commingle any of the Company's funds, or employ or permit another to employ those funds or assets in any manner, except for the exclusive benefit of the Company (except to the extent that funds are temporarily retained by agents of the Company); or

(ii)    Reimburse the Manager for expenses incurred by the Manager, except that the Manager shall be reimbursed for actual costs incurred by the Manager in carrying out its duties hereunder.

7.4.    Approval of Members for Certain Transactions. Notwithstanding anything herein to the contrary, the Manager shall not, without the affirmative vote of the Members holding more than seventy-five (75%) of the aggregate Membership Interests and unless such act is required in connection with the business of Fidelio as contemplated in the Fidelio Agreement:

-10-

DEF-ID-030

(i)     borrow any money by or on behalf of the Company or give any security therefor or lend money on behalf of the Company or renew or extend any loan;

(ii)     provide any guaranty by the Company on behalf of another person, firm or corporation;

(iii)     purchase, lease (as lessee), license (as licensee) or otherwise acquire on behalf of the Company any assets or property;

(iv)     sell, mortgage, pledge, create a security interest in, lease (as lessor), license (as licensor) or otherwise dispose of any assets or property of the Company;

(v)     confess a judgment against the Company or settle or compromise any action, suit or proceeding (including any arbitration proceeding or any claim for past or present taxes due) against the Company;

(vi)     cause the liquidation or dissolution of the Company; or

(vii)     change the Company business or cause it to engage in activities not contemplated by this Agreement.

7.5.    <u>Liability of the Manager</u>.  Neither the Manager nor Fidelio nor any partner therein, nor any of their respective officers, directors, members or shareholders shall be liable, responsible, or accountable in damages or otherwise to the Company or any Member for any action taken or failure to act on behalf of the Company within the scope of the authority conferred by this Agreement or the Fidelio Agreement or by law, unless the act or omission was performed or omitted fraudulently.

7.6.    <u>Members' Acknowledgment</u>.  The Members acknowledge and agree that the Manager is an affiliate of Fidelio and as such it may conduct the business of the Company in a manner that best protects Fidelio's interests.  Accordingly:

447702-v6 0026857-0064                                   DEF-ID-031

(i)     the Members have reviewed and are familiar with the Fidelio Agreement, including Section 3.03 and Section 4.10 thereof, and accept the possibility that decisions may be made that have an adverse impact on the Company's interest in Fidelio or in an FPEP Property or the benefits to be derived therefrom by the Company;

(ii)     The Manager has full and complete power and authority to conduct the Company's business and deal with the Company's assets in any manner it may determine, and it may cause the Company to act in a manner that is in the best interests of Fidelio or Fidelio's other partners and such action may have a disproportionately adverse effect on the Company and its interest in Fidelio or in an FPEP Property;

(iii)     The Members shall not be entitled to receive any distributions from the Company, unless authorized by the Manager and in exercising its powers the Manager need not consider any adverse impact on its Members or the Company's interest in Fidelio or in an FPEP Property;

(iv)     the Manager may cause the Company, as a partner in Fidelio, to (aa) authorize transactions with affiliates of a partner of Fidelio or other self-dealing between the partners of Fidelio or their affiliates and Fidelio, (bb) authorize the acquisition, disposition, encumbering or modification of the terms of Fidelio's interest in an FPEP Property or entity, (cc) approve policies and budgets or allow the reduction, elimination or deferral of the allocation of resources to investments in which the Company has an interest, (dd) dissolve Fidelio or admit new Fidelio partners whose interests may be senior to the Company's, and (ee) take actions which may otherwise adversely affect the Company's interest in Fidelio or in an FPEP Property or the economic value thereof; and

447702-v6 0026857-0064

DEF-ID-032

(v)    The Members accept the fact that decisions of the Manager on behalf of the Company may disproportionately benefit other Fidelio partners and the Members waive any right to challenge such decisions on the grounds that it has adversely affected Fidelio, the Company or its interest in Fidelio or in an FPEP Property.

