**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JONATHAN H. MORRIS : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Case No. |
| : | 1:06-CV-01131 (HHK) |
| BUVERMO PROPERTIES, INC., et. al., : | Next Event: Status Conference |
| : | April 20, 2007 at 10:30 a.m. |
| Defendants. : | |

**REPLY MEMORANDUM TO PLAINTIFF'S**
**OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules 7(d) and 56.1, Defendants Buvermo Properties, Inc., Fidelio Properties, F.P. Executive Partners, L.L.C., Janivo Realty, Inc., Donelux, Inc., Orvan, Inc., Fidelio Properties Management, Inc. and John Gardner hereby file their Reply Memorandum to Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

**PRELIMINARY STATEMENT**

In accordance with Local Rules 7.1(h) and 56.1, Defendants' Motion for Summary Judgment was accompanied by a statement of material facts as to which Defendants contend there is no genuine issue, supported by appropriate citations to the record. The Local Rules impose a corresponding obligation on Plaintiff to separately identify all material facts as to which he contends there is a genuine issue to be litigated. The amalgamation of facts submitted by Plaintiff neither corresponds with Defendants' statement nor specifically identifies facts in dispute, as is contemplated by the Local Rules. Indeed, many of the facts set forth in Plaintiff's statement are not disputed, others are incomplete, misstated or contain other discrepancies.

Despite Plaintiff's best efforts to cloud the issues, there are no genuine issues of fact in this case, and summary judgment in Defendants' favor is warranted.

## ARGUMENT

### I. Choice of Law

The parties agree that the law in Virginia and in the District of Columbia is not in conflict with respect to the issues in this lawsuit. To the extent any conflict does exist, however, the choice of law rules used in the District of Columbia would require the application of Virginia law as Virginia has, by far, the most significant relationship to the parties and transactions at issue. According to the Amended Complaint, Plaintiff is, and at all relevant times has been, a resident of the State of Florida. All of the Defendants reside in or maintain their principal place of business in Virginia. Plaintiff was employed and maintained his office in Virginia, and each of the properties in which he claims an interest (i.e. Spotswood Valley and Reston International Center) is located in Virginia. Virginia's interest in this case is substantial, as it involves matters relating to its real estate, employees, residents and entities transacting business within its borders. In contrast, the District of Columbia, whose relationship to this case is incidental and largely fortuitous, has no such interests.

### II. The Statute of Frauds

As established in Defendants' Memorandum submitted in support of their Motion for Summary Judgment, Plaintiff's claim that he is entitled to damages for breach of a purported 10 year employment agreement with Buvermo is barred by the statute of frauds because no writing exists that reflects any such agreement on Buvermo's part. While Plaintiff admits that his purported 10 year agreement is not reflected in any writing, he argues that Defendants have waived and/or are equitably estopped from invoking a statute of frauds defense. Unfortunately

for the Plaintiff, the facts in this case simply do not support the application of the doctrines of waiver or equitable estoppel as a means to avoid the implications of the statute of frauds.

### A. **Defendants Have Not Waived Their Statute of Frauds Defense**

In his Opposition, Plaintiff asserts that Defendants have waived their right to interpose a statute of frauds defense because they have admitted "the existence of a contract with plaintiff." (Plaintiff's Opposition at 5). As noted in the cases cited by Plaintiff, according to District of Columbia law, where a party has admitted the existence of the agreement at issue, that party has waived and may not assert a statute of frauds objection to the enforcement of an oral agreement. See e.g. Wemhoff v. Investors Management Corp. of America, 455 A.2d 897, 899 (D.C. 1983); Hackney v. Morelite Construction, 418 A.2d 1062, 1067 (D.C. 1980); Rafferty v. NYNEX Corp., 744 F. Supp. 324, 330 (D. D.C. 1990). In each of these cases, the defendant expressly admitted the existence of the oral agreement at issue, and was therefore found to have waived its statute of frauds defense. As noted by the court in Hackney, such a rule prevents a defendant from admitting "an honest obligation and yet defeat[ing] its enforcement by pleading that the agreement was only oral and that there is no written evidence of the obligation as required by the Statute of Frauds." 418 A.2d at 1066-67.

