IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JONATHAN H. MORRIS | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Case No. |
| | : | 1:06-CV-01131 (HHK) |
| BUVERMO PROPERTIES, INC., et. al., | : | Next Event: Status Conference |
| | : | (no date assigned) |
| Defendants. | : | |

### DEFENDANTS' MOTION FOR RECONSIDERATION

Defendants Buvermo Properties, Inc., Fidelio Properties, F.P. Executive Partners, L.L.C., Janivo Realty, Inc., Donelux, Inc., Orvan, Inc., and Fidelio Properties Management, Inc. hereby file their Motion for Reconsideration of the Court's denial of Defendants' Motion for Summary Judgment as to Plaintiff's breach of contract claim.

### PRELIMINARY STATEMENT

Defendants seek reconsideration of the Court's denial of their Motion for Summary Judgment as to Plaintiff's breach of contract and related claims. Defendants are cognizant of the fact that Courts are often reluctant to grant such relief; however, in this case, it is very clear that Morris has blatantly misrepresented and manipulated the facts the Court has expressly relied on in denying Defendants' Motion for Summary Judgment. For this reason, Defendants urge the Court to reconsider its earlier ruling.

### PROCEDURAL HISTORY

Plaintiff Jonathan H. Morris is a former employee of Defendant Buvermo Properties, Inc. Following his termination in March 2006, Morris initiated this lawsuit against Buvermo and seven (7) related parties, alleging that his termination violated the provisions of an alleged oral

agreement pursuant to which Buvermo agreed to employ him for ten years. In his Amended Complaint, Morris also asserts causes of action for fraud and tortious interference.[1]

On January 5, 2007, Defendants filed a Motion for Summary Judgment as to each of Plaintiff's claims. On September 24, 2007, the Court granted Defendants' Motion for Summary Judgment as to Morris's fraud and intentional interference claims. Based upon assertions set forth in Morris's affidavit that he detrimentally relied on an alleged oral representation that he would be employed by Buvermo for ten years, the Court ruled that the doctrine of equitable estoppel precluded the entry of summary judgment with respect to Morris's breach of contract claim. While noting that the facts alleged by Morris were considerably less favorable than those involved in the case upon which Morris relied, Nargi v. CaMac Corp., 820 F. Supp. 253 (W.D. Va. 1992), the Court held that there were disputed material facts regarding whether Defendants promised to employ Morris for ten years, whether Morris relied on such a representation to his detriment, and whether such reliance was reasonable.

### STATEMENT OF POINTS AND AUTHORITIES

As noted by the Court, in order to invoke the doctrine of equitable estoppel to overcome the requirements of the statute of frauds, Morris must prove that: (i) there was a representation by the Defendants; (ii) he relied upon that representation to his detriment; and (iii) that his reliance was "reasonable." T. v. T., 216 Va. 867, 872-73. In his affidavit, Morris contends he took the following actions in reliance upon his alleged ten year oral employment agreement with Buvermo: (i) he sold his townhouse in Florida; (ii) he abandoned his pursuit of certain unidentified residential real estate investment opportunities in Florida; and (iii) he moved to the

---

[1] Plaintiff's Amended Complaint includes claims for breach of the implied covenant of good faith and fair dealing (Count II), anticipatory breach (Count III), and a declaratory judgment (Count IV). All of these claims arise out of his purported oral ten year employment agreement with Buvermo.

District of Columbia whereupon he purchased a $1.9 million dollar penthouse. See Morris Aff'd. ¶¶ 8-13, 17, 18.

While Morris now contends that he sold his Florida home, abandoned real estate investment opportunities there and moved to the District of Columbia in reliance upon his alleged ten year agreement with Buvermo, it is clear that Morris has blatantly misrepresented and manipulated the facts in order to avoid summary judgment. First, Morris *never* moved from Florida to the District of Columbia as he represents in his affidavit. Indeed, the very first paragraph in the Amended Complaint shows that Morris maintained his principal residence in Florida, even after accepting employment with Buvermo.

> Plaintiff is, and was at all times relevant hereto, an adult resident of the State of Florida residing at 354 Chilean Avenue, Apartment 6E, Palm Beach, Florida, 33480, and maintained an apartment located at 1111 23rd Street, N.W., Apartment 1A, Washington, D.C. 20037.

Amended Complaint ¶ 1. Further, during his deposition which took place on October 12, 2006, well after the termination of his employment with Buvermo, Morris confirmed that he had continuously maintained his residence in Florida without interruption since January 2004. (Morris Dep. at 14-15).[2]

Second, Morris's assertion in his affidavit that he sold his townhouse in Florida "upon accepting employment with Buvermo," is also a deliberate misrepresentation of the facts. Morris did *not* sell his townhouse in Florida upon accepting employment with Buvermo. Indeed, in an email dated February 17, 2006 -- more than seven months after he was hired -- Morris confirmed that he still owned his Florida townhouse and planned to use the townhouse "as a home base for the next 10 months" while he renovated a newly purchased condominium unit in Palm Beach. In his email, Morris states:

---

[2] Relevant portions of Mr. Morris' deposition transcript are attached hereto as Exhibit 1.

