IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN H. MORRIS : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Case No. |
| : | 1:06-CV-01131 (HHK)(AK) |
| BUVERMO PROPERTIES, INC., et. al., : | Next Event: Status Conference |
| : | April 4, 2008 at 10:00 a.m. |
| Defendants. : | |

DEFENDANTS' MOTION FOR LEAVE
TO CONTINUE PLAINTIFF'S DEPOSITION

Defendants Buvermo Properties, Inc., Fidelio Properties, Fidelio Properties II, LLC, F.P. Executive Partners, L.L.C., Janivo Realty, Inc., Donelux, Inc., Orvan, Inc., and Fidelio Properties Management, Inc., hereby file their Motion for Leave to Continue Plaintiff's Deposition. In accordance with Local Rule 7(m), the parties have conferred to discuss this Motion to which Plaintiff consents in part and opposes in part.

PRELIMINARY STATEMENT

Plaintiff Jonathan H. Morris is a former employee of Defendant Buvermo Properties, Inc. Following his termination in March 2006, Plaintiff initiated this lawsuit against Buvermo and seven (7) related parties, alleging that his termination violated the provisions of an alleged oral agreement pursuant to which Buvermo agreed to employ him for ten years. In his Complaint, Plaintiff also asserts causes of action for fraud and tortious interference. The discovery period in this case expired on December 8, 2006.

Following the Court's ruling on Defendant's Motion for Summary Judgment (discussed in more detail below), the Court granted Plaintiff's Motion to Continue the deposition of Defendants' Designee for the purpose of obtaining updated information concerning the property

interests at issue in this case, as well as Defendants' investment activities following the expiration of discovery. Defendants have a similar need to continue Plaintiff's deposition in order to obtain current information concerning his efforts to mitigate his damages by obtaining suitable employment. Plaintiff consents to being re-deposed for this purpose.

Defendants also have a need to depose Plaintiff with respect to a second issue -- allegations contained in an affidavit submitted by Plaintiff after the close of discovery and upon which the Court relied in ruling on Defendants' Motion for Summary Judgment. To provide some background, Defendants filed a Motion for Summary Judgment on January 5, 2007 as to each of Plaintiff's claims, arguing, among other things, that Plaintiff's claim of an oral ten year employment contract was barred by the statute of frauds. Plaintiff filed his Opposition on February 7, 2007 and argued that the doctrine of equitable estoppel precluded Defendants' statute of frauds defense. To support this theory, Plaintiff submitted an affidavit with his Opposition in which he alleged, for the very first time, that he took certain actions in reliance upon his alleged ten year oral employment agreement. Specifically, Plaintiff claimed that he: (i) sold his townhouse in Florida where he was living; (ii) abandoned his pursuit of certain unidentified residential real estate investment opportunities in Florida; and (iii) moved to the District of Columbia and purchased a $1.9 million dollar penthouse apartment. See Affidavit of Jonathan Morris at ¶¶ 8-13, 17-18.[1] Although the Court granted Defendants' Motion for Summary Judgment as to Plaintiff's fraud and intentional interference claims, based upon the assertions set forth in Plaintiff's affidavit, it ruled that the doctrine of equitable estoppel precluded entry of summary judgment with respect to Plaintiff's contract claims.[2]

---

[1]   A copy of Plaintiff's Affidavit is attached hereto as Exhibit 1.

[2]   As noted by the Court in its Memorandum Opinion, in order to invoke the doctrine of equitable estoppel to overcome the requirements of the statute of frauds, Plaintiff must prove

Prior to the filing of Plaintiff's affidavit (which again was submitted <u>after</u> the close of discovery), Defendants had no indication that Plaintiff intended to raise the issue of equitable estoppel or would make the claims set forth in his affidavit. Indeed, none of these claims are set forth in the Complaint. Moreover, the claims set forth in Plaintiff's affidavit are directly contrary to the allegations set forth in his Complaint, his deposition testimony and other evidence gathered during discovery. For example, the assertion in Plaintiff's affidavit that he sold his townhouse in Florida "upon accepting employment with Buvermo," is in direct conflict with an earlier document prepared by the Plaintiff in which he confirms that he did *not* sell his townhouse in Florida upon accepting employment with Buvermo. Specifically, in an email dated February 17, 2006 -- more than seven months after he was hired -- Plaintiff confirmed that he still owned his Florida townhouse and planned to use the townhouse "as a home base for the next 10 months" while he renovated a newly purchased condominium unit in Palm Beach. (<u>See</u> Exhibit 2 attached hereto).

