IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN H. MORRIS, | : |
| Plaintiff, | : |
| v. | : Case No.: 1:06CV01131 (HHK) |
| | : Next Event: Status Conference |
| BUVERMO PROPERTIES, INC., et al., | : April 20, 2007 at 10:30 a.m. |
| Defendants. | : |

## AFFIDAVIT OF JONATHAN H. MORRIS

I, Jonathan H. Morris, being duly sworn, depose and say:

1. I am over the age of eighteen, have personal knowledge of the facts stated herein, and could and would testify to them if called as a witness at a trial.

2. I am a professional with over 25 years of real estate investment experience principally in the Washington, D.C. Metropolitan Area.

3. In June 2005, I was hired as Buvermo's president and chief executive officer.

4. In discharging my duties as Buvermo's president and chief executive officer, I held countless meetings and conducted countless negotiations in the District of Columbia.

5. Throughout my tenure as Buvermo's president, all of defendants' board meetings that I arranged and attended were conducted in the District of Columbia.

6. Virtually all, if not all, of the negotiations between John Gardner, Joost Tjaden, Andre van Rhee and me regarding the terms of my employment were conducted in the District of Columbia.

7. Throughout my employment with Buvermo, I lived in the District of Columbia.



8. When I was first contacted regarding the possibility of employment with Buvermo, I was residing in Florida and was independently pursuing investments of my own.

9. Among other things, I had identified several residential properties in Palm Beach, Florida, that I intended to purchase, renovate and resell.

10. Upon accepting employment with Buvermo, and based on representations of a ten-year term of employment, I discontinued my pursuit of what would have been very profitable investment opportunities.

11. Relying on defendants' agreement to employ me for a minimum of ten years, I purchased a penthouse apartment to entertain defendants' clients, which Gardner, Tjaden and van Rhee made clear would be one of my responsibilities.

12. I informed Tjaden of my decision to purchase the penthouse for client entertainment purposes, and Tjaden was very supportive of the decision and agreed that it would be perfect for entertaining defendants' clients.

13. I purchased the penthouse for $1.9 million (excluding closing costs), and invested an additional $300,000 to renovate the property.

14. The penthouse was far too large for my own personal use and, with annual carrying costs of approximately $95,000, was far too expensive to maintain without my Buvermo salary.

15. As a result of my sudden termination, I was forced to sell the penthouse in a soft market and will lose in excess of $100,000 on the investment, not including the carrying costs expended to date.

16. I would not have purchased the penthouse had I not been guaranteed employment with Buvermo for a term of at least ten years.

17. In addition, upon accepting employment with Buvermo, I moved back to the District of Columbia from Florida and, in the process, sold my townhouse in Florida at a price that was far less than what it would have been worth had I held on to the property.

18. But for Buvermo's agreement to employ me for a minimum of ten years, I would not have sold my Florida townhouse and would not have incurred the cost or endured the hassle of relocating.

19. At no time prior to executing my Offer Letter, or prior to my termination for that matter, did Gardner, Tjaden or van Rhee advise me that my right to receive a promoted interest on deals initiated during my tenure would be contingent on my still being employed by Buvermo when Fidelio ultimately closed on the deal and/or designated the deal as an "FPEP Property."

20. At no time prior to executing my Offer Letter, or prior to my termination for that matter, did Gardner, Tjaden or van Rhee advise me that my right to receive any promoted interest could be redeemed upon the termination of my employment with Buvermo.

21. At no time prior to executing my Offer Letter, or prior to my termination for that matter, did Gardner, Tjaden or van Rhee advise me that my right to receive a promoted interest would be contingent upon identifying me as a member in the FPEP Agreement.

22. At no time prior to executing my Offer Letter, or prior to my termination for that matter, did Gardner, Tjaden or van Rhee advise me that the purpose of a promoted interest was to compensate me for successfully managing Fidelio's interest in a project.

23. Rather, it was my understanding, as reflected in my Offer Letter, that the promoted interest was intended to compensate me for identifying the investment; i.e., "initiating" the investment. Indeed, I was informed that defendants had turned over the responsibility for managing the investment to third-party operating partners.

24. In the course of negotiating my employment terms, neither Gardner, van Rhee nor Tjaden advised me that if I were terminated for any reason, I would not be entitled to receive my promoted interests in the Sheraton Reston parcels, and remaining land parcels at Twinbrook.

25. To date, no "written notice" has been provided to me to redeem any of my promoted interests pursuant to the provisions of Section 8.9 of the FPEP Agreement.

I SOLEMNLY DECLARE AND AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE INFORMATION CONTAINED IN THE FOREGOING ANSWERS TO INTERROGATORIES IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND INFORMATION.

_____
Jonathan H. Morris

District of Columbia, ss:

Subscribed and sworn to before me this 7th day of February, 2007.

_____
Notary Public

CARA L. ACOSTA
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires October 31, 2010

4