## AGREEMENT FOR SALE AND PURCHASE

THIS AGREEMENT made July ___, 2005, by and between Margaret A. Milton (hereinafter referred to as "Seller"), and Jonathan H. Morris, (hereinafter referred to as "Buyer"). Whenever used herein, the terms Seller and Buyer shall include all the parties to this Agreement.

### WITNESSETH

WHEREAS, Buyer desires to purchase from Seller and Seller desires to sell to Buyer, all on the terms and conditions hereinafter provided, that certain membership stock certificate number 124 of Park Place, Inc. (hereinafter referred to as the "Corporation"), together with the perpetual proprietary lease covering a certain apartment known as Apartment 2F (a copy of which is attached hereto), in the building known as Park Place, located at 369 South Lake Drive, Palm Beach, Florida together with all major appliances, any wall-to-wall carpet, light fixtures (other than dining room chandelier), ceiling fans and window treatments located therein.

NOW THEREFORE, in consideration of the premises and the mutual covenants herein contained, it is agreed as follows:

1. <u>Sale and Purchase</u>. Seller hereby agrees to sell, transfer and deliver and the Buyer agrees to purchase and take title from Seller (all subject, however, to the further terms and conditions of this Agreement) the following:

    a. Membership stock certificate number 124 of the Corporation, which certificate carries with it the privilege of receiving the proprietary lease hereinafter described.

    b. The proprietary lease between the Corporation, as Lessor, and Seller, as Lessee, covering Apartment 2F, together with any necessary executed assignments and consents, and the Parking Space Rental Agreement to lease covered parking space 2F.

    c. Seller's right, subject to the provisions of the proprietary lease, in and to the fixtures and equipment now contained in the aforementioned apartment.

    d. Buyer agrees to purchase Apartment 2F, together with all major appliances, any wall-to-wall carpet, light fixtures (other than dining room chandelier), ceiling fans and window treatments located therein, in its "AS IS" condition.

WPB 835506.2

D-00531

        i.     Seller warrants that there are no facts known to Seller materially affecting the value of the Property which are not readily observable by Buyer or which have not been disclosed to Buyer.

        i.     Seller shall maintain the property in the condition existing as of the Effective Date, ordinary wear and tear and fire, taking, or other unavoidable casualty excepted. Buyer shall be permitted access to the Property prior to the closing for a walk-through to ensure that the property has been maintained in the condition existing as the Effective Date. If the property is damaged by fire, taking, or other casualty before closing and cost of restoration does not exceed 3% of the assessed valuation of the property so damaged, cost of restoration shall be an obligation of Seller and closing shall proceed pursuant to the terms of this Agreement with restoration costs escrowed at closing. If the cost of restoration exceeds 3% of the assessed valuation of the property so damaged, Buyer shall have the option of either taking the property as is, together with either the 3% or any insurance proceeds payable by virtue of such loss or damage, or of canceling this contract and receiving the return of the deposit.

2.     Purchase Price. The purchase price of One Million Fifty Thousand Dollars ($1,050,000) to be paid by check in the amount of $25,000 upon signing this Agreement, by check in the amount of $75,000 within twenty-four (24) hours of the expiration of the Inspection Period (the total deposit of $100,000 to be held in escrow by Linda A. Gary Real Estate, Inc.) and the balance by Buyer by cashier's check, federal funds wire transfer or other immediately available funds at closing (or such greater or lesser amount as may be necessary to complete payment of the purchase price after credits, adjustments and prorations).

3.     Closing Date: The date of this Agreement, for purposes of performance, shall be regarded as the date when the last one of the Seller and Buyer has signed this Agreement (the "Effective Date"). Time is of the essence in this Agreement.

This transaction shall be closed at the offices of Seller's attorney on or before September 1, 2005 unless extended by other provisions of this Agreement.

