COPY

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - -x
:
JONATHAN H. MORRIS,                  :
:
Plaintiff,               :
:
vs.                              : Case No.
: 1:06CV01131 (HHK)
BUVERMO PROPERTIES, INC., et al.,    :
:
Defendants.              :
:
- - - - - - - - - - - - - - - - - - -x

Washington, D.C.

Thursday, October 26, 2006

Deposition of JOHN GARDNER, witness, called for examination by counsel for the plaintiff, pursuant to notice, at the offices of Ziad P. Haddad, Esq., Tobin, O'Connor, Ewing & Richard, 5335 Wisconsin Avenue, Northwest, Suite 700, Washington, D.C., before Malynda D. Whiteley, a Registered Professional Reporter and a notary public in and for the District of Columbia, beginning at 9:40 a.m., when were present on behalf of the respective parties:

MDW Court Reporting, Inc.  (703) 591-2341

EXHIBIT
2

Case 1:06-cv-01131-HHK    Document 69-3    Filed 04/04/2008    Page 2 of 4

Morris vs. Buvermo                                    Deposition of J. Gardner 10/26/06

**Page 2**

```
 1              APPEARANCES
 2
 3  ON BEHALF OF THE PLAINTIFF:
 4      ZIAD P. HADDAD, ESQ.
 5      STEPHEN J. O'CONNOR, ESQ.
 6      Tobin, O'Connor, Ewing & Richard
 7      5335 Wisconsin Avenue, Northwest
 8      Suite 700
 9      Washington, D.C. 20015
10      (202) 362-5900
11
12  ON BEHALF OF THE DEFENDANTS:
13      MARC J. SMITH, ESQ.
14      Smith, Lease & Goldstein
15      11 North Washington Street
16      Suite 520
17      Rockville, Maryland 20850
18      (301) 838-8950
19
20  ALSO PRESENT:
21      Jonathan Morris
22
```

**Page 3**

```
 1              INDEX
 2
 3          EXAMINATION BY COUNSEL FOR:
 4          PLAINTIFF,
    WITNESS        MR. HADDAD
 5
    John Gardner        5
 6
 7
 8              EXHIBITS
 9  PLAINTIFF'S                    FOR IDENT.
10  No. 1   Deposition notice           12
11  No. 2   Buvermo consent to action of
            shareholders                42
12
    No. 3   Buvermo consent to action of
13          shareholders                42
14  No. 4   Fidelio Properties first amendment
            to fourth amended and restated
15          partnership agreement       57
16  No. 5   FMPI consent to action of
            shareholders                65
17
    No. 6   FPMI bylaws                 71
18
    No. 7   FPEP consent to conversion  72
19
    No. 8   VBM-USA manager withdrawal consent  79
20
    No. 9   Position specification      148
21
    No. 10  Memorandum dated 9/19/05    164
22
    No. 11  E-mail dated 4/15/05        203
```

**Page 4**

```
 1              EXHIBITS (Continued)
 2  PLAINTIFF'S                    FOR IDENT.
 3  No. 12  FPEP promote structure revision
            document                    212
 4
    No. 13  Letter dated 5/24/04        220
 5
    No. 14  Morris offer letter         225
 6
    No. 15  Spotswood Valley Center document  294
 7
    No. 16  Designation of FPEP property  320
 8
    No. 17  Letter dated 1/31/06        351
 9
    No. 18  SJM payment records         352
10
    No. 19  Letter dated 7/6/06         354
11
    No. 20  Spotswood Valley financial documents  356
12
    No. 21  Letter dated 6/9/06         369
13
    No. 22  Letter dated 2/3/06         371
14
    No. 23  11720 Sunset Valley Drive document  373
15
    No. 24  Roland Clarke document      373
16
    No. 25  Twinbrook document          378
17
    No. 26  Wire transfer document      378
18
    No. 27  Estimated value document    384
19
20
21
22
```

