**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JONATHAN H. MORRIS | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Case No. |
| | : | 1:06-CV-01131 (HHK) |
| BUVERMO PROPERTIES, INC., et. al., | : | Next Event: Pretrial Conference |
| | : | July 15, 2008 at 9:45 a.m. |
| Defendants. | : | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE**

Defendants Buvermo Properties, Inc., Fidelio Properties, Fidelio Properties II, LLC, F.P. Executive Partners, L.L.C., Janivo Realty, Inc., Donelux, Inc., Orvan, Inc., and Fidelio Properties Management, Inc., hereby file their Opposition to Plaintiff's Motion in Limine.

**PRELIMINARY STATEMENT**

The Plaintiff in this case, a former employee of Defendant Buvermo Properties, Inc., alleges that he had an oral employment agreement with Buvermo for a ten year term. In his Second Amended Complaint, Plaintiff contends that his termination after less than nine months of employment constitutes a breach of his alleged oral employment agreement. In addition to claiming entitlement to monetary damages arising from this alleged breach, Plaintiff seeks a declaratory judgment concerning his alleged right to a "promoted interest" in all real estate investments made by Defendants from the time he was hired through the expiration of his purported ten year oral contract in June 2015.[1] These investments include the only projects that

---

[1] As described below, a "promoted interest" is a contingent right provided to certain of Buvermo's employees to receive cash distributions from revenues generated by Defendants' real estate investments.

were initiated during Plaintiff's short tenure with Buvermo -- Spotswood Valley Shopping Center ("Spotswood") and Reston International Center ("RIC").[2]

Defendants contend that Plaintiff is not entitled to a promoted interest in <u>any</u> of Defendants' real estate investments. Neither property at issue had been acquired nor designated by Fidelio as an "FPEP Property" at the time of Plaintiff's termination. According to the agreements that govern Plaintiff's entitlement to a promoted interest in Fidelio's investments, both of these conditions must be met in order to receive any such interest.[3]

As set forth below, even if it is determined at trial that Plaintiff is entitled to a promoted interest in some or all of the real estate investments at issue, the operative agreements provide that any such interest is subject to redemption using a formula based upon the market value of each of the properties at issue. The expert testimony Defendants intend to introduce at trial concerns the market value of Spotswood and RIC, and therefore relates directly to value of Plaintiff's alleged interests. Understandably, Plaintiff desires to suppress this evidence as it will demonstrate that any interest held by Plaintiff had no value in the context of redemption. However, there is no legal basis to preclude Defendants from offering expert testimony regarding the market value of Spotswood and RIC, and Plaintiff's Motion in Limine should therefore be denied.

---

[2] As set forth below, both of these properties were actually acquired by Fidelio months after Plaintiff's termination.

[3] In addition, at the time of his termination, Plaintiff had not been admitted as a member of F.P. Executive Partners, LLC. As explained in more detail below, only members of the LLC are entitled to receive a promoted interest in Fidelio's investments.

**RELEVANT FACTS**

## I.     Parties

Defendant Fidelio Properties ("Fidelio") is a New York general partnership that provides capital for commercial real estate investments in the Washington, D.C. area. See Exh. 1 (Gardner Dep.) at 49-50, 56-57. Defendant Buvermo Properties, Inc. ("Buvermo") is a Delaware corporation that functions as the operating arm of Fidelio. See Exh. 1 at 49; Exh. 2 (Millspaugh Dep.) at 14-15. Defendant F.P. Executive Partners, LLC ("FPEP") is a limited liability company that is used as a vehicle through which certain of Buvermo's employees are provided with an opportunity to participate in Fidelio's investments. See Exh. 1 at 26-27, 255-256.

## II.    "Promoted Interests"

As described to some degree in the Second Amended Complaint, Fidelio has historically distributed a certain percentage of the proceeds from its real estate investments to the members of FPEP after first recovering its initial capital investment and a preferred rate of return. See Second Amended Complaint ¶¶ 21, 22. This form of compensation, which is referred to as a "promoted interest," is intended as a reward for successfully managing and increasing the value of Fidelio's real estate investments over the long-term. See Exh. 1 at 276-277; Exh. 3 (van Rhee Dep.) at 61. A member of FPEP receives value (i.e. cash) for their promoted interest only if the property at issue has appreciated sufficiently in value to allow Fidelio to recoup its initial capital investment and receive a preferred rate of return. See Exh. 1 at 117, 212. The promoted interest is not intended as compensation for identifying a real estate investment; rather, it is intended as compensation for increasing the value of the investment over its lifetime. Id. at 277, 281.

