# EXHIBIT

# 9

Page 108

1  me comments, and then I would sit down and go through
2  those comments, if he had any, about the document.
3       Q    Okay.
4            MR. SMITH:  Let me have that one marked.
5            (Thereupon, the document was marked as
6       Morris Deposition Exhibit No. 4 for
7       identification.)
8       BY MR. SMITH:
9       Q    Let me show you what I've marked as Morris
10 Exhibit Number 4 and ask if you've ever seen that
11 document before.
12      A    This is the original FPEP, LLC that was in
13 place at the time of my hiring, and it is something I
14 have seen before.
15           However, without going through this, if it
16 has been amended since the date of my hire, I have not
17 seen it before.
18      Q    Did you have an opportunity or did you read
19 this document at any time while you were employed?
20      A    I reviewed it in a very cursory manner at
21 or around the same day I sent it to my attorney and
22 told him that this was the old document and that it

1   Q   Well, I'm trying to get an idea about
2   whether you believe the company ever promised you that
3   your compensation would continue for 10 years no
4   matter what, whether it's promoted interest, whether
5   it's salary, whether it's anything else.
6   A   Okay.  Let me be very clear.  I made a
7   commitment to this organization to work until I was
8   60 years old.  I began the job I believe on June 29th,
9   2005.  So the delta between my birthday of turning 50
10  and that date, 60, you can look at as the term because
11  that's how I looked at it.
12       They gave me a commitment that I would be
13  employed there until I was 60 years old, and
14  furthermore indicated that if that employment was in
15  good stead at that time and I wanted to continue, they
16  would commit to 65, which was their retirement age.
17       So with respect to annual compensation for
18  being the president and CEO of that company, which is
19  not deal-related, that's what I expected.  That is
20  unequivocally firmly what I expected from this
21  organization.
22       As it relates to promoted interests, do you

Page 311

1  and I told Joost that I'll be back next week.  And I
2  did not know of a termination until several hours
3  after this.  And then I was informed by e-mail.
4            BY MR. SMITH:
5       Q    All right.  The deals that you just
6  referred to, the two deals were the Spotswood deal and
7  the Reston International deal?
8       A    Yes.
9       Q    And were those the only two deals that were
10 active at the time, active, I mean, in going to
11 closure?
12      A    As far as I can recall.
13      Q    All right.  And isn't it a fact that as of
14 March 24, 2006 that those transactions had not yet
15 been consummated?
16      A    As of that date, they had not been
17 consummated.  As of that day, they had not, to my
18 knowledge, been consummated.
19           MR. SMITH:  This will be our last document
20 here.
21           (Thereupon, the document was marked as
22           Morris Deposition Exhibit No. 18 for

1  that we'd like to.  So we will supplement our
2  interrogatory responses, and certainly that will be
3  the subject of the expert's report.
4           MR. SMITH:  All right.
5           BY MR. SMITH:
6     Q     Are you also claiming entitlement to the
7  promote for all new projects initiated by Buvermo
8  after December 31st, 2005, all the way through
9  June 2015?
10    A     That's the claim.
11    Q     All right.  And at the time you were
12 terminated, you had not officially been made a member
13 of the FP Executive Partners Limited Partnership, LLC?
14    A     Not to my knowledge.
15    Q     All right. And are you able -- and I think
16 I know the answer to this.  Are you able to quantify
17 your damages for the promote?
18          MR. HADDAD:  I'll just ditto what I just
19 said about one page ago.
20          MR. SMITH:  That's fine.
21          BY MR. SMITH:
22    Q     Okay.  Are you able to quantify the damages