7.7.    <u>Return of Capital</u>. The Manager shall not be liable for the return or payment of all or any portion of the capital or profits allowable to any of the Members (or their assignees or transferees), it being expressly agreed that any such return of capital or payment of profits made pursuant to this Agreement shall be made solely from the assets (which shall not include any right of contribution from the Manager) of the Company.

7.8.    <u>Indemnification</u>. The Company, its receiver or its trustee (in the case of its receiver or trustee, only to the extent of its trust or receivership assets) shall indemnify and hold harmless each Member or any officers and directors of such Member, from and against any loss, expense, damage or injury suffered or sustained by them by reason of any acts, omissions or alleged acts or omissions arising out of their activities on behalf of the Company or in furtherance of the interests of the Company, including but not limited to any judgment, award, settlement, reasonable attorneys' fees, and other costs or expenses incurred in connection with the defense of any actual or threatened action, proceeding, or claim, if the acts, omissions, or alleged acts or omissions upon which the actual or threatened action, proceeding, or claims are based were for a purpose reasonably believed to be in the best interests of the Company and were not performed or omitted fraudulently or as a result of gross negligence by the Members. Any such indemnification shall only be from the assets of the Company.

447702-v6  0026857-0064

DEF-ID-033

7.9.   <u>Limitations</u>.  Notwithstanding anything to the contrary in Section 7.8 above, no Member shall be indemnified from any liability for fraud, bad faith, willful misconduct, or gross negligence.

7.10.   <u>Tax Matters Member</u>.  The Manager is specifically authorized to act as the Tax Matters Member under the Code and in any similar capacity under state or local law.  Any Member designated as Tax Matters Member shall take such action as may be necessary to cause each other Member to become a notice member within the meaning of § 6223 of the Code.

## ARTICLE VIII.

## DISPOSITIONS OF MEMBERSHIP INTERESTS

8.1.   <u>Withdrawal</u>.  Except as contemplated by this Article VIII, withdrawals by any Member of any or all of its interest in the Company shall not be permitted without the consent of the Manager.

8.2.   <u>Death of Member</u>.  The death of a Member shall not dissolve or terminate the Company.  The estate (or the legal heir(s) of the deceased Member thereafter) shall retain said Member's Membership Interest and remain bound by all the provisions of this Agreement, the Company shall continue, and the estate or a legal heir(s) may be admitted as a Substituted Member after complying with Section 8.6 hereof.

8.3.   <u>Bankruptcy of a Member</u>.  The bankruptcy of a Member shall not dissolve or terminate the Company.  The representative, administrator, trustee, committee (or analogous fiduciary) of the bankrupt Member shall retain the interest of the bankrupt Member in the Company and such interest shall remain bound by all the terms and conditions of this Agreement.

8.4.   <u>Transfers to Immediate Family</u>.  An individual Member may transfer its interest in the Company during his lifetime by gift to, or in trust for the benefit of, said Member's

-14-

DEF-ID-034

Immediate Family (as defined below); provided that, with respect to any transfer by way of a trust, the Initial Member (as defined below) shall serve as trustee and control all decisions with respect to the Company and such Membership Interest. If an interest in the Company is transferred pursuant to this Section 8.4, the transferee may become a Substituted Member in accordance with Section 8.6 below. For purposes of this Section 8.4, "Immediate Family" shall mean (i) the respective spouse, parents, adult children, adult siblings, and lineal descendants of a Member (by blood or adoption) or the spouse of any of the foregoing, or (ii) an entity in which any of the persons set forth in (i) above owns and continues to own all of said entity's beneficial interests and all voting interests in and control of such entity shall be retained by the Initial Member.

Each transferee of a Member's interest shall grant to the person (the "Initial Member") who holds such interest on the date hereof, all voting rights and powers with respect to that interest and no such transfer shall be effective until such grant has been made.