The critical fact that distinguishes this case from Wemhoff, Hackney and Rafferty is that Defendants have never acknowledged the existence of the alleged oral employment agreement upon which Plaintiff relies. Even in the most favorable light, the fragments of deposition testimony cited by Plaintiff in his Opposition merely reflect the fact that Buvermo/Fidelio intended to remain in the market for the long-term and were seeking to ensure that Plaintiff shared their investment philosophy and viewed the position as a long-term opportunity. While Plaintiff attempts to bootstrap this testimony into evidence of a binding oral agreement to a 10

3

year or some other fixed term of employment, no such agreement was discussed or reached, as evidenced by the following testimony Plaintiff has chosen to ignore.

> Q: Was there a discussion between you and Mr. Morris regarding a non – what you considered to be a nonbinding term of employment?
>
> A: No.
>
> Q: Okay.
>
> A: There was no agreement on – there was no comment on term. I read the term as at-will.
>
> Q: Okay. And no discussion whatsoever regarding duration, of how long you'd want him around?
>
> A: No discussion at all in terms – in those terms, no. There was an at-will – this is the deal; this is the salary; these are the other terms. But the – but the term was at-will contract, not – without any – term.

Deposition of John Gardner at 197-98.[1]

> Q: Okay. Are you opposed as a matter of practice to providing any guarantees of employment terms?
>
> A: Yes.
>
> Q: Okay.
>
> A: Very strongly so. I don't have them myself.
>
> ****************
>
> Q: You testified about the negotiations leading up to the offer of employment to Mr. Morris; and I believe you said that you had a long-term view of the opportunity and you expected that – and I'm summarizing, obviously – Mr. Morris, you wanted to make sure that he had somewhat of a long-term perspective as well?

---

[1] Relevant portions of Mr. Gardner's deposition transcript were submitted with Defendants' Motion for Summary Judgment as Exhibit 1. Additional excerpts from Mr. Gardner's deposition cited herein, but not included within Exhibit 1, are attached hereto as Exhibit 1.

4

> A: Correct.
>
> Q: I'm just drawing your attention to that testimony. During those discussions did the company Buvermo offer any specific term of employment to Mr. Morris?
>
> A: No. [objection omitted].
>
> Q: All right. And did Mr. Morris ever attempt to even negotiate a fixed term of employment?
>
> A: He did not. [objection omitted].
>
> ********************
>
> Q: All right. And did the company agree to employ Mr. Morris until he reached the age of 60 years old?
>
> A: Absolutely not. [objection omitted].
>
> Q: All right. Did the company ever agree to employ Mr. Morris for a ten-year period?
>
> A: No. [objection omitted].

Deposition of Joost Tjaden at 103, 157-58.[2]

> Q: I want to draw your attention to your testimony about your discussion with Mr. Morris about joining Buvermo as its president. You had testified, I believe, that you had told John [the Plaintiff] that Donelux had recently had recently confirmed its long-term commitment to the market –
>
> A: (The witness moves head up and down)
>
> Q: -- is that correct?
>
> A: That's correct.
>
> Q: All right. Now, during the course of those discussions with Mr. Morris, did you at any time agree to a specific term of employment with Mr. Morris?
>
> A: None whatsoever.

---

[2] Relevant portions of Mr. Tjaden's deposition transcript were submitted with Defendants' Motion for Summary Judgment as Exhibit 2. Page 103 to Mr. Tjaden's deposition, which is not included within Exhibit 2, is attached hereto as Exhibit 2.

5

Deposition of Andre van Rhee at 120.[3]

The <u>only</u> agreement that Defendants have admitted is in existence is the offer letter to Plaintiff signed and dated by the parties on June 3, 2005. (Defendants' Statement of Material Facts (hereinafter "SMF") ¶ 60). As conceded by Plaintiff, the offer letter does not contain any reference to a 10 year or any other specific term of employment. (<u>Id.</u> ¶ 64). The existence of this agreement, which provides for no definite term of employment, clearly does not impair Defendants' ability to invoke the statute of frauds. There is no evidence that Defendants have acknowledged the existence of a separate oral agreement with Plaintiff providing him with a 10 year or some other fixed term of employment.[4] As such, Defendants have not waived their ability to assert the statute of frauds which, in operation, bars Plaintiff's contract claims.