> I am now committed to selling something, most likely the townhouse (as always, I am still thinking about alternatives). I hired Chad to do all the window treatments (he doesn't know about this sale nor does anyone else) and I plan the use the TH [i.e. townhouse] as a home base for the next 10 months and let things, hopefully, escalate in price a bit.

See Exhibit 2 attached hereto. Thus, contrary to the representations set forth in his affidavit, Morris did not dispose of his Florida townhouse "upon accepting employment with Buvermo" or in reliance on a purported ten year employment agreement. Rather, as of February 2006, Morris was *still* living in his Florida townhouse and planned to continue doing so until renovations were completed on his newly purchased residence in Palm Beach. Plainly, Morris's accepting employment with Buvermo did not spur the sale of his townhouse in Florida; rather, the decision to eventually dispose of his townhouse was attributable to his decision to purchase and move into other presumably more desirable living quarters in Palm Beach.

Third, Morris's nebulous claim that he abandoned residential real estate opportunities in Florida in reliance on the alleged promise of ten years of employment also cannot sustain his equitable estoppel theory. As a threshold matter, it is doubtful that Morris could prove the essential element of detrimental reliance as to this claim, as there was no legitimate reason to abandon these alleged investment opportunities given the fact that he *never* left his home in Florida. Moreover, the evidence demonstrates that Morris *continued* pursuing real estate opportunities in Florida long after accepting employment with Buvermo. In this regard, after commencing employment with Buvermo, Morris was actively considering executing a contract to purchase a residential property located at 369 South Lake Drive in Palm Beach, Florida. See Exhibit 3 attached hereto. Subsequently, in February 2006, Morris purchased yet another residential property in Florida located on 429 Australian Avenue in Palm Beach. See Exhibit 2 attached hereto. The documents evidencing Morris's investment activities in Florida after the

4

commencement of his employment with Buvermo were located during discovery on the hard drive of the computer Morris used while employed by Buvermo.  During his deposition, Morris admitted that the documents evidencing his Florida real estate investment activities were prepared during business hours.  (Morris Dep. at 243).  Thus, contrary to the statements set forth in his affidavit, Morris did not "discontinue" his pursuit of investment opportunities in Florida upon accepting employment with Buvermo; rather, he continued to seek out and acquire Florida real estate long after he was hired.

Finally, Morris's contention regarding the purchase of a penthouse apartment at the Ritz Carlton in the District of Columbia cannot, by itself, sustain his theory of equitable estoppel.  Importantly, Morris was not lured to the District of Columbia by Buvermo's offer of employment.  Indeed, according to his deposition testimony, Morris has continuously owned and maintained an apartment in the District for nearly thirty years -- even after he established residency in Florida in 2004.  (Morris Dep. at 15-17).  At the time he accepted the position with Buvermo, Morris already owned a unit at the Ritz Carlton in the District.  <u>See</u> Exhibit 4 attached hereto ("Jonathan H. Morris Real Estate Holdings").  While Morris subsequently elected to upgrade his living arrangements by selling this unit and purchasing a penthouse unit in December 2005 (six months after he commenced employment), he admitted during his deposition that he was not required to acquire the penthouse in connection with his position with Buvermo and that the decision to make this purchase was his alone.  (Morris Dep. at 18-19).[3]

Defendants are entitled to summary judgment with respect to Morris's breach of contract and related claims set forth in his Amended Complaint because Morris cannot establish the requisite element of detrimental reliance in order to prevent the application of the statute of

5

frauds. In this regard, Morris did not, as he alleges in his affidavit, sell his townhouse in Florida nor did he abandon real estate prospects there. Similarly, Morris did not move to the District of Columbia in reliance upon his offer of employment with Buvermo; indeed, it is undisputed that he owned and maintained a home in the District long before he accepted employment with Buvermo. Stripped of its spurious allegations, Morris's affidavit merely shows that, on his own accord, he elected to upgrade his living arrangements at the Ritz Carlton after accepting employment with Buvermo. By itself, this allegation is insufficient as a matter of law to support a theory of equitable estoppel. Easter v. Kass-Berger, Inc., 121 A.2d 868 (D.C. App.) (1956).

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court GRANT their Motion for Reconsideration and enter summary judgment on their behalf as to Plaintiff's breach of contract and related claims, dismiss the Amended Complaint with prejudice and provide Defendants such other and further relief as the Court deems proper.

Respectfully submitted,

SMITH, LEASE & GOLDSTEIN, LLC

By: /s/ Marc J. Smith
Marc J. Smith
D.C. Bar No. 460255
11 North Washington Street
Suite 520
Rockville, Maryland 20850
Phone: (301) 838-8950

Counsel for Defendants

---

[3] While Morris claims he was compelled to sell his penthouse apartment at a loss, he admitted that even after his termination, he was contemplating the purchase of yet another apartment unit at the Ritz Carlton as a replacement for his penthouse. (Morris Dep. at 20).