Likewise, Plaintiff's claim that he abandoned residential real estate opportunities in Florida also contradicts documents produced during discovery which demonstrate that Plaintiff *continued* pursuing real estate opportunities in Florida long after accepting employment with Buvermo. In fact, after commencing employment with Buvermo, Plaintiff was considering purchasing investment property in Palm Beach, Florida. <u>See</u> Exhibit 3 attached hereto. Subsequently, in February 2006, Plaintiff did purchase some residential property in Palm Beach, Florida. <u>See</u> Exhibit 2 attached hereto. During his deposition, Plaintiff even admitted that the

---

that: (i) there was a representation by Defendants; (ii) he relied upon that representation to his detriment; and (iii) his reliance was reasonable. <u>T. v. T.</u>, 216 Va. 867, 872-73 (1976). According to the Court, there were genuine issues of fact regarding, among other things, the element of detrimental reliance.

documents evidencing his Florida real estate investment activities during his employment at Buvermo were prepared at Buvermo's offices during business hours. (Morris Dep. at 243 (Exh. 4 attached hereto). Thus, contrary to the statements set forth in his affidavit, Plaintiff did not "discontinue" his pursuit of investment opportunities in Florida upon accepting employment with Buvermo; rather, he continued to seek out and acquire Florida real estate long after he was hired.

In his Affidavit, Plaintiff also asserts that he moved from Florida to the District of Columbia in reliance upon Buvermo's purported promise of ten years of employment. This contention is at odds with the very first allegation set forth in Plaintiff's Complaint (and subsequent amendments) in which Plaintiff alleges that he has continuously maintained his residence in Florida "at all times relevant hereto." During his deposition which took place on October 12, 2006, Plaintiff confirmed that had had continuously maintained his residence in Florida without interruption since January 2004. (Morris Dep. at 14-15 (Exh. 4 attached hereto)). In other words, at least according to his Complaint and deposition testimony, Plaintiff never moved his residence from Florida to the District of Columbia.

Finally, contrary to the information set forth in his affidavit, Plaintiff was not lured to the District of Columbia by Buvermo's offer of employment. Indeed, according to his deposition testimony, Plaintiff has continuously owned and maintained an apartment in the District for nearly thirty years -- even after he established residency in Florida in 2004. (Morris Dep. at 15-17 (Ex. 4 attached hereto). With respect to the allegations set forth in Plaintiff's affidavit concerning the purchase of a penthouse apartment at the Ritz Carlton in the District of Columbia in reliance upon Buvermo's purported offer of ten years of employment, these allegations are simply not consistent with the evidence revealed during discovery. In this regard, at the time he accepted the position with Buvermo, Plaintiff already owned a unit at the Ritz Carlton in the

4

District.  See Exhibit 6 attached hereto ("Jonathan H. Morris Real Estate Holdings").  While Plaintiff subsequently elected to upgrade his living arrangements by selling this unit and purchasing a penthouse unit in December 2005 (six months after he commenced employment), he admitted during his deposition that he was not required to acquire the penthouse in connection with his position with Buvermo and that the decision to make this purchase was his alone. (Morris Dep. at 18-19 (Exhibit 4 attached hereto).[3]

Not surprisingly, even though Defendants have agreed to travel to Plaintiff's home state of Florida for the deposition, Plaintiff will not consent to a deposition that would include questions that might raise serious issues concerning the veracity of the statements set forth in his affidavit.  For the reasons set forth below, Defendants respectfully submit that, in addition deposing Plaintiff on the issue of mitigation, they should be allowed to depose Plaintiff with respect to the statements set forth in his affidavit that support his theory of equitable estoppel.