4.     Title Evidence. At least twenty (20) days prior to the closing, Seller shall, at its expense, furnish Buyer an owner's leasehold title commitment ("Title Commitment") issued by a title insurer licensed in the State of Florida, agreeing to issue to the Buyer upon recording of the

D-00532

assignment of the Proprietary Lease and Certificate from Seller to the Buyer, a leasehold title insurance policy in the amount of the Purchase Price, insuring the leasehold interest of Buyer to the apartment in the amount of the Purchase Price.

Seller shall convey marketable title subject only to liens, encumbrances, exceptions or qualifications provided in this Agreement. Marketable title shall be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law. Buyer shall promptly upon receipt examine evidence of title. If title is found defective, Buyer shall promptly notify Seller in writing specifying the defect(s). If defects render title unmarketable, Seller will have thirty (30) days from receipt of notice to remove the defects, failing which Buyer shall, within five (5) days after expiration of the 30-day period, deliver written notice to Seller requesting a refund of the deposit paid, which shall immediately be returned to Buyer. If Buyer fails to notify Seller, Buyer shall be deemed to have accepted the title as it then is. Seller shall, if title is found unmarketable, use diligent effort to correct defect(s) within the time provided therefor. Seller has no obligation to bring suit to cure title defects. If Seller is unable to timely correct the defects, Buyer shall either waive the defects or receive a refund of the deposit, thereby releasing Buyer and Seller from all further obligations under this Agreement.

5.  **Closing Costs and Prorations.** Documentary stamps on the transfer of the property, leasehold title insurance, and recording of corrective instruments shall be paid by Seller. Buyer shall pay for the recording of the stock certificate. Taxes, assessments, rent, interest, insurance and other expenses of the property shall be prorated through the date of closing. Cash at closing shall be increased or decreased as may be required by prorations to be made through the date of closing. Taxes shall be prorated based on the current year's tax with due allowance made for maximum allowable discount, homestead and other exemptions. If closing occurs at a date when the current year's mileage is not fixed and current year's assessment is available, taxes will be prorated based upon such assessment and prior year's mileage. If current year's assessment is not available, then taxes will be prorated on prior year's

D-00533

tax. If there are completed improvement son the real property by January 1st of year of closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated based upon prior year's mileage and at an equitable assessment to be agreed upon between the parties; failing which, request shall be made to the County Property Appraiser for an informal assessment taking into account available exemptions. A tax proration based on an estimate shall, at request of either party, be readjusted upon receipt of tax bill on condition that a statement to that effect is signed at closing.

6. <u>Special Assessment Liens</u>. Payments due prior to the Effective Date under special assessments imposed or ratified by the board of directors of the Corporation as of the date of closing are to be paid by Seller. Proposed liens and payments for special assessments contemplated but not ratified or confirmed as of the Effective Date and payable after the Closing Date shall be assumed and paid by Buyer. If the improvement has been substantially completed as of Effective Date, any pending lien shall be considered certified, confirmed or ratified and Seller shall, at closing, be charged an amount equal to the last estimate or assessment for the improvement

[margin annotations: Deleted: closing; Deleted: Closing; Deleted: Closing]

7. <u>Documents to be Delivered</u>. At or before closing, Seller shall surrender to the Corporation, through its secretary, the following:

[margin annotation: Formatted: Indent: Left: 0.5", No bullets or numbering]

   a. Membership stock certificate number 124 for the cancellation of same, which certificate shall be accompanied by an executed assignment of membership stock certificate prepared in form approved by the Corporation.

   b. The original proprietary lease of Seller, as referred to above, together with such assignment of proprietary lease in form approved by the Corporation, or in the alternative, a certificate by an officer of the Corporation that a consent to such an assignment is on file with the Corporation. Said assignment of lease shall convey all Seller's right, title and interest, as Lessee, in the proprietary lease, which assignment shall include a covenant to the effect that

good and valid title is being transferred to the proprietary lease and to the membership certificate as above described.

      c.    The original Parking Space Rental Agreement of covered parking space 2F (a copy of which is attached hereto), together with such assignment of Parking Space Rental Agreement in form approved by the Corporation, or in the alternative, a certificate by an officer of the Corporation that a consent to such an assignment is on file with the Corporation.