**Page 5**

```
 1              PROCEEDINGS
 2  Whereupon,
 3          JOHN GARDNER,
 4  defendant, was called for examination by counsel for the
 5  plaintiff, and after having been duly sworn, was examined
 6  and testified as follows:
 7      EXAMINATION BY COUNSEL FOR THE PLAINTIFF
 8      BY MR. HADDAD:
 9      Q  Good morning, Mr. Gardner. My name is
10  Ziad Haddad. As you know, I am the attorney for
11  Jonathan Morris in this case.
12         Have you ever had your deposition taken before?
13      A  Yes.
14      Q  And when was that?
15      A  Oh, a number of years ago. Probably 20 years ago
16  was the last one that I recall.
17      Q  So you had your deposition taken more than once?
18      A  Yeah, a couple of times, but in the distant past.
19      Q  And were you a party to those cases in which your
20  deposition was taken?
21      A  In one case I believe I was a personal party as
22  well as a company representative. In the other I was the
```

Case 1:06-cv-01131-HHK   Document 69-3   Filed 04/04/2008   Page 3 of 4

Morris vs. Buvermo                                       Deposition of J. Gardner 10/26/06

**74**

1  A  Yes.
2  Q  Are you aware of any documents that are
3  maintained that reflect what these partnership interests
4  are or the amount of these partnership interests?
5  A  Yes.
6  Q  You do have those --
7  A  When --
8  Q  -- documents?
9  A  -- you say "partnership interests" --
10 Q  Let me rephrase.
11    Well, go ahead. What were you going to say?
12 A  Please rephrase your question.
13 Q  I'm just wondering: Do you have anything, other
14 than this particular consent to conversion, which would
15 reflect that these individuals are, in fact, the limited
16 partners -- or were, in fact, the limited partners of FPEP,
17 LP?
18 A  I don't know.
19 Q  Where would such things be maintained?
20 A  I presume, in our office.
21 Q  Do you recall whether the limited partners were
22 issued any sort of certificates reflecting a limited

**75**

1  partnership -- well, reflecting the fact that they are, in
2  fact, a limited partner of this partnership -- or were?
3  A  I don't recall.
4  Q  Now, turning to the limited liability -- well,
5  the operating agreement that's attached as Exhibit A in
6  this document, that first page also identifies -- bear with
7  me here for a second.
8  A  By the way, if I could -- you know, I have no
9  reason to believe -- I believe that this is a fully
10 operational document, and we act as if it is. I just don't
11 recall where that is -- where that information is, if
12 that's -- is that what you're asking me?
13 Q  I'm asking if there's anything out there, other
14 than this document right here, that confirms that these
15 entities and individuals identified in the consent to
16 conversion are, in fact, the general partner and limited
17 partners --
18 A  Yeah.
19 Q  -- of -- or were, in fact, the general partners
20 and limited partners --
21 A  Yeah.
22 Q  -- of FPEP, LLP.

**76**

1  A  Right.
2  Q  LP. Sorry.
3  A  I can't tell you -- I don't know that. I don't
4  know that document.
5  Q  You don't know whether you have those documents?
6  A  I assume we do, but I don't know.
7  Q  If you do, they would be in your office?
8  A  I would assume so.
9  Q  Who drafted these documents on FPEP's behalf?
10 A  These were probably drafted by Dick Crystal, who
11 was a previous corporate attorney of ours.
12 Q  Did he work for a law firm --
13 A  Yeah.
14 Q  -- or was he a solo practitioner?
15 A  Yeah, he works for a law firm. And I don't --
16 his law firm has merged and changed probably twenty times
17 since he did this work so --. I think it was called
18 Whitman & Ransom (phonetic) at the time, but --.
19 Q  Is he still practicing; do you know?
20 A  Yes. Either he -- yeah, he would have been the
21 one who would have done it then.
22 Q  Richard Crystal is probably his formal name?

**77**

1  A  Yeah.
2     And he's, you know, a careful attorney; so I'm
3  assuming this was done properly. He's out of New York.
4  Q  Turning to the LLC agreement of the operating
5  agreement of FPEP, LLC, the first page identifies --
6  identifies you; Mr. Bonacci; VBM-USA; and FP Investments,
7  Inc., as its members. Do you see that?
8  A  Yes.
9  Q  And are you aware of any documents, other than
10 the operating agreement, which confirms their participation
11 as members in this LLC?
12 A  I don't know. I'm not sure -- you know, I just
13 don't know.
14 Q  And the LLC agreement that we're looking at right
15 now, this operating agreement, has it ever been amended?
16 A  Not to my knowledge.
17 Q  You would know if it was, though; right?
18 A  I would think so.
19 Q  In fact, if it were to be amended, you would
20 probably be in charge of taking care of that; correct?
21 A  I think so.
22 Q  You think so?