The framework of the promoted interest structure is set forth in Section 3.03 of the Fidelio Partnership Agreement and in the Limited Liability Company Operating Agreement of

F.P. Executive Partners, LLC (the "FPEP LLC Agreement"). See Exhs. 4 (Fidelio Partnership Agreement) and 5 (FPEP LLC Agreement). As set forth in these documents, there are a number of conditions that must be satisfied before members of FPEP are entitled to receive a promoted interest. First, Fidelio's management committee must approve the purchase and actually acquire an interest in the property at issue. See Id.; Exh. 1 at 263; Exh. 2 at 65-66. Second, in accordance with Section 3.03 of the Fidelio Partnership Agreement, the property must then be designated by Fidelio's management committee as an "FPEP Property." See Exh. 1 at 250; Exh. 4. Even after these conditions are satisfied, the right to receive any distributions from a promoted interest is contingent on Fidelio recouping its initial capital investment and receiving a preferred rate of return. See Exh. 1 at 212.

### III. Redemption

Participation as a member of FPEP is a benefit that is provided only to Buvermo's employees, and, to that end, the FPEP LLC Agreement provides for redemption of a member's interest upon withdrawal or cessation of employment. See Exh. 1 at 117, 255-256; Exh. 5. Specifically, Section 8.9 of the FPEP LLC Agreement provides, in relevant part:

> Redemption of Member's Membership Interest. Notwithstanding any other provision of this Article VIII to the contrary, in the event that either Gardner or Bonacci (the "Departed Employee") withdraws from the Company or ceases to be employed by Buvermo Properties, Inc. or another affiliate of Fidelio, by reason of death, disability, retirement or any other reason (such withdrawal or cessation is hereinafter referred to as the "Termination"), then the Manager shall have the right, upon written notice to the Departed Employee given within sixty (60) days of the Termination, to redeem the Departed Employee's entire Membership Interest and the Membership Interest of any transferee of or successor to the Departed Employee, which transferred interests for the purposes of this Section 8.9 shall be deemed to be the Membership Interest of the Departed Employee (the "Call").
>
> (i)    Within thirty (30) days after written notice of the exercise of the Put or Call has been given by one party to the other the

4

>Manager and the Departed Employee each shall submit to the other a sum (the "Market Value") representing its calculation of the market value of Fidelio's interest in each property which, as of the date of Termination, has been designated by Fidelio as an FPEP Property. If the lower of the Market Values for an FPEP Property is equal to at least eight percent (80%) of the higher of the Market Values, then the Purchase Price for that Property shall be equal to the average of the two (2) Market Values. In the event that the lower of the Market Values is equal to less than eighty percent (80%) of the higher of the Market Values, then the parties shall have thirty (30) days to agree upon a Market Value for such Property. If the parties fail to agree on a Market Value within said thirty (30) days, then within ten (10) days thereafter, they shall jointly appoint a disinterested arbitrator, experienced in evaluating properties of the type designated as an FPEP Property in the Washington, D.C. metropolitan area, to determine the Market Value. The arbitrator shall designate as the Market Value the market value which the arbitrator determines is closest to the market value of the FPEP Property in question, and such designation shall be conclusive for purposes hereof.
>
>(ii)   The Market Value, as determined pursuant to Section 8.9(i) hereof, for each FPEP Property, shall be reduced in accordance with Section 3.03 of the Fidelio Agreement (such reduction to include, without limitation, the estimated costs of completing a sale of the relevant FPEP Property and by any liability of Fidelio or the ownership entity in connection with the relevant FPEP Property, and such reserves as the Management Committee of Fidelio may determine). The Purchase Price for each FPEP Property to be received by the Departed Employee shall equal the amount which such Departed Employee would receive upon liquidation of the relevant FPEP Property for the Market Value, as finally determined, following the sale of each FPEP Property, the distribution of the appropriate proceeds to Fidelio, and by Fidelio to the Company (pursuant to the Fidelio Agreement) and the liquidation of the Company.[4]

---

[4] Mr. Bonacci, who is referenced in Section 8.9, is a former employee of Buvermo. See Exh. 1 at 28, 35. When Mr. Bonacci resigned, his membership interest in FPEP was redeemed in accordance with Section 8.9. Id. at 28, 35; Exh. 6 (McCormick Dep.) at 138.