8.5.    Assignments by Members. Except as expressly provided in Sections 8.2, 8.3 and 8.4 above, a Member's Membership Interest or right to receive distributions on account thereof may not be assigned, sold, transferred, mortgaged, pledged, hypothecated or otherwise encumbered without the prior approval of the Manager in its sole discretion. The foregoing restrictions also shall apply to any shares or partnership interests or membership interests or other ownership interests, legal or beneficial, in any entity that is a Member in the Company, or owns any interest, direct or indirect, in any Member. Notwithstanding anything contained herein to the contrary, in the event that any transfer of a Membership Interest made pursuant to Sections 8.2, 8.3 or 8.4, will, in the opinion of the Manager, result in the termination of the Company for purposes of the then applicable provisions of the Internal Revenue Code of 1986, as amended

-15-

DEF-ID-035

---

from time to time, such transfer shall be null and void, unless the approval of the Manager is obtained.

Unless an assignee becomes a Substituted Member pursuant to Section 8.6 below, the assignee shall have no right to require any information on or accounting with respect to Company transactions, or to inspect the Company's records and books of account. In such event, the assignment merely entitles the assignee to receive the assigned share of distributions, income and losses to which the assigning Member otherwise would be entitled.

8.6.    Substituted Members. No assignee may become a Substituted Member without the written approval of the Manager. Such approval may be conditioned upon the Substituted Member (i) paying the legal and other costs incurred by the Company due to the admission of the Substituted Member, (ii) executing any documents which the Manager deems necessary, including, without limitation, an amendment to this Agreement naming such party as a Member, and (iii) if there is more than one such Substituted Member, all such Substituted Members shall have irrevocably named a single Substituted Member to act for each of them with respect to all Company matters, including votes, amendment of the Agreement, waivers, releases, or otherwise, in a manner acceptable to the Manager.

8.7.    Amendment to Articles of Organization. After a person is entitled to become a Substituted Member, the Manager shall promptly take such steps as may be necessary and appropriate to prepare and file an amendment to the Articles of Organization should such amendment be required by law or deemed advisable by the Manager, and each Member authorizes the Manager to execute any such amendment pursuant to the power of attorney hereinafter set forth in Section 10.2 below.

447702-v6 0026857-0064    DEF-ID-036

8.8.    <u>Transferees Bound by Operating Agreement</u>.  Any assignee and any person admitted to the Company as a Substituted Member shall be subject to and bound by all the provisions of this Agreement as if originally a party to this Agreement.

8.9.    <u>Redemption of Member's Membership Interest</u>.  Notwithstanding any other provision of this Article VIII to the contrary, in the event that either Gardner or Bonacci (the "<u>Departed Employee</u>") withdraws from the Company or ceases to be employed by Buvermo Properties, Inc. or another affiliate of Fidelio, by reason of death, disability, retirement or any other reason (such withdrawal or cessation is hereinafter referred to as the "<u>Termination</u>"), then the Manager shall have the right, upon written notice to the Departed Employee given within sixty (60) days of the Termination, to redeem the Departed Employee's entire Membership Interest and the Membership Interest of any transferee of or successor to the Departed Employee, which transferred interests for purposes of this Section 8.9 shall be deemed to be the Membership Interest of the Departed Employee (the "<u>Call</u>").  If such Call is not exercised by the Manager prior to expiration of the Manager's right to make the Call, the Departed Employee shall have the right, exercisable by giving written notice to the Manager within sixty (60) days after expiration of the Manager's right to make the Call or earlier waiver of such right, to require such redemption by the Manager (the "<u>Put</u>").  The Manager may waive its Call right and the Departed Employee may waive its Put right and either party may permit its respective right to expire unexercised.  The purchase price ("<u>Purchase Price</u>") relating to a Put or Call shall be determined as follows:

(i)    Within thirty (30) days after written notice of the exercise of the Put or Call has been given by one party to the other the Manager and the Departed Employee each shall submit to the other a sum (the "<u>Market Value</u>") representing its calculation of the market