### B.    <u>The Doctrine of Equitable Estoppel Is Not Applicable</u>

In a further attempt to avoid the implications of the statute of frauds, Plaintiff asserts that the doctrine of equitable estoppel precludes Defendants' ability to rely on the statute of frauds as a defense in this case. Under both Virginia and District of Columbia law, the doctrine of equitable estoppel may operate to bar a statute of frauds defense given appropriate facts. As noted by Plaintiff, the four elements that must be proved to establish equitable estoppel under Virginia law are: (i) a representation; (ii) reliance; (iii) a change of position; and (iv) detriment.

---

[3]    Relevant portions of Mr. van Rhee's deposition transcript were submitted with Defendants' Motion for Summary Judgment as Exhibit 3.

[4]    In his Opposition, Plaintiff suggests that the alleged oral agreement to employ him for 10 years or some other fixed term was one of several contemporaneous oral agreements relating to the terms of his employment. In this regard, Plaintiff references the fact that Defendants contend certain conditions had to be met before Plaintiff would be entitled to a promoted interest in the projects at issue in this case. <u>See</u> Plaintiff's Opposition at 8-9. Contrary to Plaintiff's arguments, these conditions were not the subject of oral agreements; rather, these conditions are implicit within the FPEP LLC Agreement which governed Plaintiff's promoted interests. This issue is discussed in detail below.

Nargi v. Camac Corp., 820 F. Supp. 253, 256 (W.D. Va. 1992). Unfortunately, in his zeal to satisfy the elements of equitable estoppel, Plaintiff has overstated and misrepresented the facts.

According to his Opposition, Plaintiff took the following actions based upon his alleged 10 year oral employment agreement with Buvermo: (i) he discontinued his pursuit of several residential properties in Florida that he believed would have been "very profitable investment opportunities;" (ii) he sold his townhouse in Florida at a price that was "far less than what it would have been worth had he held on to the property;" and (iii) he moved to the District of Columbia whereupon he purchased a $1.9 million dollar penthouse and spent an additional $300,000 to renovate the property. See Plaintiff's Opposition at 10-11. According to the Plaintiff, as a result of his termination, he has been forced to sell his penthouse and will lose more than $100,000.

While Plaintiff now suggests that he sold his Florida home, moved to the District and made other major decisions based upon his alleged 10 year agreement with Buvermo, the testimony Plaintiff provided at his deposition is quite illuminating with respect to his true circumstances. First, Plaintiff never moved from Florida as he now indicates. During his deposition which took place on October 12, 2006, well after his termination, Plaintiff testified that he was currently living in Florida and had continuously maintained residency there since January 2004. (Deposition of Jonathan Morris ("Morris Dep.") at 14-15).[5] Plaintiff's Complaint, filed in June 2006, confirms that at all times relevant to his Complaint, Plaintiff was a Florida resident. See Complaint ¶ 1. In other words, Plaintiff never left Florida to accept employment with Buvermo; indeed, during his deposition, Plaintiff insisted that he continued to

---

[5]   Relevant portions of Mr. Morris' deposition transcript were submitted with Defendants' Motion for Summary Judgment as Exhibit 5. Additional excerpts from Mr. Morris' deposition cited herein, but not included within Exhibit 5, are attached hereto as Exhibit 3.

live in Florida while working for Buvermo and lived there "for the majority of 2005." (Morris Dep. at 238).