**ARGUMENT**

As noted by the Court in its Memorandum Order granting Plaintiff's Motion for Leave to Continue Deposition of Defendants' Designee entered on December 27, 2007, if a deponent has already submitted to a deposition in the case, a party must obtain leave of court before conducting a second deposition.  Fed. R. Civ. P. 30(a)(2)(B).  Under Rule 30, the court must grant leave "to the extent consistent with the principles stated in Rule 26(b)(2)."  As set forth in this Court's Memorandum Order, the factors to be considered in this inquiry are whether:

(i)   the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

---

[3]  In his Affidavit, Plaintiff contends he was forced to sell his penthouse at a loss because of his termination.  (Morris Aff'd. ¶ 15).  This sale had not been consummated at the time Plaintiff was deposed in October 2006 and Defendants have no way of confirming if the penthouse was actually sold or the terms of the sale.

5

>   (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
>   (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2). As further noted by this Court, "the burden of the proposed discovery is negligible if the scope of inquiry in the second deposition is limited to topics that could not have been addressed in the first deposition." Memorandum Order at 4, citing Alexander v. F.B.I., 186 F.R.D. 128, 1345 (D.D.C. 1998); Watch, Inc. v. Dep't of Commerce, 34 F. Supp.2d 47, 54 (D.D.C. 1998).

Measured under these standards, granting Defendants' Motion to re-depose the Plaintiff is entirely consistent with the principles set forth in Rule 26. First, the discovery sought is not "unreasonably cumulative or duplicative" or burdensome. As set forth above, Plaintiff first raised these contentions in an affidavit that was submitted after the close of discovery. As such, Plaintiff has not yet been examined with respect to the assertions set forth in his affidavit. Given the fact that the proposed deposition will be limited to the issues of mitigation and the assertions set forth in Plaintiff's affidavit, any burden is truly negligible, particularly since Defendants are willing to travel to Plaintiff's home state of Florida to conduct the deposition.[4]

Similarly, Defendants did not have an ample opportunity to obtain the information they now seek. With respect to the issue of mitigation, Defendants have not had an opportunity to discover Plaintiff's efforts to mitigate his damages since the expiration of the discovery period in December 2006. Likewise, the allegations set forth in Plaintiff's Complaint, his deposition

---

[4] As the party bringing this suit, Plaintiff should be required to submit to a second deposition in the District of Columbia; however, if necessary, Defendants are willing to accommodate Plaintiff and conduct the deposition in Florida.

testimony and other evidence uncovered during discovery, contradict the statements set forth in Plaintiff's affidavit. Accordingly, it would be unreasonable to expect that Defendants could have predicted during discovery that Plaintiff would later offer contradictory information in his affidavit. Given the fact that the affidavit was submitted after the close of discovery, Defendants have had no opportunity to examine Plaintiff with respect to the matters set forth within his affidavit.

With respect to the third and final factor, the burden of the proposed discovery does not outweigh the likely benefits of allowing it. Plaintiff is suing Defendants for millions of dollars. The discovery sought goes directly to the viability of Defendants' claim that the statute of frauds bars Plaintiff's claim to a ten year oral employment contract and to Plaintiff's damages. The proposed discovery is very limited in scope and concerns issues that go to the heart of this case and could not have been addressed during the discovery period. As such, Defendants respectfully submit that allowing Defendants to re-depose Plaintiff on these two issues is appropriate.

WHEREFORE, for the reasons set forth above, Defendants respectfully request that the Court GRANT their Motion for Leave to Continue the Deposition of Plaintiff.

Respectfully submitted,

SMITH, LEASE & GOLDSTEIN, LLC

By:   /s/ Marc J. Smith
       Marc J. Smith
       D.C. Bar No. 460255
       11 North Washington Street
       Suite 520
       Rockville, Maryland 20850
       Phone: (301) 838-8950

Counsel for Defendants