At or before closing, Seller shall deliver to Buyer the following:

      i.    A consent of the Corporation to the transfer of such membership certificate and the proprietary lease to Buyer shall be obtained by Seller and caused to be delivered to Buyer. Buyer shall make prompt application for the consent and shall pursue the application with diligence.

      ii.    An affidavit by Seller that all bills and obligations for contractors, architects, materialmen or laborers, for any work performed or materials furnished to the apartment arising during the tenancy of Seller, have been paid.

      iii.    An affidavit by Seller that there are no pending special assessments by the Corporation and that all maintenance assessments through the date of closing have been paid.

      8.    <u>Default</u>. If Buyer fails to perform this Agreement within the time specified, other than the failure of the Corporation to approve the transaction contemplated by this Agreement, including payment of all deposits, the deposit(s) paid by Buyer and deposit(s) agreed to be paid, may be recovered and retained by and for the account of Seller as agreed upon liquidated damages, consideration for the execution of this Agreement and in full settlement of any claims, whereupon, Buyer and Seller shall be relieved of all obligations under this Contract. If for any reason other than failure of Seller to make Seller's title marketable after diligent effort, Seller fails, neglects or refuses to perform this Contract, Buyer may seek specific performance or elect to receive the return of Buyer's deposit(s) without thereby waiving any action for damages resulting from Seller's breach.

      9.    <u>Real Estate Brokers</u>. Seller agrees to pay to Sotheby's International Realty at the time of closing, from the disbursements of the proceeds of the sale contemplated by this Agreement, total compensation in the amount of on three percent (3%) of the purchase price. In

*Formatted: Indent: First line: 0.5", No bullets or numbering*

*Formatted: No bullets or numbering*

addition, Seller agrees to pay to Linda A. Gary Real Estate, Inc. at the time of closing, from the disbursements of the proceeds of the sale contemplated by this Agreement, total compensation in the amount of on three percent (3%) of the purchase price. The parties hereto represent that there are no other real estate agents or brokers, except as referenced above, who have provided any services or who would have any right to claim a real estate commission related to the transaction.

10. Governing Law. This agreement shall be governed by the laws of the State of Florida.

11. Binding Effect. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives and assigns.

12. Entire Agreement. This Agreement contains the entire agreement of the parties hereto and cannot be changed orally. No agreements or representations, unless incorporated in this Agreement, shall be binding upon any of the parties.

13. Attorney Fees. In connection with any litigation, including appellate proceedings, arising out of this Agreement, the prevailing party shall be entitled to recover reasonable attorney fees, court costs and all expenses, even if not taxable as court costs, in addition to any other relief to which such party or parties may be entitled.

14. Radon. Radon is a naturally occurring radioactive gas that when accumulated in a building in sufficient quantities may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon or radon testing may be obtained from your County Public Health unit.

15. Inspection Period and Right to Cancel. Intentionally Deleted.

> Deleted: (a) Buyer shall have until 5:00 p.m. (EDT) on July

16. Residential Lead-Based Paint Disclosure. The Purchaser acknowledges receipt of a copy of the Lead-Based Paint Disclosure, which is attached hereto as Exhibit "A", and incorporated herein by reference.

17. Property Taxes.    Buyer should not rely on the Seller's current property taxes as the amount of property taxes that the buyer may be obligated to pay in the year subsequent to purchase. A change of ownership or property improvements triggers reassessments of the property that could result in higher property taxes. If you have any questions concerning valuation, contact the County Property Appraiser's Office for information.