Case 1:06-cv-01131-HHK    Document 69-3    Filed 04/04/2008    Page 4 of 4

Morris vs. Buvermo                                    Deposition of J. Gardner 10/26/06

78

1  A  Well, you know, someone else could be; but I
2  would be the logical person.
3  Q  Well, who else could be in charge of it?
4  A  An attorney could be.
5  Q  But the decision would come from you; correct?
6  A  I would think so, yeah.
7  Q  Okay. Now, you testified earlier that VBM, the
8  company that's either owned or headed by Mr. Zachariasse,
9  has, since the drafting of this FPEP, LLC, agreement,
10 withdrawn as a member; correct?
11 A  Yes.
12 Q  And I recognize that this LLC agreement is
13 attached as an exhibit to the consent to conversion.
14    Is there any executed copy of this -- fully
15 executed copy of this LLC agreement in existence?
16 A  Not that I'm aware of. I don't know.
17 Q  Okay. But you searched your files --
18 A  Yes.
19 Q  -- and you don't recall --
20 A  I don't recall finding one, no.
21 Q  Again, just to remind you, even if you know what
22 I'm going to ask --

79

1  A  Right.
2  Q  -- I'd ask you to wait --
3  A  Right.
4  Q  -- to make it easy on the court reporter.
5     (The VBM-USA manager withdrawal consent was
6     marked Plaintiff's Exhibit No. 8 for
7     identification.)
8     BY MR. HADDAD:
9  Q  Mr. Gardner, you've been handed what's been
10 marked as Exhibit 8 to your deposition. It's a two-page
11 document. The first page is entitled, "Written Consent of
12 the Manager to the Withdrawal of VBM-USA, Inc., as a
13 Member." It's signed by you on behalf of FP Investments,
14 Inc., the manager. Do you see that?
15 A  Yes.
16 Q  And it's dated December 15th, 2004. And attached
17 to it as an exhibit is a letter from VBM-USA requesting
18 that -- indicating that it desires to withdraw as a member
19 of FPEP; correct?
20 A  Yes.
21 Q  And this obviously occurred after the execution
22 of this consent to conversion in May of 2000; correct?

80

1  A  Yes.
2  Q  And after the preparation of this FPEP, LLC,
3  agreement?
4  A  Yes.
5  Q  Okay. And yet you did not see to it that the
6  FPEP, LLC, agreement be amended, correct --
7  A  Yes.
8  Q  -- to reflect that VBM is no longer a member?
9  A  Right.
10 Q  And when VBM ceased being a member, was it paid
11 any amount for its membership interest?
12 A  What happened is its interests in the properties
13 were transferred from FPEP to another entity, and it
14 continued its ownership through that other entity.
15 Q  We talked earlier about being a member in FPEP
16 and having a membership interest in FPEP. And I think
17 there was some confusion because, if I'm not mistaken, what
18 I heard from you is that you don't specifically have a
19 membership interest in FPEP, your interest is really in the
20 properties that are acquired by Fidelio.
21 A  We have a membership interest in FPEP, but the
22 value of the interest runs through the specified interests

81

1  that FPEP has in each one of those properties.
2  Q  Okay. So you do have a membership interest in
3  FPEP, but its value is based on whatever investments --
4  A  That's correct.
5  Q  -- Fidelio has made --
6  A  And the arrangements that Fidelio has made with
7  regard to FPEP for its --
8  Q  Such as whether it's designated the property as
9  an FPEP property --
10 A  Whether you own -- the certain percentage you
11 own, what kind of hurdle rate, all of these things.
12 Q  Let's turn to page 6 of the operating agreement.
13 A  The --.
14 Q  It would be Exhibit No. 7, page 6 of the actual
15 operating agreement itself.
16 A  Okay.
17 Q  And it identifies three members there --
18 A  Right.
19 Q  -- with membership percentages. Do you see that?
20 A  Yeah.
21 Q  And my math tells me that those membership
22 percentages total 100 percent --