### IV.     Plaintiff is Hired as the President of Buvermo

On June 3, 2005, Plaintiff executed an offer letter from Buvermo, accepting employment as Buvermo's president. See Exh. 7 (Morris Offer Letter). Plaintiff's offer provides for an annual base salary of $250,000 and a "promoted interest" in several current projects (subject to a two (2) year vesting period) and in future projects initiated after the commencement of his employment. Id. According to his offer letter, Plaintiff's rights with respect to his promoted interests were to be "governed by the FPEP LLC agreement." Id. According to Defendants, the only substantive change to the existing FPEP LLC Agreement that was contemplated after Plaintiff was hired was amending the agreement to add Plaintiff as a member. See Exh. 1 at 87, 100-101, 283; Exh. 8 (Tjaden Dep.) at 58-59; Exh. 6 (McCormick Dep.) at 46.

After signing his offer letter, Plaintiff's employment with Buvermo commenced on June 29, 2005. See Exh. 9 (Morris Dep.) at 173.

### V.     Spotswood and RIC

On January 31, 2006, Fidelio entered into a letter of understanding with a previous partner, SJM Acquisitions, LLC, to purchase Spotswood. See Exh. 1 at 351. Plaintiff initiated this project. Id. at 350. During Plaintiff's employment with Buvermo, discussions were also initiated with another partner concerning the acquisition of RIC. Id. at 326. Plaintiff's predecessor, John Gardner, initiated this particular project. Id. As set forth below, neither of these properties were actually acquired during Plaintiff's employment with Buvermo.

### VI.    Plaintiff's Employment is Terminated

Plaintiff was terminated for cause effective March 24, 2006 after Fidelio's Management Committee determined that Plaintiff could not properly fulfill his fiduciary role and adequately represent their interests in the United States. See Exh. 8 at 136-137; Exh. 3 at 106-107.

At the time of Plaintiff's termination, Spotswood -- the only project initiated by Plaintiff during his employment -- had not been acquired. See Exh. 9 at 311. In fact, Spotswood was not acquired until July 6, 2006. See Exh. 1 at 353. Likewise, at the time of Plaintiff's termination, RIC had not been acquired. See Exh. 9 at 311. Fidelio did not acquire its interest in RIC until June 9, 2006. See Exh. 1 at 369. Further, at the time of Plaintiff's termination, neither Spotswood nor RIC had been designated by the management committee as an "FPEP Property." See Exh. 9 at 318; Exh. 8 at 9, 27; Exh. 3 at 10, 15.

At the time of Plaintiff's termination, he had not been admitted as a member of FPEP. See Exh. 9 at 318. According to Defendants, had Plaintiff not been terminated, he would ultimately have been admitted as a member of FPEP. See Exh. 1 at 89; Exh. 8 at 50.

## ARGUMENT

As set forth above, according to the terms of the Fidelio Partnership Agreement and the FPEP LLC Agreement governing the promoted interests at issue, there are several conditions precedent that must be satisfied before Plaintiff could be deemed entitled to receive these interests. First and foremost, Fidelio's management committee must approve the investment and actually acquire an interest in the property at issue. Second, in accordance with Section 3.03 of the Fidelio Partnership Agreement, Fidelio's management committee must formally designate the property an "FPEP Property." Finally, only members of F.P. Executive Partners, LLC are eligible to receive a promoted interest. In this case, at the time Plaintiff was terminated, none of these conditions had been met. Accordingly, Plaintiff is not entitled to the promoted interests he seeks in this case.

As a secondary defense to address the possibility of an adverse determination by the jury on this issue, Defendants intend to present expert testimony at trial concerning the market value

of Spotswood and RIC at the time these properties were acquired by Fidelio, in order to establish the value of Plaintiff's alleged interests for redemption purposes. In his Motion in Limine, Plaintiff asserts that Defendants should be precluded from offering this evidence because Defendants never exercised their right to redeem Plaintiff's alleged interests pursuant to Section 8.9 of the FPEP LLC Agreement.

This argument ignores the fact that, at the time of Plaintiff's termination, Defendants had no right of redemption because Plaintiff had no interest whatsoever to redeem. In this regard, according to Section 8.9 of the FPEP LLC Agreement, when a member's employment with Buvermo terminates, it is his *membership interest* in the LLC that is actually redeemed and for which he receives value. Given the fact that Plaintiff was not a member of the LLC at the time of his termination, there was no membership interest to redeem. Further, an integral part of the redemption process set forth in Section 8.9 involves the establishment of the market value of "Fidelio's interest in each property, which, as of the date of [Plaintiff's] Termination, has been designated by Fidelio as an FPEP Property." See Exh. 5 at p. 3. It is undisputed that, as of the date Plaintiff was terminated, neither Spotswood nor RIC had been acquired or designated by Fidelio as an FPEP Property. Accordingly, Defendants' right to redeem Plaintiff's alleged interests never arose because, according to Section 8.9, there was no membership interest to redeem or FPEP Property to value. Plaintiff's argument that Defendants could have, but chose not to, exercise their right of redemption, is specious.