-17-

DEF-ID-037

value of Fidelio's interest in each property which, as of the date of Termination, has been designated by Fidelio as an FPEP Property. If the lower of the Market Values for an FPEP Property is equal to at least eighty percent (80%) of the higher of the Market Values, then the Purchase Price for that Property shall be equal to the average of the two (2) Market Values. In the event that the lower of the Market Values is equal to less than eighty percent (80%) of the higher of the Market Values, then the parties shall have thirty (30) days to agree upon a Market Value for such Property. If the parties fail to agree on a Market Value within said thirty (30) days, then within ten (10) days thereafter, they shall jointly appoint a disinterested arbitrator, experienced in evaluating properties of the type designated as FPEP Property in the Washington, D. C. metropolitan area, to determine the Market Value. The arbitrator shall designate as the Market Value the market value which the arbitrator determines is closest to the market value of the FPEP Property in question, and such designation shall be conclusive for purposes hereof.

(ii) The Market Value, as determined pursuant to Section 8.9(i) hereof, for each FPEP Property, shall be reduced in accordance with Section 3.03 of the Fidelio Agreement (such reduction to include, without limitation, the estimated costs of completing a sale of the relevant FPEP Property and by any liability of Fidelio or the ownership entity in connection with the relevant FPEP Property, and such reserves as the Management Committee of Fidelio may determine). The Purchase Price for each FPEP Property to be received by the Departed Employee shall equal the amount which such Departed Employee would receive upon liquidation of the relevant FPEP Property for the Market Value, as finally determined, following the sale of each FPEP Property, the distribution of the appropriate proceeds to Fidelio, and by

447702-v6  0026857-0064

DEF-ID-038

Fidelio to the Company (pursuant to the Fidelio Agreement), and the liquidation of the Company.

      (iii)    The amount to which a Departed Member is entitled shall also be reduced by the amount of offsets relating to any indebtedness of the Departed Employee to the Company or Fidelio or its affiliates and any claim by the Company or Fidelio or its affiliates against the Departed Employee.

      (iv)    The Manager shall obtain the funds required to pay the Purchase Price to the Departed Employee from Fidelio pursuant to Section 6.01(c) of the Fidelio Agreement, and the Purchase Price shall be paid to the Departed Employee promptly after its determination pursuant to Section 8.9(i) hereof, provided that the Departed Employee shall execute all documents deemed necessary by the Company or Fidelio for the Departed Employee to convey and surrender all of his right, title and interest in the Company and release any claims against Fidelio, the Company or any of their partners, members or shareholders or any of their respective officers, directors, employees or agents.

## ARTICLE IX.

## MEMBERSHIP INTEREST OF THE MANAGER

    9.1.    <u>Admission of a Manager</u>.  In the event of the withdrawal, dissolution or bankruptcy of the Manager, if such Manager is not replaced by a new Manager designated by the Manager, then the Members shall designate a new successor Manager and the successor person or entity shall be admitted as a Manager of the Company when and if such person or entity:

      (i)    accepts and assumes, in form satisfactory to counsel to the Company, all of the terms and provisions of this Agreement; and

447702-v6  0026857-0064

DEF-ID-039

(ii)    executes such other documents or instruments as counsel to the Company may require (or as may be required by law) in order to effect the admission of such person or entity as a Manager of the Company.

## ARTICLE X.

## POWER OF ATTORNEY

10.1.    <u>Power of Attorney</u>.  Each Member, including each Substituted Member, by the execution or adoption of this Agreement (as the case may be), irrevocably constitutes and appoints the Manager and any officer thereof as their true and lawful attorney-in-fact with full power and authority in their name, place, and stead to execute, acknowledge, deliver, swear to, file, and record at the appropriate public offices such documents as may be necessary or appropriate to carry out the provisions of this Agreement and the business of the Company.

This power of attorney may be exercised by the Manager, acting alone for each Member, or by listing all of the Members and executing any instrument with a single signature of the Manager as attorney-in-fact for all of them.