Further, during his deposition, Plaintiff revealed that in February 2006, prior to his termination, he purchased another home in Palm Beach, Florida where he resides today. (Morris Dep. at 14). Accordingly, to the extent Plaintiff actually sold his Florida townhouse upon accepting employment with Buvermo, he did not leave Florida as he now implies; rather, he purchased another home and continued living in the state. Thus, with respect to Plaintiff's claims concerning his Florida townhouse, Plaintiff cannot establish the final three elements of a claim for equitable estoppel -- reliance, change of position and detriment. The same holds true with respect to Plaintiff's claim regarding his alleged lost investment opportunities in Florida; indeed, since he never left Florida, there would be no valid reason to abandon his plans.[6]

Further, contrary to the information contained in his Opposition, Plaintiff was not lured to the District of Columbia by Buvermo's offer of employment. According to his deposition testimony, before establishing residency in Florida in January 2004, Plaintiff had lived in the District for nearly 30 years. (Morris Dep. at 16). Even after he moved to Florida 2004, Plaintiff owned and maintained an apartment in the District. (Id. at 17). While Plaintiff subsequently elected to upgrade his living arrangements by purchasing a penthouse at the Ritz Carlton, he admitted during his deposition that he was not required to purchase the penthouse in connection with his position with Buvermo and that the decision to make this purchase was his alone. (Id. at 18-19). Further, while Plaintiff claims he was compelled to sell his penthouse apartment at a loss following his termination, he admitted that he was contemplating the purchase of another apartment unit at the Ritz Carlton as a replacement for his penthouse. (Id. at 20). Thus, as with

8

his claims concerning his Florida townhouse, evidence supporting the final three elements of a claim for equitable estoppel -- reliance, change of position and detriment -- is lacking with respect to this claim.

Thus, the facts in this case are wholly distinguishable from those set forth in the Nargi v. Camac decision. In Nargi, the plaintiff alleged that he had negotiated an agreement pursuant to which defendant agreed to employ him for a period of 4 years, purchase the plaintiff's home to facilitate his relocation and provide other employment benefits. The plaintiff's offer letter made no mention of a term of employment or the defendant's agreement to purchase plaintiff's home. Significantly, and unlike this case, the plaintiff introduced evidence that he questioned the omissions in his offer letter and received assurances regarding the term of his employment. Based upon these assurances, the plaintiff presented evidence that he sold his home, closed his consulting business, terminated negotiations for the purchase of a different business and moved his family to a different part of the state to accept the position with defendant.

Unlike the Plaintiff in this case, the plaintiff in Nargi introduced credible evidence of reliance, change in position and detriment. It is important to note that the plaintiff in Nargi also questioned the defendant regarding the omissions in his offer letter, a fact the court found significant in terms of the reasonableness of the plaintiff's reliance. In this case, Plaintiff did not question the fact that his offer letter omitted any reference to a fixed term of employment, raising a serious issue as to the reasonableness of Plaintiff's actions. In any event, Plaintiff has failed to overcome the statute of frauds by presenting sufficient evidence to support application of the doctrine of equitable estoppel.

---

[6] It also bears noting that Plaintiff's allegations concerning the future value of his townhouse and the value of his lost investments is far too speculative to support a finding that Plaintiff has satisfied the detriment element.

### III. Plaintiff Has Made No Claim For Severance Pay

In his Opposition, Plaintiff claims that an issue of material fact exists concerning his right to severance pay. See Plaintiff's Opposition at 13. Plaintiff has made no claim for severance pay in this case, and his Amended Complaint is devoid of any mention of it. Similarly, Plaintiff's Interrogatory response describing his alleged damages, omits any reference to a claim for severance pay.[7] As such, this claim is not before the Court and is not a barrier to the entry of summary judgment.

### IV. Plaintiff Has Been Fully Compensated In Accordance With the Terms of His Offer Letter

In his Opposition, Plaintiff acknowledges that should the Court find that the statute of frauds bars his claim to a 10 year term of employment, the only issues that would remain for adjudication would relate to his right to receive a promoted interest in the Spotswood Valley and Reston International Center projects, his right to invest his own capital in these same projects and his right to a promoted interest in the "current projects" described in his offer letter. As established in Defendants' Memorandum in Support of their Motion for Summary Judgment, Plaintiff has no such rights and has been fully compensated in accordance with the terms of his offer letter. Plaintiff's Opposition fails to identify a genuine issue of material fact with respect to these issues, thereby rendering summary judgment appropriate in this case.