18. Approval by Corporation. This Agreement and the Closing is contingent upon the approval of the Buyer for residency by the Corporation. If the Purchaser is unable to obtain approval of the Corporation on or before the Closing Date, the Buyer, at his sole discretion, may terminate this Agreement or extend the closing until approval is secured. In the event that Buyer terminates this contract, Linda A. Gary Real Estate, Inc. shall return to the Buyer the deposits referenced under subparagraph Paragraph 2. Buyer agrees to use good faith and diligent efforts in obtaining the approval of the Corporation. Seller agrees to extend this Contract until Cooperative Approval of the Buyer is secured.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals.

"SELLER"

Date: _____    _____
                                  Margaret A. Milton

"BUYER"

Date: _____    _____
                                  Jonathan H. Morris

**Deleted:** , 2005 ("Inspection Period") within which to have such inspections of the apartment performed as Buyer shall desire and utilities service shall be made available by the Seller during the Inspection Period; (b) Buyer shall be responsible for prompt payment for such inspections

**Deleted:** repair of damage to and restoration of

**Deleted:** apartment resulting from such inspections; and (c) if Buyer determines, in Buyer's sole discretion, that the condition of the apartment is not acceptable to Buyer, Buyer may cancel this Contract by delivering written notice of such election to Seller prior to the expiration of the Inspection Period. If Buyer timely cancels this Contract, the deposit(s) paid shall be immediately returned to Buyer; thereupon, Buyer and Seller shall be released of all further obligations under this Contract, except as provided in this paragraph. The above provision (b) shall survive termination of this Contract.¶
14. Residential Lead-Based Paint Disclosure. The Purchaser acknowledges receipt of a copy of the Lead-Based Paint Disclosure, which is attached hereto as Exhibit "A", and incorporated herein by reference.¶
15. Property Taxes. Buyer should not rely on the Seller's current property taxes as the amount of property taxes that the buyer may be obligated to pay in the year subsequent to purchase. A change of ownership or property improvements triggers reassessments of the property that could result in higher property taxes. If you have any questions concerning valuation, contact the County Property Appraiser's Office for information.¶
16. Approval by Corporation. This Agreement

**Deleted:** Purchasers are

D-00537

EXHIBIT "A"

LEAD-BASED PAINT DISCLOSURE

<u>Lead -Based Paint Warning Statement</u>

" Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real properties is required to provide the buyer with any information on lead-based paint hazards from risk assessment or inspection in the seller's possession and notify the buyer of any known lead based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase."

**Seller's Disclosure (INITIAL)**

_____ (a) Presence of lead-based paint or lead-based paint hazards (CHECK ONE BELOW):

☐ Known lead-based paint or lead-based paint hazards <u>are present</u> in the housing.
☐ Seller has <u>no knowledge</u> of lead-based paint or lead-based paint hazards in the housing.

_____ (b) Records and reports available to the Seller (CHECK ONE BELOW):

☐ Seller has provided the Buyer with all available records and reports pertaining to lead-based paint or lead-based paint hazards in the housing. List documents:


☐ Seller has no reports or records pertaining to lead-based paint or lead-based paint hazards in the housing.

**Buyer's Acknowledgment (INITIAL)**

_____ (c) Buyer has received copies of all information listed above.

_____ (d) Buyer has received the pamphlet *Protect Your Family form Lead in Your Home*.


_____ (e) Buyer has (CHECK ONE BELOW):

D-00538

☐ Received a 10-day opportunity (or other mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint or lead-based hazards; or

☐ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint or lead-based paint hazards.

**Licensee's Acknowledgment (INITIAL)**

_____(f) Licensee has informed the Seller of the Seller's obligations under 42 U.S.C. 4852(d) and is aware of Licensee's responsibility to ensure compliance.

### Certification of Accuracy

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

**"SELLER"**

Date: _____   _____
                                         Margaret A. Milton

**"BUYER"**

Date: _____   _____
                                         Jonathan H. Morris

D-00539