While Defendants firmly believe that Plaintiff is not entitled to any of the relief he seeks in this case, it is conceivable that the jury could conclude that Plaintiff is entitled to a promoted interest in Spotswood and/or RIC. In this scenario, Defendants will necessarily be required to retroactively admit Plaintiff as a member of FPEP in order to provide him with these interests.

This would represent the very first time that <u>all</u> of the conditions necessary to exercise the right of redemption would exist. It would be inequitable and contrary to the terms of the operative agreements to provide Plaintiff with the promoted interests at issue without affording Defendants their corresponding right to redeem these interests. Plaintiff cannot have it both ways. Accordingly, Defendants should not be precluded from offering expert testimony concerning the market value of Spotswood and RIC.

In his Motion in Limine, Plaintiff also argues that Defendants should be precluded from offering expert testimony concerning the market value of Spotswood and RIC because the redemption clause set forth in Section 8.9 of the FPEP LLC Agreement does not apply to him as the Agreement was never modified to include his name. It is true that the FPEP LLC Agreement had not been modified to admit Plaintiff as a member prior to his termination. Nonetheless, according to Plaintiff's own offer letter, his rights with respect to the promoted interests at issue are "governed by the FPEP LLC agreement." <u>See</u> Exh. 7. During his deposition, Plaintiff admitted that the FPEP LLC Agreement he now contends does not apply to him was the FPEP LLC Agreement that was in existence at the time he was hired. <u>See</u> Exh. 9 at 108. According to Defendants, there was no plan to modify the existing FPEP LLC Agreement except to admit Plaintiff as a member. <u>See</u> Exh. 1 at 87, 100-101, 283; Exh. 8 at 58-59; Exh. 6 at 46.

While the FPEP LLC Agreement was not modified to admit Plaintiff as a member prior to his termination, the evidence demonstrates that the FPEP LLC Agreement that existed at the time Plaintiff was hired -- which includes the right of redemption -- was intended to govern Plaintiff's right to the promoted interests described in his offer letter. Accordingly, Defendants should not be precluded from offering expert testimony regarding the market value of Spotswood or RIC on the basis that Plaintiff's name does not appear in Section 8.9.

According to Plaintiff, even if Section 8.9 applied to Plaintiff and could be exercised by Defendants, this Court "lacks jurisdiction" to decide the value of the promoted interests at issue because that issue must be arbitrated. To support this argument, Plaintiff seizes upon the fact that the word "arbitrator" is used in Section 8.9, despite the fact that it is clearly a misnomer. Section 8.9 does not require arbitration; rather, it calls for the appointment of a disinterested party to establish the market value of the properties at issue in the event the parties fail to agree on the market value of such property.[5] There is no adversarial arbitral proceeding; rather, the "arbitrator" independently determines the market value of the property in question.

More importantly, even if Section 8.9 requires arbitration, the obligation to arbitrate is not triggered until: (i) both parties submit their respective valuations; (ii) the lower of the valuations is less than 80% of the higher valuation; and (iii) the parties are otherwise unable to agree on a market value. At the present time, it cannot be determined whether arbitration will be required because Plaintiff has provided no evidence of his assessment of the market value of Spotswood or RIC. In other words, it cannot be determined at this juncture whether there is a disagreement among the parties concerning the market value of the properties in question, or whether such disagreement is significant enough to trigger the obligation to arbitrate.[6] As such, Plaintiff's Motion in Limine cannot be granted on grounds that there is an obligation to arbitrate the issue of the valuation of Plaintiff's alleged interests.

---

[5]  More precisely, Section 8.9 does not call for the appointment of a disinterested third party unless the lower of the market values submitted by the parties is less than 80% of the higher market value and the parties are thereafter unable to agree on a market value within 30 days.

[6]  In this case, Defendants' expert will testify as to the market value of Spotswood and RIC at the time of acquisition, which is the earliest time Plaintiff could have received a promoted interest and Defendants could have redeemed such interest in accordance with Section 8.9. It is not likely Plaintiff could credibly assert that the market value of the properties in question could have appreciated in any significant manner between the time of acquisition and redemption.

WHEREFORE, for the reasons set forth above, Defendants respectfully request that the Court DENY Plaintiff's Motion in Limine.

        Respectfully submitted,

        SMITH, LEASE & GOLDSTEIN, LLC

        By:   /s/ Marc J. Smith
               Marc J. Smith
               D.C. Bar No. 460255
               11 North Washington Street
               Suite 520
               Rockville, Maryland 20850
               Phone: (301) 838-8950

        Counsel for Defendants