This appointment by each Member of the Manager as attorney-in-fact shall be deemed to be a power coupled with an interest, in recognition of the fact that each Member under this Agreement shall be relying upon the power of the Manager to act as contemplated by this Agreement in any filing and in any other action on behalf of the Company, and shall survive the death or other incapacity of any person hereby giving the power and the transfer or assignment of any Member's interest in the Company.  The foregoing power of attorney of each Member shall survive each transfer only until such time as the transferee shall have been admitted to the Company as a Substituted Member and all required documents and instruments shall have been duly executed, filed, and recorded to effect the substitution.

-20-

# ARTICLE XI.

## TERM, DISSOLUTION, AND WINDING UP

11.1.   <u>Term</u>.  The Company shall commence on the date hereof and shall continue in existence until terminated in accordance with this Article X.

11.2.   <u>Dissolution</u>.  The Company shall be dissolved only in the following events and no other event shall dissolve the Company:

(i)      The sale or other disposition of all or substantially all of the operating assets of the Company or a sale of the entire business of the Company; or

(ii)      The occurrence of any event which makes it unlawful for the business of the Company to be carried on; or

(iii)      The entry of a decree of judicial dissolution under Section 18-802 of the Act.

11.3.   <u>Effect of Dissolution</u>.  Upon dissolution, the Company shall cease carrying on, as distinguished from the winding up of the Company business, but the Company is not terminated.  It continues until the winding up of the affairs of the Company is completed, and the certificate of cancellation has been issued by the Secretary of State.

11.4.   <u>Procedure Upon Dissolution</u>.  Upon winding up of the Company, the Manager shall liquidate the assets of the Company and shall apply and distribute the proceeds of such liquidation in the following order of priority:

(i)      to the payment of the debts and liabilities of the Company (other than those owed to Members) and the expenses of liquidation;

(ii)      to the setting up of such reserves as the Manager may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company arising out of or in connection with the Company or the FPEP Property; any such reserves may be paid

447702-v6  0026857-0064

DEF-ID-041

over by the Manager to a person, firm or corporation, as escrowee, chosen with reasonable care by the Manager, to be held by such escrowee (or its designated successor) for the purpose of disbursing such reserves in payment of any of the aforementioned contingencies and, at the expiration of such period as the Manager shall deem advisable, to distribute the balance thereafter remaining in the manner hereinafter provided;

(iii)    to the payment of principal and interest on any debts or liabilities owed to Members by the Company; and

(iv)    the balance, if any, to the Members in accordance with the provisions of Section 3.2.

11.5.    Source of Distributions to Members on Dissolution.  Upon dissolution, each Member shall look solely to the Company assets for the return of its capital contributions and undrawn income.  If the assets of the Company remaining after the payment or provision for the debts and liabilities of the Company are insufficient for the return of capital contributions or undrawn income of any Member, such Member shall have no recourse against any other Member for that purpose.  In no event shall the Company's interest in Fidelio or an FPEP Property be distributed to any Member upon dissolution or liquidation.  Instead, the Manager shall dispose of such interest on such terms as it deems appropriate.

11.6.    Winding Up and Certificate of Dissolution.  The winding up of the Company shall be completed when all debts of the Company have been paid and discharged or reasonably adequate provision therefor has been made, and all of the remaining assets of the Company have been distributed to the Members.  Upon the completion of winding up of the Company, a certificate of cancellation shall be delivered to the Secretary of State for filing.  The certificate of cancellation shall set forth the information required by the Act.

447702-v6 0026857-0064                                              DEF-ID-042

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

12.1.  <u>Amendments/Waivers</u>.  Amendments to this Agreement may be proposed by any Member.  The unanimous written approval of the Members is necessary for the adoption of any amendment to this Agreement, and such amendment shall become effective upon such approval being obtained.

12.2.  <u>Notices</u>.  All notices provided for in this Agreement shall be in writing and directed by hand delivery or by registered or certified mail or by telefax, to the Company at its principal office, and to the Members at their respective addresses as they appear in the records of the Company, or at such other address as the Company or the Members shall from time to time designate to the others in writing.  If transmitted by hand delivery or by telefax, notice shall be deemed given when same is received by the addressee.  Mailed notices shall be deemed delivered five (5) business days after the date of mailing when addressed as below and with appropriate postage attached.