#### A. Plaintiff Has No Enforceable Interest In Spotswood Valley or Reston International Center

As set forth in Defendants' Memorandum in Support of their Motion for Summary Judgment, Plaintiff is not entitled to a promoted interest in Spotswood Valley or Reston International Center for the simple fact that, as of the date of Plaintiff's termination, the

---

[7] See Plaintiff's response to Interrogatory No. 22. Plaintiff's responses to Defendants' Interrogatories are attached hereto as Exhibit 4.

properties had not been acquired by Fidelio or identified as FPEP Properties, and Plaintiff had not been admitted to FPEP.  The fact that these properties were later acquired -- months after Plaintiff's termination -- does not vest Plaintiff with an entitlement to a promoted interest because the promoted interest structure is specifically intended as compensation for successfully managing the investment and adding value over its lifetime.

In his Opposition, Plaintiff argues that he never agreed to any of the conditions identified by Defendants.  Further, despite the undisputed fact that receiving a promoted interest is directly contingent on Fidelio recouping its initial capital investment and receiving a preferred rate of return as a result of the property appreciating in value, Plaintiff claims that in addition to his $250,000 annual salary, he understood that the promote structure was intended to compensate him for merely identifying (i.e. "initiating") a potential real estate investment.  According to Plaintiff, his right to a promote was not in any way contingent upon his continued employment with Buvermo, despite the fact that it is undisputed that shortfalls that may result from any given investment are offset against the promote due from any subsequent deal.  (SMF ¶ 31).  Therefore, according to Plaintiff, summary judgment is not appropriate because a factual dispute exists as to what conditions governed Plaintiff's entitlement to a promoted interest.

Whatever factual issues the Plaintiff has attempted to conjure in this case, it is an undisputed and irrefutable fact that Plaintiff's offer letter explicitly provides that his right to receive promoted interests "<u>will be governed by the FPEP LLC agreement, of which you will because a member.</u>"  Understandably, this provision is not explained or even mentioned in Plaintiff's analysis, as it operates to defeat Plaintiff's claim that he is entitled to the promoted interests at issue in this case.

During his deposition, Plaintiff confirmed that the document attached as Exhibit 4 to his deposition was the FPEP LLC Agreement that was in place at the time he was hired. (SMF ¶ 69). Before Plaintiff was hired, he received an explanation from Mr. Gardner with respect to how the FPEP LLC Agreement worked. (SMF ¶ 70). To the extent there is any dispute on this point, during his deposition, Plaintiff acknowledged that during his employment with Buvermo, he had unrestricted access to all company documents and had reviewed the FPEP LLC Agreement, and there is no evidence whatsoever that Plaintiff raised any objections to its terms. (SMF ¶ 72).[8] Plaintiff also confirmed that he understood that FPEP was a pass-through entity through which he would receive the benefits described in his offer letter -- i.e. the promoted interests and the right to participate as an investor in Fidelio's projects. (Morris Dep. at 104-05. See also Plaintiff's Statement of Disputed Facts ¶ 27). Plaintiff was therefore well aware of the fact that membership in FPEP was required before he had a right to receive a promoted interest. It is undisputed that Plaintiff was terminated prior to being inducted as a member of FPEP and therefore has no right to the promoted interests at issue.

As described in Defendants' Memorandum in Support of their Motion for Summary Judgment, even if Plaintiff had been a member of FPEP at the time of his termination, his right to receive a promoted interest in Spotswood Valley and Reston International Center was necessarily contingent upon Fidelio's acquisition and designation of these properties -- events that occurred long after his termination. In other words, at the time of Plaintiff's termination, because Fidelio had no interest to convey to FPEP, neither Plaintiff nor any other member of FPEP was entitled to a promoted interest for the Spotswood Valley and Reston International Center projects.

---

[8] Plaintiff does contend the agreement was to be "modernized," but, as established in Defendants' Memorandum in Support of their Motion for Summary Judgment, was uncertain how the agreement was going to change beyond adding his name to it.