Copies of all notices shall be sent to:

Buvermo Properties, Inc.
1901 North Moore Street, Suite 804
Arlington, VA 22209
Attention:      John Gardner and Steve Bonacci
Telephone:   (703) 465-8200
Telefax:        (703) 465-8262

VBM B.V.
Binnen Kalkhaven 39
3300 AA Dordrecht, Netherlands
Attention:      Chris Zachariasse
Telephone:   011-31-786-130-570 or 140-464
Telefax:        011-31-786-130-343

-23-

DEF-ID-043

Whitman Breed Abbott & Morgan LLP
200 Park Avenue, 27th Floor
New York, New York  10166
Attention:      Richard Crystal, Esq.
Telephone:     (212) 351-3477
Telefax:         (212) 351-3131

12.3.    Governing Law.  This Agreement and the legal relations among the parties shall be governed by and construed in accordance with the laws of the State of Delaware.

12.4.    No Membership Intended for Nontax Purposes.  The Members have formed the Company under the Act, and expressly do not intend hereby to form a partnership under any partnership or limited partnership act.  The Members do not intend to be partners one to another, or partners as to any third party.  To the extent any Member, by word or action, represents to another person that any other Member is a partner or that the Company is a partnership, the Member making such wrongful representation shall be liable to any other Member who incurs personal liability by reason of such wrongful representation.

12.5.    Rights of Creditors and Third Parties Under Agreement.  This Agreement is entered into between the Company and the Members for the exclusive benefit of the Company, its Members, and their successors and assigns.  This Agreement is expressly not intended for the benefit of any creditor of the Company or any other person, natural or otherwise.  Except and only to the extent provided by applicable statute, no such creditor or third party shall have any rights under this Agreement or any agreement between this Company and any Member with respect to any Capital Contribution or otherwise.

12.6.    Waiver of Partition.  No Member shall, either directly or indirectly, take any action to require partition, file a bills for Company accounting or appraisement of the Company or of any of its assets or properties or cause the sale of any Company property and, notwithstanding any provisions of applicable law to the contrary, each Member (and each of his

-24-

447702-v6 0026857-0064

DEF-ID-044

legal representatives, successor or assigns) hereby irrevocably waives any and all rights it may have to maintain any action relating to any assets or properties of the Company, except as expressly provided in this Agreement.

12.7.  Successors.  The terms and conditions of this Agreement shall inure to the benefit of and be binding upon any successor in interest and assigns of the Members hereunder, except as may be otherwise provided herein.

12.8.  Entire Agreement.  This Agreement constitutes the entire understanding of the parties hereto with respect to the subject matter hereof and no amendment, modification or alteration of the terms hereof shall be binding unless in writing and made in accordance with Section 10.1.

12.9.  Counterparts.  This Agreement may be executed in multiple counterparts, each of which shall be an original, but all of which shall constitute one instrument.

12.10.  Captions.  The captions herein are inserted for convenience of reference only and shall not affect the construction of this Agreement.

12.11.  Validity and Severability.  It is intended that this Agreement shall not be in violation of any valid applicable laws, whether federal, state, local or of any foreign country, and to that end it is agreed that the rights, duties, and obligations of the parties hereto as provided for in this Agreement shall be binding only insofar as it is lawful for the parties so to agree.  If any provision of this Agreement is at any time in violation of any such law, this Agreement shall (during the period so in violation) be considered divisible and inoperative as to such invalid portion for the locality where so invalid, but in all other respects this Company shall be binding.

DEF-ID-045

447702-v6 0026857-0064

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

MANAGER:

F. P. INVESTMENTS, INC.

By: _____
    Name:
    Title:

MEMBERS:

_____
John Gardner

_____
Steve Bonacci

VBM-USA

By:_____
    Name:  Chris Zachariasse
    Title:

DEF-ID-046

447702-v6 0026857-0064