Finally, it is undisputed that participation as a member of FPEP is a benefit that is provided only to Buvermo's employees, and to that end, the FPEP LLC Agreement (Section 8.9) provides for redemption of a member's interest upon withdrawal or cessation of employment. (SMF ¶ 32).[9]  Thus, even if Plaintiff had been a member of FPEP, he would have been required to surrender his membership interest in FPEP when he was terminated -- an interest which had no value because neither Spotswood Valley nor Reston International Center had been acquired. Of course, in Plaintiff's case, no steps were actually undertaken to enforce Section 8.9 of the FPEP LLC Agreement because Plaintiff was not a member of FPEP and had no membership interest to redeem.

While Plaintiff may dispute the existence of certain conditions to his entitlement to a promoted interest that are merely consistent with common sense, he does not and cannot dispute the fact that his entitlement was governed by the provisions of the FPEP LLC Agreement.  It is undisputed that Plaintiff was never inducted as a member of FPEP and, even if he had been, his membership interest had no value and would have been redeemed at the time of his termination. Unlike the situation in Wemhoff v. Investors Management Corp. of America, 455 A.2d 897 (D.C. 1983) and Bear Brand Hosiery Co. v. Tights, Inc., 605 F.2d 723 (4th Cir. 1979), there is no dispute regarding the terms or the applicability of the FPEP LLC Agreement, which operates to bar Plaintiff's claims to the promoted interests at issue.

---

[9]  In his Opposition, Plaintiff makes the spurious argument that the redemption provision does not apply to him because it does not include his name. See Plaintiff's Opposition at 19. Plaintiff was well aware of the fact that the FPEP LLC Agreement was to be amended to include him as a member (SMF ¶ 73); however, he was terminated before this occurred.

### B. Plaintiff Has No Enforceable Option To Invest In Spotswood Valley or the Reston International Center

Despite the fact that neither Spotswood Valley nor Reston International Center had been acquired at the time of Plaintiff's termination, Plaintiff contends that he has a right to invest his own capital in these projects. According to Plaintiff, his offer letter does not limit his investment rights to projects that close or that are designated as an FPEP Property prior to his termination; rather, his offer letter suggests that his investment right extends to all projects "initiated" during his tenure -- i.e. the Spotswood Valley and Reston International Center projects.

As with his claim to a promoted interest, Plaintiff simply ignores the fact that his offer letter provides that his right to invest is governed by the provisions of the FPEP LLC Agreement. Plaintiff does concede that his right to invest flows through membership in FPEP (Plaintiff's Statement of Facts ¶ 27), which, in turn, is governed by the FPEP LLC Agreement. (SMF ¶ 22). Accordingly, as with his claim to a promoted interest in the Spotswood Valley and Reston International Center projects, Plaintiff has no right to invest in these projects because he was not a member of FPEP at the time of his termination. Further, even if Plaintiff had been a member of FPEP at the time of his termination, his membership interest would have been immediately redeemed and his corresponding rights as a member, including his right to invest in these projects when and if they were ultimately acquired, would have terminated.[10]

### C. Plaintiff Is Not Entitled To A Promoted Interest For "Current Projects," As Such Interests Are Expressly Subject To A Two Year Vesting Period.

In Virginia, the interpretation of a contract presents a question of law. Bentley Funding

---

[10] During his deposition, Plaintiff admitted that he has not made any effort to tender his own capital towards these projects. (Morris Dep. at 323-24). Therefore, even if Plaintiff had been a member of FPEP at the time of his termination, the value of his membership interest would not have been affected by his investment rights due to the fact that he had not actually contributed any money towards Fidelio's investments.

Group, L.L.C. v. SK & R Group, L.L.C., 269 Va. 315, 324, 609 S.E.2d 49, 53 (2005). The contract is construed as written, without adding terms that were not included by the parties. Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984). When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. Bridgestone/Firestone, Inc. v. Prince William Square Assocs., 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995). "Words that the parties used are normally given their usual, ordinary, and popular meaning. No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." D.C. McClain, Inc. v. Arlington County, 249 Va. 131, 135-36, 452 S.E.2d 659, 662 (1995).

> Current Projects – You will be entitled, upon start of employment, to the share of FPEP promoted interest currently owned by Fidelio Properties for land parcels adjacent to the Sheraton Reston parcels, and the remaining land parcels at Twinbrook. <u>Such interests will be subject to a two year vesting period.</u>

In this case, Plaintiff's offer letter included the following provision:

(SMF ¶ 62) (emphasis added). According to Plaintiff, this provision is ambiguous and he understood it to mean that he would be entitled to a promoted interest in current projects unless he was terminated for cause.

Applying Virginia's well-established rules of contract construction, the terms of this provision are clear and unambiguous -- to be entitled to an interest in the Sheraton Reston parcels and the remaining land parcels at Twinbrook, Plaintiff was required to remain employed with Buvermo for 2 years (this requirement also evidences the fact that no agreement was reached with Plaintiff concerning a 10 year or any other fixed term of employment). Such an interpretation is reasonable and consistent with the common understanding of the meaning of the phrase "vesting period," and would reflect the intent with which it was drafted. On the other

15

hand, Plaintiff's interpretation would require adding terms not agreed to by the parties. There is simply nothing inconsistent or unusual about providing an interest subject to a vesting period. Plaintiff's concern that Defendants' interpretation would allow his termination 1 day prior to the conclusion of the vesting period is simply unfounded as such a scenario is not consistent with the facts of this case.

### V.     Plaintiff's Status As An At-Will Employee Bars His Claim For Breach Of Implied Covenant Of Good Faith And Fair Dealing

In his Opposition, Plaintiff concedes that both Virginia and the District of Columbia do not recognize an independent claim for breach of the implied covenant of good faith and fair dealing in the context of an at-will employment contract. In this case, as demonstrated herein and in Defendants' Memorandum in Support of their Motion for Summary Judgment, Plaintiff's claim to a 10 year term of employment is unenforceable as a matter of law. As such, Plaintiff is properly considered an at-will employee, and Defendants are therefore entitled to judgment as a matter of law with respect to Count III of the Amended Complaint.

### VI.    The Extraneous Facts Identified In Plaintiff's Opposition Are Insufficient To Establish The Requisite Elements of Fraud

As set forth in Defendants' Memorandum in Support of their Motion for Summary Judgment, the sparse allegations forming the basis for Plaintiff's fraud claim are insufficient as a matter of law to establish the requisite elements of such a claim. In this regard, Plaintiff's contention that Mr. Gardner represented that he would extricate himself from Buvermo's affairs directly contradicts Plaintiff's own testimony and the information set forth in his offer letter describing, in detail, Mr. Gardner's ongoing role with the company. Further, Plaintiff's claim that Defendants falsely promised him 10 years of employment with a corresponding right to promoted interests during this period is unenforceable under the statute of frauds and inconsistent with the terms of his offer letter and cannot, as a matter of law, support a finding of

reasonable reliance.  Finally, Plaintiff's fraud claim is precluded because it is merely a restatement of his breach of contract claim.

In his Opposition, Plaintiff attempts to bolster his claim with other allegations, none of which individually or collectively satisfy the requisite elements of a fraud claim.  Specifically, Plaintiff contends that Mr. Gardner "did not give up his large corner office at Buvermo until several months after plaintiff began working."  See Plaintiff's Opposition at 26.  Significantly, Plaintiff neglects to mention the fact that, following the commencement of his employment, he encouraged Mr. Gardner to remain in his large corner office "for a little while." (Morris Dep. at 168).  This admission, coupled with the undisputed fact that Plaintiff did subsequently move into Mr. Gardner's office, negates the relevance of this evidence with respect to Plaintiff's fraud claim.

Plaintiff also contends that Mr. Gardner continued to remain involved with Buvermo's affairs and never officially relinquished his position as Buvermo's president.  See Plaintiff's Opposition at 26.  As set forth above, Plaintiff was well aware that Mr. Gardner would remain actively involved with Buvermo's business, a fact that was even reflected in Plaintiff's offer letter.  While corporate resolutions were not prepared designating Plaintiff as Buvermo's president, this is simply a non-issue as reflected by Plaintiff's own testimony that "factually, everyone knew that I was the president and CEO of the company [Buvermo]." (Morris Dep. at 235).  During his deposition, Mr. Gardner also testified that he considered Plaintiff to be the president of Buvermo. (Gardner Dep. at 174).

Finally, in an effort to avoid summary judgment with respect to his fraud claim, Plaintiff misstates the facts regarding the circumstances of his termination.  In his Opposition, Plaintiff claims that in December 2005, after he initiated the Spotswood Valley project, Mr. Gardner

proposed Plaintiff's termination to the members of the management committee. See Plaintiff's Opposition at 27. In fact, both Mr. Tjaden and Mr. van Rhee had independent reservations about Plaintiff's job performance and Mr. van Rhee had discussions with a colleague regarding terminating Plaintiff because of doubts whether he could fulfill his role as their fiduciary in the States. (SMF ¶ 90). In his description of the events of the dinner meeting held on March 22, 2006, Plaintiff conveniently neglects to mention the conduct he exhibited that led to the decision to terminate his employment and the fact the termination decision was made by Mr. Tjaden and Mr. van Rhee, not by Mr. Gardner. (SMF ¶ 105). Finally, Plaintiff's argument that he was terminated in an effort to avoid recognizing his promoted interests ignores the undisputed fact that these interests were transferred to his successor, Mr. Millspaugh, because he would be responsible for managing the Spotswood Valley and Reston International Center projects. (SMF ¶¶ 119-20). It is undisputed that Mr. Gardner has not received, nor is he entitled to, any of the promoted interests at issue in this case. (SMF ¶¶ 97, 121)

The undisputed facts in this case reveal that Defendants hired Plaintiff, provided him with a $250,000 annual salary and terminated his employment after his behavior led the management committee to conclude that he could not adequately fill his fiduciary role. Plaintiff's replacement, not Mr. Gardner, is now eligible to receive the promoted interest with respect to the Spotswood Valley and Reston International Center projects, provided the properties meet financial objectives. These facts in no way support a claim for fraud.

**VII.   Plaintiff's Tortious Interference Claim Fails As A Matter Of Law**

In his Opposition, Plaintiff utterly fails to identify any evidence that Mr. Gardner intentionally interfered with Plaintiff's employment by utilizing "improper methods," as is required under Virginia law to maintain a claim for intentional interference in an at-will employment context. In this regard, Plaintiff simply ignores the fact that Mr. Gardner had a

substantive and ongoing role with Buvermo after Plaintiff was hired, both as an employee and investor, and therefore had a legitimate reason to be involved with its business affairs. Likewise, as set forth above, there is no evidence that Mr. Gardner procured or "orchestrated" Plaintiff's termination. Rather, the decision to terminate Plaintiff was made solely by Mr. Tjaden and Mr. van Rhee following Plaintiff's reprehensible conduct at the dinner meeting held on March 22, 2006. (SMF ¶¶ 103, 105, 106).

Moreover, Plaintiff neglects to address an additional key and dispositive fact -- that Mr. Gardner holds an ownership interest in Buvermo. (SMF ¶ 16). As an owner of Buvermo, Mr. Gardner is legally incapable of interfering with Plaintiff's employment relationship. See e.g. McManus v. MCI Communications Corp., 748 A.2d 949, 958 (D.C. 2000), cert. denied 531 U.S. 1183 (2001)("it is axiomatic that an employer cannot interfere with its own contract.")

## CONCLUSION

For the reasons set forth above and in their initial Memorandum of Points and Authorities in Support of their Motion for Summary Judgment, Defendants respectfully request that the Court GRANT their Motion for Summary Judgment as to each count set forth in Plaintiff's Amended Complaint, dismiss the Amended Complaint with prejudice and provide Defendants such other and further relief as the Court deems proper.

        Respectfully submitted,

        SMITH, LEASE & GOLDSTEIN, LLC

By:   /s/ Marc J. Smith
        Marc J. Smith
        D.C. Bar No. 460255
        11 North Washington Street
        Suite 520
        Rockville, Maryland 20850
        Phone: (301) 838-8950

        Counsel for Defendants